**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Ghazi Abu Nahl,** *et al.* | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civ. No. 1:15-cv-9755 (LGS)(JCF) |
| | ) |
| **Georges Zard Abou Jaoude,** *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS GEORGES ZARD ABOU JAOUDE, MOHAMAD HAMDOUN, AND AHMAD SAFA

---

Mitchell R. Berger (MB-4112)
SQUIRE PATTON BOGGS (US) LLP
2550 M Street NW
Washington, D.C. 20037
Telephone: (202) 457 5601
Facsimile: (202) 457 6315
Email: mitchell.berger@squirepb.com

*Attorneys for Defendants Georges Zard Abou Jaoude, Mohamad Hamdoun, and Ahmad Safa*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................. 4

ARGUMENT ........................................................................................................................... 6

I. *FORUM NON CONVENIENS* REQUIRES DISMISSAL. ..................................... 6

    A. Plaintiffs' Choice of Forum Is Due Little Deference. ...................................... 6

    B. Private and Public Interest Factors Strongly Disfavor a New York Forum. ............ 10

II. THE LEBANESE PROCEEDINGS PRECLUDE ALL PLAINTIFFS' CLAIMS. .......... 11

III. THE CENTRAL BANK OF LEBANON AND SGBL ARE ABSENT, INDISPENSABLE PARTIES. ................................................................................. 13

IV. PLAINTIFFS' ATS CLAIM FAILS BECAUSE NEITHER LCB NOR PLAINTIFFS IS A VICTIM OF THE ALLEGED ATS VIOLATIONS. .......................... 15

V. PLAINTIFFS' DERIVATIVE CLAIMS FAIL FOR ADDITIONAL REASONS. ............ 18

    A. Plaintiffs Lack Standing to Bring a Derivative Suit on Behalf of LCB Because LCB's Assets Were Transferred to SGBL. ................................................... 18

    B. Plaintiffs Waived Any Right They Had to Pursue Their Derivative Claims. ............. 19

    C. Plaintiffs Cannot Sue Derivatively in LCB's Name. ...................................... 20

VI. PLAINTIFFS' COMMON LAW CLAIMS FAIL FOR ADDITIONAL REASONS. ....... 20

    A. Plaintiffs' Common Law Claims are Time-Barred. ....................................... 20

    B. Plaintiffs' Common Law Claims Fail for Several Additional Reasons. ................. 23

CONCLUSION ..................................................................................................................... 24

**Cases**

*ACLI Int'l Commodity Servs. v. Banque Populaire Suisse*,
 652 F. Supp. 1289 (S.D.N.Y. 1987) ................................................................................................11

*Acosta v. JPMorgan Chase & Co.*,
 219 F. App'x 83 (2d Cir. 2007) ....................................................................................................7

*Adams v. Deutsche Bank AG*,
 2012 WL 12884365 (S.D.N.Y. Sept. 24, 2012) ..........................................................................22

*Aguinda v. Texaco, Inc.*,
 142 F. Supp. 2d 534 (S.D.N.Y. 2001)............................................................................................9

*In re Alcon S'holder Litig.*,
 719 F. Supp. 2d 263 (S.D.N.Y. 2010)......................................................................................7, 10

*Alfadda v. Fenn*,
 966 F. Supp. 1317 (S.D.N.Y. 1997).............................................................................................12

*Amfesco Indus., Inc. v. Greenblatt*,
 568 N.Y.S.2d 593 (N.Y. App. Div. 1991)....................................................................................24

*In re Arab Bank, PLC Alien Tort Statute Litig.*,
 808 F.3d 144 (2d Cir. 2014) ........................................................................................................18

*Banculescu v. Compania Sud Americana De Vapores, SA*,
 2012 WL 5909696 (S.D.N.Y. Nov. 20, 2012) ............................................................................10

*Base Metal Trading SA v. Russ. Aluminum*,
 253 F. Supp. 2d 681 (S.D.N.Y. 2003)..........................................................................................10

*Bechtel Do Brasil Construções Ltda. v. UEG AraucÁria Ltda.*,
 638 F.3d 150 (2d Cir. 2011) ........................................................................................................21

*Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank*,
 247 F. Supp. 3d 377 (S.D.N.Y. 2017)..........................................................................................19

*Blake v. Blake*,
 638 N.Y.S.2d 632 (N.Y. App. Div. 1996)....................................................................................21

*Blanco v. Banco Indus. de Venez., S.A.*,
 997 F.2d 974 (2d Cir. 1993) ..................................................................................................10, 11

*Bloomquist v. Brady*,
 894 F. Supp. 108 (W.D.N.Y. Mar. 10, 1995)......................................................................13

*In re BP p.l.c. Derivative Litig.*,
 507 F. Supp. 2d 302 (S.D.N.Y. 2007).................................................................................20

*Butala v. Agashiwala*,
 916 F. Supp. 314 (S.D.N.Y. 1996) .....................................................................................22

*Cameron v. Church*,
 253 F. Supp. 2d 611 (S.D.N.Y. 2003).................................................................................13

*Chavez v. Carranza*,
 559 F.3d 486 (6th Cir. 2009)...............................................................................................15

*In re Chiquita Brands Int'l, Inc.*,
 536 F. Supp. 2d 1371 (J.P.M.L. 2008) ................................................................................16

*Chowdhury v. Worldtel Bangl. Holding, Ltd.*,
 588 F. Supp. 2d 375 (E.D.N.Y. 2008)........................................................................... 16, 17

*Clark v. Lacy*,
 376 F.3d 682 (7th Cir. 2004)...............................................................................................24

*Cmty. Fin. Grp. Inc. v. Stanbic Bank Ltd.*,
 2015 WL 4164763 (S.D.N.Y. July 10, 2015) ......................................................................3

*Cohen v. Postal Holdings LLC*,
 873 F.3d 394 (2d Cir. 2017) ...............................................................................................23

*Compagnie Noga D'Importation Et D'Exportation S.A. v. Russ. Fed'n*,
 2008 WL 3833257 (S.D.N.Y. Aug. 15, 2008)......................................................................18

*Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción*,
 832 F.3d 92 (2d Cir. 2016) .................................................................................................12

*Daimler AG v. Bauman*,
 134 S. Ct. 746 (2014)............................................................................................................3

*De Masi v. Country Wide Home Loans*,
 481 F. App'x 644 (2d Cir. 2012) .........................................................................................13

*Dolmetta v. Uintah Nat'l Corp.*,
 712 F.2d 15 (2d Cir. 1983) ..................................................................................................20

*F. Hoffman-LaRoche Ltd. v. Empagran S.A.*,
 542 U.S. 155 (2004)............................................................................................................18

*Firstcom, Inc. v. Qwest Corp.*,
    2006 WL 2666301 (D. Minn. Sept. 18, 2006) ..................................................19

*Flores v. S. Peru Copper Corp.*,
    253 F. Supp. 2d 510 (S.D.N.Y. 2002)..............................................................9

*Gibbon v. Am. Univ. of Beirut*,
    1983 U.S. Dist. LEXIS 13401 (S.D.N.Y. Sept. 27, 1983) ..............................9

*Golden Horn Shipping Co. v. Volans Shipping Co.*,
    2017 WL 3535002 (S.D.N.Y. Aug. 16, 2017)....................................................7

*Gonzales v. Nat'l Westminster Bank PLC*,
    847 F. Supp. 2d 567 (S.D.N.Y. 2012)........................................................21, 23

*Gucci Am. v. Bank of China*,
    768 F.3d 122 (2d Cir. 2014) ............................................................................3

*Guerrini v. Atmel Corp.*,
    667 F. App'x 308 (2d Cir. 2016) ......................................................................6

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947)........................................................................................10

*Hanly v. Powell Goldstein, L.L.P.*,
    290 F. App'x 435 (2d Cir. 2008) ......................................................................3

*Hau Yin To v. HSBC Holdings PLC*,
    2017 WL 5040731 (2d Cir. Nov. 3, 2017) ........................................................3

*Hyundai Merch. Marine Co. v. Mitsubishi Heavy Indus.*,
    2015 WL 7758876 (S.D.N.Y. Dec. 1, 2015)..................................................7, 8

*Ioannides v. Marika Mar. Corp.*,
    928 F. Supp. 374 (S.D.N.Y. 1996) ....................................................................7

*Ismail v. Am. Univ. of Beirut*,
    246 F. Supp. 2d 330 (S.D.N.Y. 2003)................................................................9

*Jeha v. Arabian Am. Oil Co.*,
    751 F. Supp. 122 (S.D. Tex. 1990)....................................................................9

*Keating-Traynor v. Westside Crisis Ctr.*,
    2006 WL 1699561 (N.D. Cal. June 16, 2006) ................................................16

*Kiobel v. Royal Dutch Petro. Co.*,
    569 U.S. 108 (2013)....................................................................................3, 18

*Kirschner v. Grant Thornton LLP,*
2009 WL 1286326 (S.D.N.Y. Apr. 14, 2009) ............................................21

*LaSala v. UBS, AG,*
510 F. Supp. 2d 213 (S.D.N.Y. 2007) ........................................................ 8

*Libancell S.A.L. v. Republic of Leb.,*
2006 WL 1321328 (S.D.N.Y. May 16, 2006) ...........................................14

*Licci v. Leb. Can. Bank, SAL,*
834 F.3d 201 (2d Cir. 2016) ............................................................... 16, 17

*Licci v. Leb. Can. Bank, SAL,*
984 N.E.2d 893 (N.Y. 2012) ....................................................................... 3

*Martindale v. Gleasman,*
2008 WL 2627457 (W.D.N.Y. June 27, 2008) .........................................19

*McDonald v. Brown,*
2014 WL 116003 (S.D.N.Y. Jan. 13, 2014) .............................................22

*In re Milk Prods. Antitrust Litig.,*
195 F.3d 430 (8th Cir. 1999) ....................................................................19

*Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.,*
311 F.3d 488 (2d Cir. 2002) .....................................................................11

*In re Motors Liquidation Co.,*
533 B.R. 46 (Bankr. S.D.N.Y. 2015).........................................................18

*Murray v. BBC,*
81 F.3d 287 (2d Cir. 1996) .......................................................................11

*Myers Indus. v. Schoeller Arca Sys., Inc.,*
171 F. Supp. 3d 107 (S.D.N.Y. 2016)........................................................20

*Norex Petroleum, Ltd. v. Access Indus.,*
416 F.3d 146 (2d Cir. 2005) .....................................................................12

*Nuevo Mundo Holdings v. PriceWaterhouseCoopers LLP,*
2004 U.S. Dist. LEXIS 24900 (S.D.N.Y. Dec. 8, 2004) ............................. 3

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,*
85 F. Supp. 2d 282 (S.D.N.Y. 2000).........................................................23

*Ofisi v. BNP Paribas, S.A.,*
2017 WL 4355922 (D.D.C. Sept. 29, 2017)..............................................18

*Overseas Nat'l Airways, Inc. v. Cargolux Airlines Int'l S.A.,*
    712 F.2d 11 (2d Cir. 1983) ........................................................................................... 11

*Phil. v. Pimentel,*
    553 U.S. 851 (2008) ................................................................................................ 13, 14

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981) ...................................................................................................... 6

*Pollux Holding, Ltd. v. Chase Manhattan Bank,*
    329 F.3d 64 (2d Cir. 2003) ........................................................................................ 7, 8

*Radian Int'l, LLC v. Alpina Ins. Co.,*
    2005 WL 1656884 (N.D. Cal. July 14, 2005) ............................................................... 9

*Rationis Enters. Inc. of Pan. v. Hyundai Mipo Dockyard Co.,*
    426 F.3d 580 (2d Cir. 2005) ...................................................................................... 11

*In re Rezulin Prods. Liab. Litig.,*
    214 F. Supp. 2d 396 (S.D.N.Y. 2002) .......................................................................... 7

*Salinger v. Projectavision, Inc.,*
    934 F. Supp. 1402 (S.D.N.Y. 1996) ............................................................................ 23

*Seybold v. Groenink,*
    2007 WL 737502 (S.D.N.Y. Mar. 12, 2007) ............................................................... 20

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.,*
    549 U.S. 422 (2007) ...................................................................................................... 6

*In re Ski Train Fire in Kaprun Austria,*
    499 F. Supp. 2d 437 (S.D.N.Y. 2007) .......................................................................... 7

*Sosa v. Alvarez-Machain,*
    542 U.S. 692 (2004) .................................................................................................... 18

*Stone v. Williams,*
    970 F.2d 1043 (2d Cir. 1992) ...................................................................................... 22

*Storey v. O'Brien,*
    2009 WL 3075602 (E.D.N.Y. Sept. 23, 2009) ............................................................ 14

*TAGC Mgmt., LLC v. Lehman,*
    2011 WL 3796350 (S.D.N.Y. Aug. 24, 2011) ............................................................... 3

*Tamam v. Fransabank SAL,*
    677 F. Supp. 2d 720 (S.D.N.Y. 2010) .......................................................................... 3

*TJGEM LLC v. Republic of Ghana,*
   26 F. Supp. 3d 1 (D.D.C. 2013) ...................................................................14

*Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.,*
   936 F. Supp. 2d 376 (S.D.N.Y. 2013).............................................................24

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.,*
   216 F. Supp. 2d 198 (S.D.N.Y. 2002).............................................................12

*Valencia ex rel. Franco v. Lee,*
   *316 F. 3d 299* (2d Cir. 2003) .......................................................................23

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,*
   825 F.2d 709 (2d Cir. 1987) .........................................................................12

*Viera v. Eli Lilly & Co.,*
   2010 WL 3893791 (S.D. Ind. Sept. 30, 2010) .................................................16

*Voreep v. Tarom Romanian Air Transp.,*
   1999 WL 311811 (S.D.N.Y. May 17, 1999).....................................................13

*Waldman v. PLO,*
   835 F.3d 317 (2d Cir. 2016) ...........................................................................3

*Yanchukov v. Finskiy,*
   2017 WL 3491965 (S.D.N.Y. Aug. 14, 2017)..................................................23

**Rules**

Fed. R. Civ. P. 4 ...............................................................................................3

Fed. R. Civ. P. 9 .............................................................................................23

Fed. R. Civ. P. 19 .......................................................................................3, 14

N.Y. C.P.L.R. § 202 ........................................................................................21

N.Y. C.P.L.R. § 302 ..........................................................................................3

**Statutes**

28 U.S.C. § 1350..............................................................................................1

## INTRODUCTION

This case alleges six claims: one directly on behalf of Plaintiffs Ghazi Abu Nahl (a resident of Jordan) and Nest Investments (Holdings) Ltd. (a Lebanese company) (collectively, "Plaintiffs") for alleged fraudulent inducement of their 2006 investment in Lebanese Canadian Bank ("LCB"), a Beirut-based bank currently in liquidation in Lebanon; and, five purported derivative claims on behalf of LCB for alleged mismanagement of LCB by former officers Georges Zard Abou Jaoude, Mohamad Hamdoun, and Ahmad Safa ("Defendants"), among others. One of the derivative claims is brought pursuant to the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350; the remaining derivative claims, and the one direct claim, invoke common law (no specified jurisdiction).

**Substantively the same claims, arising from the same alleged facts, were brought by the same Plaintiffs in a Lebanese lawsuit filed long before this U.S. lawsuit—and Plaintiffs lost. For a host of reasons, this Lebanon-centric dispute, which Plaintiffs previously litigated and lost, does not belong in this Court and should be dismissed.**

The look-alike Lebanese lawsuit was filed in May 2011. Through multiple rounds of written contentions in that Lebanese lawsuit, Plaintiffs aired, or had the opportunity to air, the same allegations at issue in this copycat U.S. lawsuit. The Lebanese court ruled against Plaintiffs: first, in a December 10, 2014 decision—over <u>one year before</u> Plaintiffs commenced this lawsuit—rejecting all but one of their claims; and, second, in a March 2, 2016, final decision, resolving the remaining claim against Plaintiffs. The Lebanese court summed up its rejection of Plaintiffs' substantively identical claims with the holding that Plaintiffs "did not provide any proof that establishes the individual responsibility of the defendants." Ex. 2 to Decl. of Simon El Kai ("El Kai Decl."), Final Judgment, Mar. 2, 2016, at 9.

Faced with clear repudiation by the Lebanese courts on identical allegations, Plaintiffs more than a year later filed their Complaint in this U.S. action. In their initial Complaint here, Plaintiffs

invoked federal jurisdiction through two Racketeer Influenced and Corrupt Organizations Act ("RICO") claims. In their pre-motion letter to Plaintiffs, Defendants set out multiple reasons why those RICO (and other) claims were deficient, including the absence of the requisite "domestic injury." Plaintiffs sought to elide those problems by filing a First Amended Complaint ("FAC"), in which they abandoned the two RICO claims. To cling to federal jurisdiction, Plaintiffs repackaged their RICO allegations as claims for "crimes against humanity" and "war crimes" in violation of international law under the ATS. While gymnastic, this maneuver is legally unsuccessful, and Plaintiffs' refashioned claims in this copycat lawsuit should be dismissed for four separate, threshold reasons.

First, *forum non conveniens* bars all of Plaintiffs' claims. This suit involves foreign plaintiffs suing foreign defendants based on the overseas acquisition of shares in, and the alleged mismanagement of, a foreign bank. Further, Plaintiffs expressly implicate the regulatory interests of Lebanon in these matters by extensively alleging that the Central Bank of Lebanon was complicit in the alleged mismanagement of LCB. *See, e.g.*, FAC, ¶¶ 31, 77-89, 129. Given these circumstances, *forum non conveniens* requires dismissal of the First Amended Complaint because (1) little deference is owed to Plaintiffs' choice of this forum; (2) Lebanon is an adequate alternative forum, where Plaintiffs have been litigating the same claims; and (3) private and public interest factors weigh in favor of the Lebanese courts resolving the duplicative claims made both in Lebanon and New York.

Second, if the Court determines that Plaintiffs have exhausted their resort to the Lebanese courts, then under doctrines of preclusion and international comity, this Court should recognize the Lebanese court's judgment rejecting the substantively-identical claims asserted and lost by the Plaintiffs in the Lebanese court. Because a court of competent jurisdiction in Lebanon has entered judgment on the merits in a case involving the same parties and based upon the same set of operative facts, *res judicata* is a complete bar to this action.

Third, this Court lacks personal jurisdiction over Defendants because Defendants are not United States residents, much less New York residents, and because Plaintiffs fail to allege that Defendants had sufficient suit-related contacts with New York or the United States.[1]

Fourth, Federal Rule of Civil Procedure 19 bars Plaintiffs' claims because: both the Central Bank of Lebanon (whose complicity in LCB mismanagement is alleged) and Societe Generale de Banque au Liban S.A.L ("SGBL") (which acquired LCB's assets and liabilities prior to LCB's liquidation) are absent, indispensable parties, and at least the Central Bank cannot be joined because it has sovereign immunity.

Putting aside these four threshold reasons for dismissing the FAC, Plaintiffs' claims are plagued with additional procedural and substantive infirmities requiring dismissal:

- The ATS claim fails for the additional reasons that: (1) neither Plaintiffs nor LCB (on whose behalf Plaintiffs purport to assert the ATS claim) were victims of the alleged

---

[1] "A plaintiff must plead personal jurisdiction with respect to each claim asserted." *Hanly v. Powell Goldstein, L.L.P.*, 290 F. App'x 435, 437 (2d Cir. 2008). Because Defendants are not "at home" in the United States, there is no basis for general personal jurisdiction. *Gucci Am. v. Bank of China*, 768 F.3d 122, 135 (2d Cir. 2014). The two possible federal statutory bases for specific personal jurisdiction likewise fail. First, Fed. R. Civ. P. 4(k)(1)(A), which requires application of New York's long-arm statute, N.Y. C.P.L.R. § 302(a), is irrelevant to Plaintiffs' common-law claims because they allege no relevant activity in New York from which those claims arise. *See Waldman v. PLO*, 835 F.3d 317, 341-42 (2d Cir. 2016). Nor is the long-arm statute a solution for the ATS claim. Of the statute's four prongs, only "transacting business" is potentially relevant, but a nondomiciliary "transacts business" in New York only if he "purposefully avails [himself] of the privilege of conducting activities [here], thus invoking the benefits and protections of its laws.'" *Nuevo Mundo Holdings v. PriceWaterhouseCoopers LLP*, 2004 U.S. Dist. LEXIS 24900, at *15-16 (S.D.N.Y. Dec. 8, 2004) (quotation omitted). The FAC alleges in a conclusory fashion that Defendants "repeatedly caused" wire transfers through New York, but "Plaintiffs have not alleged the kind of intentional and repeated use of correspondent accounts that amounts to a transaction of business." *Hau Yin To v. HSBC Holdings PLC*, 2017 WL 5040731, at *2 (2d Cir. Nov. 3, 2017) (summary order), applying *Licci v. Lebanese Can. Bank, SAL*, 984 N.E.2d 893 (N.Y. 2012); *see Cmty. Fin. Grp. Inc. v. Stanbic Bank Ltd.*, 2015 WL 4164763, at *4 (S.D.N.Y. July 10, 2015) ("Adventitious uses of a New York bank account are insufficient to demonstrate that the use of the account was 'purposeful.'"). Second, Fed. R. Civ. P. 4(k)(2) is inapplicable because it requires contacts with the United States sufficient to satisfy due process. *Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 731 (S.D.N.Y. 2010). "[M]inimum contacts with the United States, is a 'more stringent' test than that … for purposes of states' long-arm statutes," and it is the test that Plaintiffs' allegations do not pass. *See TAGC Mgmt., LLC v. Lehman*, 2011 WL 3796350, at *6 (S.D.N.Y. Aug. 24, 2011) (citation omitted). Plaintiffs allege only in conclusory fashion that the torts underlying its ATS claim "have a nexus to the United States," FAC, ¶ 26—an allegation apparently intended to satisfy the ATS' extraterritoriality requirement—but this does not carry their burden to answer the separate question of personal jurisdiction. *See Kiobel v. Royal Dutch Petro. Co.*, 569 U.S. 108, 138-40 (2013) (Breyer, J., concurring) (differentiating subject matter jurisdiction over extraterritorial actions from the separate personal jurisdiction inquiry based on minimum contacts); *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 762 (2014) (considering personal jurisdiction separately from extraterritoriality).

"war crimes" or "crimes against humanity"; and (2) neither Plaintiffs nor LCB sustained any injury from the acts of the alleged principal wrongdoer, Hezbollah.

- All of Plaintiffs' <u>derivative claims</u> purportedly on LCB's behalf, including the ATS claim, additionally fail because: (1) any right LCB had to bring suit against Defendants was an asset of LCB that was sold to SGBL; (2) Plaintiffs consistently approved the accounts and financial statements of LCB from 2006 through 2011, waiving any right they did have to bring a derivative claim against Defendants; and (3) Lebanese law precludes Plaintiffs from bringing derivative claims in LCB's name.

- The <u>common law</u> claims, all but one of which are derivative claims, additionally fail because: (1) the Court should decline to exercise supplemental jurisdiction after dismissing the ATS claim; (2) the applicable statutes of limitations bar those claims; (3) Plaintiffs do not plead their fraudulent inducement claim with the requisite particularity; (4) Plaintiffs' abuse of control and corporate waste claims are subsumed by their breach of fiduciary duty claim; and (5) Plaintiffs failed to plead what benefit was unjustly conferred on Defendants at LCB's expense.

## FACTUAL BACKGROUND

Plaintiffs Ghazi Abu Nahl and Nest Investments (Holdings) Ltd. allegedly are LCB shareholders; defendants Georges Zard Abou Jaoude, Mohamad Hamdoun, and Ahmad Safa allegedly are shareholders, or former directors or officers, of LCB. Plaintiffs claim that these Defendants kept them in the dark about LCB's compliance programs and corporate governance both before and after Plaintiffs' acquisition of a minority stake in LCB. FAC, ¶¶ 94-135. But Plaintiffs were not average shareholders. As the Lebanese court held, Plaintiffs "approved unanimously . . . [LCB's] consolidated and nonconsolidated accounts," Ex. 1 to Decl. of Mitchell R. Berger ("Berger Decl."), Prelim. Decision, Dec. 10, 2014, at 28; and consistently participated in "the decisions of the board of directors of [LCB]," Ex. 2 to El Kai Decl., at 4. In a related Lebanese proceeding, the court noted that Abu Nahl and his partners were also members of "the most important Internal Committees at the bank" from 2007 to 2011, which allowed them to "keep up with the bank progress and development and . . . its local, international and universal investments," Ex. 6 to El Kai Decl., at 10 ("[In] 2007, . . . Ghazi ABU NAHL asked the board of directors to appoint some representatives of his Group as members in some Internal Committees and the presidency of one of them."); *id.* at 8, 10

- 4 -

("ABU NAHL was appointed as a chairman of [Corporate Governance Committee] that enjoys the widest powers to take cognizance of the progress of all bank departments and make reports on the extent of applying the internationally applicable Governance Principles.").

As sensational as Plaintiffs' allegations may sound, they are not new and they already have been rejected by a Lebanese court as unsubstantiated. Plaintiffs' FAC contains the recycled allegations from their unsuccessful action brought in Lebanon against Messrs. Abou Jaoude and Hamdoun in 2011 (the "Lebanon Action"). As here, Plaintiffs' claims in that Lebanese Action were for the "devaluation in the shareholders' rights and . . . the bank's damages resulting from the [alleged] gross and recurrent faults in the management," "mainly related to the policy of external investments adopted by [LCB's] management and to the lending policy and to the problems that the bank faced with the US administration." Ex. 2 to El Kai Decl., at 8, 10. The Tribunal of First Instance of Beirut rejected these claims in a final 2016 decision because Plaintiffs "did not provide any proof that establishes the individual responsibility of . . . Abou Jaoude and . . . Hamdoun in the management of the bank and setting lending and foreign investments policies and other things." *Id.* at 9; *see also* Ex. 1 to Berger Decl., at 57-58 (rejecting the demand that Defendants "pay the compensation of the damage emanating from their errors in managing" LCB).[2] The Lebanese court ordered that Abu Nahl, Nest Investments, and other plaintiffs "pay all the legal fees." Ex. 2 to El Kai Decl., at 11. Plaintiffs have appealed that decision, despite their professed lack of faith in the Lebanese court system. El Kai Decl., ¶ 4; *see* FAC, ¶¶ 27-31.

Other proceedings involving the same parties and issues remain pending in Lebanon, including: (i) a criminal action against Plaintiffs by Mr. Safa "for the crime of threat, defamation and slander," *see* Ex. 5 to El Kai Decl., at 3; and (ii) a criminal action against Abu Nahl and other defendants

---

[2] The Preliminary Decision contained a typographical error, naming Nest Investments Holding Lebanon SAL instead of LCB. The March 2, 2016 Judgment corrected this error. Ex. 2 to Berger Decl., at 10.

by Mr. Abou Jaoude for "slander and undermining the dignity, honor and credibility," *see* Ex. 4 to El Kai Decl., at 1. Both proceedings center on Abu Nahl's allegations that Messrs. Safa and Abou Jaoude engaged in money laundering and mismanaged LCB. *See* Ex. 5 to El Kai Decl., at 24 (alleging that Abu Nahl "dragg[ed] the name of Ahmad SAFA into terrorism and money laundering acts"); Ex. 4 to El Kai Decl., at 11 (providing the following example of a defamatory statement by Abu Nahl: "As part of the money laundering plan, Georges ABOU JAOUDE used [LCB] to transfer huge amounts in American dollars to used car dealers"); *see also* Ex. 6 to El Kai Decl., at 1, Summary of Compl. of Farid Makari, Vice-President of the Lebanese Parliament, against Abu Nahl and other defendants for "[m]oney laundering and undermining the Government's standing."

## ARGUMENT

## I. *FORUM NON CONVENIENS* REQUIRES DISMISSAL.

A motion to dismiss for *forum non conveniens* involves a three-part analysis: (1) the court decides what deference is due the plaintiff's forum choice; (2) the court determines whether an adequate alternative forum exists; and (3) the court balances private and public interest factors to decide where the case should proceed. *Guerrini v. Atmel Corp.*, 667 F. App'x 308, 310 (2d Cir. 2016) (summary order). Here, all three factors weigh in favor of dismissal.

### A. Plaintiffs' Choice of Forum Is Due Little Deference.

Plaintiffs' decision to sue in New York is entitled to little deference because this is not their home forum. *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) ("When the plaintiff's choice is not its home forum . . . the assumption that . . . forum is appropriate is . . . 'less reasonable.'") (citation omitted); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981) ("Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference."). Litigation in New York federal court of this dispute between foreign residents and businesses would not serve any valid interest.

First, litigating this case here would not be convenient to the parties because they are foreign residents, and this case and Plaintiffs themselves have no meaningful connection to the United States. *See Golden Horn Shipping Co. v. Volans Shipping Co.*, 2017 WL 3535002, at *3 (S.D.N.Y. Aug. 16, 2017) ("The connections to the United States . . . are insubstantial [because] the vast majority of the activities alleged . . . were committed by foreign nationals on foreign soil.") (quoting *Acosta v. JPMorgan Chase & Co.*, 219 F. App'x 83, 86 (2d Cir. 2007)) (finding insubstantial defendant's "maintenance of an account . . . in New York," which was "the only apparent connection to the United States").[3] Second, Lebanon is "the forum where most witnesses and documents are likely to be located." *See Hyundai Merch. Marine Co. v. Mitsubishi Heavy Indus.*, 2015 WL 7758876, at *4 (S.D.N.Y. Dec. 1, 2015) (Schofield, J.) ("While Japan may not be the exclusive location of relevant witnesses and evidence, it remains the forum where most witnesses and documents are likely to be located."); *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 276 (S.D.N.Y. 2010) (applying *forum non conveniens* because defendants "are all Swiss-based and Swiss incorporated, [thus] the burden of obtaining documentary evidence would likely be substantially reduced in Switzerland"). Third, litigating the dispute here would be by far more expensive than in Lebanon, where the parties have been litigating against each other of their own volition for some time. *See Ioannides v. Marika Mar. Corp.*, 928 F. Supp. 374, 379 (S.D.N.Y. 1996) ("[T]he cost of producing willing witnesses for trial would be far less to all concerned were the case conducted in Greece . . . .").

The only benefit to Plaintiffs in suing in New York—the availability of punitive damages under the ATS—is not a valid interest. *In re Rezulin Prods. Liab. Litig.*, 214 F. Supp. 2d 396, 400 (S.D.N.Y. 2002) (availability of punitive damages is "immaterial to the *forum non conveniens* analysis"). Thus, "the

---

[3] In situations such as here, "when a foreign plaintiff sues in a United States forum, . . . it is more likely" that it was not convenience but forum shopping that dictated the forum selection. *Pollux Holding, Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003) (citation omitted); *see also In re Ski Train Fire in Kaprun Austria*, 499 F. Supp. 2d 437, 444-45 (S.D.N.Y. 2007) ("[P]rocedural considerations such as fee awards raise a strong inference that forum shopping motivated foreign plaintiffs' decision to sue in the United States."), *aff'd sub nom. Geier v. Ominiglow Corp.*, 357 F. App'x 377 (2d Cir. 2009).

first step of the *forum non conveniens* inquiry weighs in favor of dismissal." *See Hyundai Merch. Marine Co.*, 2015 WL 7758876, at *4.

The second step of a *forum non conveniens* inquiry—the existence of an adequate alternative forum—also weighs in favor of dismissal. Only "fundamental obstacle[s]" render a foreign nation's courts inadequate. *LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 222 (S.D.N.Y. 2007). An alternative forum is "'adequate so long as it permits litigation of the subject matter of the dispute, provides adequate procedural safeguards and the remedy available in the alternative forum is not so inadequate as to amount to no remedy at all.'" *Hyundai Merch. Marine Co.*, 2015 WL 7758876, at *4 (citation omitted); *Pollux Holding*, 329 F.3d at 75 (same).

Lebanon provides an adequate alternative forum, as the parties have confirmed by their substantial litigation against each other in the Lebanese courts for more than six years. Tellingly, at no point during their litigation in Lebanon did Plaintiffs ever raise their purported concerns about the independence or legitimacy of the Lebanese courts. *See* El Kai Decl., ¶ 9. Nor did Plaintiffs express any concerns regarding the legitimacy of the Lebanese courts in their initial Complaint in this case. Only in response to Defendants' pre-motion letter, which explained that Lebanon provides (and has provided) an adequate alternative forum to address the allegations underlying this case, did Plaintiffs devise additional new assertions regarding the alleged inadequacy of the Lebanese courts to handle this case. FAC, ¶¶ 27-31.

Lebanon possesses all of the characteristics of an adequate alternative forum for Plaintiffs' claims. *See* Decl. of Ziad El-Khoury ¶¶ 7-16 ("El-Khoury Decl."). As the Lebanese proceedings initiated by Plaintiffs confirm, Defendants are amenable to service in Lebanon and are subject to the jurisdiction of Lebanese courts and to Lebanese law. *See* El Kai Decl., ¶ 9. Further, despite Plaintiffs' newfound allegations, the Lebanese "judiciary is independent from the other branches of government," which is reflected in Lebanon's Constitution. El-Khoury Decl., ¶¶ 7-8. Other laws

embody "the principle of just, fair, and impartial court proceedings," including the Code of Civil Proceedings. *Id.* ¶ 9. There are several provisions in Lebanese law that "ensure a judge's impartiality" and independence and seek to protect against misconduct. *Id.* ¶¶ 10-14. In addition to domestic laws promoting the independence of judiciary, Lebanon has adopted international norms regarding the same, including the Basic Principles Pertaining to the Independence of the Judiciary, derived from the Seventh United Nations Congress on the Prevention of Crime and the Treatment of Offenders. *Id.* ¶ 15.

Not surprisingly, judges of this Court have found Lebanon to be an adequate alternative forum, even during the "unsettled conditions" of civil strife in the 1980s. *Gibbon v. Am. Univ. of Beirut*, 1983 U.S. Dist. LEXIS 13401, at *10-13 (S.D.N.Y. Sept. 27, 1983). Likewise in 2003, judges of this Court reasoned that, if Lebanon was an adequate alternative forum in 1983, when it "was torn by civil strife," then it certainly "remains an adequate forum today." *Ismail v. Am. Univ. of Beirut*, 246 F. Supp. 2d 330, 333 (S.D.N.Y. 2003); *see also Radian Int'l, LLC v. Alpina Ins. Co.*, 2005 WL 1656884, at *3 (N.D. Cal. July 14, 2005) (rejecting arguments that Lebanon was an inadequate alternate forum based on U.S. State Department Travel Warnings); *Jeha v. Arabian Am. Oil Co.*, 751 F. Supp. 122, 125 (S.D. Tex. 1990) (holding that Lebanon is an adequate alternative forum for a medical malpractice suit), *aff'd*, 936 F.2d 569 (5th Cir. 1991).

Plaintiffs' ATS claim does not avoid the force of this precedent. *Aguinda v. Texaco, Inc.*, 142 F. Supp. 2d 534, 351 (S.D.N.Y. 2001) (holding that *forum non conveniens* "doctrine applies in undiminished fashion to ATCA suits"), *aff'd on other grounds*, 303 F.3d 470 (2d Cir. 2002); *Flores v. S. Peru Copper Corp.*, 253 F. Supp. 2d 510, 531 (S.D.N.Y. 2002) (rejecting "plaintiffs' contention that as a matter of law the *forum non conveniens* doctrine cannot be applied to this ATCA case"); *aff'd*, 414 F.3d 233 (2d Cir. 2003).

**B.     Private and Public Interest Factors Strongly Disfavor a New York Forum.**

Both private and public interest factors weigh strongly in favor of dismissal.  Each private interest factor weighs in favor of litigating this dispute in Lebanon.  All of the evidence is in Lebanon and would require translation (from the original Arabic), "tipping the balance in favor of dismissal." *In re Alcon S'holder Litig.*, 719 F. Supp. 2d at 276; *Blanco v. Banco Indus. de Venez., S.A.*, 997 F.2d 974, 982 (2d Cir. 1993) (same).  Likewise, most, if not all witnesses are in Lebanon, beyond the reach of process to compel their attendance or the production of documents.  *See* FAC, ¶¶ 12, 13, 14, 20 (naming parties in Lebanon, including Messrs. Abou Abou Jaoude, Hamdoun, Safa, Hassan Ayash, and Hassan Mahmoud Ayash); *see Base Metal Trading SA v. Russ. Aluminum*, 253 F. Supp. 2d 681, 710-11 (S.D.N.Y. 2003) ("[S]triking number of [foreign] parties and witnesses" demonstrated "extreme inconvenience" of trying case in the United States.); *Banculescu v. Compania Sud Americana De Vapores, SA*, 2012 WL 5909696, at *8 (S.D.N.Y. Nov. 20, 2012) ("[T]he 'availability of compulsory process for unwilling witnesses' weighs significantly in favor of" a foreign forum because most potential witnesses "reside in Germany and Romania . . . outside the Court's subpoena power.").

The public interest factors also favor dismissal.  There is a significant "local interest in having localized controversies decided at home."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).  Lebanon has the greatest interest in the outcome of this controversy as it arose there.  A Lebanese court has already adjudicated the facts underlying this dispute, rejecting Plaintiffs' substantively-identical allegations, and related actions remain pending in Lebanese courts.  *See* El Kai Decl., ¶¶ 4-10.  In one of those pending cases, the issues implicate public interest on their face as they concern "the faith in [the Central Bank of Lebanon] and in the banking sector in general, as well as the public financial trust of the Lebanese government."  Ex. 6 to El Kai Decl., at 16.  The fact that Lebanese authorities decided to proceed with the three privately-initiated criminal claims further confirms Lebanon's regulatory interest in this dispute.  El Kai Decl., ¶ 26.

By contrast, New York has little interest in, or relationship to, this dispute. *See Murray v. BBC*, 81 F.3d 287, 293 (2d Cir. 1996) (the United States has no interest in disputes over events taking place in foreign country between foreign parties); *accord Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.*, 311 F.3d 488, 500-01 (2d Cir. 2002) (localized matters are for local courts); *Rationis Enters. Inc. of Pan. v. Hyundai Mipo Dockyard Co.*, 426 F.3d 580, 588 (2d Cir. 2005) ("[I]t is the place of the alleged wrongful act that tips the scale in favor of Korean law, for Korea, with its extensive shipbuilding business, possesses the greatest interest and responsibility in regulating the industry."). This is especially true here, where Lebanon would not recognize this Court's judgment because "a Lebanese judgment covering the same subject matter was entered first." El Kai Decl., ¶ 17.

Resolving this litigation in Lebanon also will obviate problems of conflict of laws and the application of foreign law, particularly as to the preclusive effect of the judgment rendered in Plaintiffs' Lebanese Action for alleged mismanagement of LCB. *See Overseas Nat'l Airways, Inc. v. Cargolux Airlines Int'l S.A.*, 712 F.2d 11, 14 (2d Cir. 1983) (dismissal appropriate if court must "untangle problems in conflict of laws, and in [foreign] law" (quotation omitted)); *Blanco*, 997 F.2d at 983 (district court may conclude that foreign country's law is "better addressed" by foreign courts). Additionally, Lebanese bank secrecy law applies to many of the documents at issue, *see* Ex. 3 to El Kai Decl., at 35, and "there is a much greater likelihood that [Lebanese] law will provide the rule of decision." *ACLI Int'l Commodity Servs. v. Banque Populaire Suisse*, 652 F. Supp. 1289, 1299 (S.D.N.Y. 1987) ("As to the issues of agency and bank secrecy, . . . both clearly rooted in Switzerland and involving exclusively Swiss citizens, there is a much greater likelihood that Swiss law will provide the rule of decision.").

## II.    THE LEBANESE PROCEEDINGS PRECLUDE ALL PLAINTIFFS' CLAIMS.

If this Court finds that dismissal based on *forum non conveniens* is inappropriate because judgment already has been entered against Plaintiffs in the substantively-identical Lebanese Action, then the Court alternatively should dismiss the FAC based on the Lebanese judgment in that action,

applying principles of preclusion, including international comity and *res judicata*. *See Norex Petroleum, Ltd. v. Access Indus.*, 416 F.3d 146, 162 (2d Cir. 2005) ("[P]rinciples of international comity permit a United States court to recognize the preclusive effect of a foreign judgment as a ground independent from *forum non conveniens* for dismissing a plaintiff's claim."), *aff'd on other grounds*, 631 F.3d 29 (2d Cir. 2010). When a plaintiff "is precluded from litigating a matter in a foreign jurisdiction because of an adverse earlier judgment by its courts," dismissal is required because of "[the] recognition of the foreign judgment in the interest of international comity, not *forum non conveniens*." *Id.* at 159.[4]

Under the doctrine of international comity, this Court should recognize a foreign judgment <u>unless</u> "enforcement of the judgment would offend the public policy of [New York]." *Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción*, 832 F.3d 92, 106 (2d Cir. 2016) (citation omitted); *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987) ("Federal courts generally extend comity whenever the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy."). As explained above, in March 2016, the Tribunal of First Instance of Beirut in the Lebanese Action rejected a substantively-identical set of claims brought by Plaintiffs against Defendants based on the same set of operative facts as alleged here, and that judgment against Plaintiffs would have preclusive effect under Lebanese law. *See* Decl. of El Khoury, ¶ 17. Because Plaintiffs did not—and cannot—claim that the Lebanese decision rejecting their claims on the merits violates public policy, international comity requires recognition of that Lebanese judgment.

Because this Court should recognize the Lebanese judgment against Plaintiffs, the next determination is what preclusive effect that decision should have in this case. *Alfadda v. Fenn*, 966 F.

---

[4] Alternatively, international comity requires dismissal to the extent that overlapping proceedings are ongoing in Lebanon. *See* El Kai Decl., ¶¶ 4-10; *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 210 (S.D.N.Y. 2002) (court can "abstain from exercising . . . jurisdiction in order to extend comity to related proceedings pending in other countries").

Supp. 1317, 1329 (S.D.N.Y. 1997). "[A] federal court should normally apply either federal or state law, depending on the nature of the claim, to determine the preclusive effect of a foreign country judgment." *Voreep v. Tarom Romanian Air Transp.*, 1999 WL 311811, at *3 (S.D.N.Y. May 17, 1999).

Federal and New York *res judicata* principles bar all of Plaintiffs' claims. As a judgment on the merits was rendered by a court of competent jurisdiction in the Lebanese Action, and the same parties were involved in both that case and here, *res judicata* is a complete bar to this case because "it is based upon the same set of operative facts" as alleged in the Lebanese Action. *See, e.g., Bloomquist v. Brady*, 894 F. Supp. 108, 118 (W.D.N.Y. Mar. 10, 1995); *see also De Masi v. Country Wide Home Loans*, 481 F. App'x 644, 646 (2d Cir. 2012) ("[T]he district court correctly determined that [plaintiff] was precluded from relitigating her claims" because a different court had "previously entered final judgment in three cases arising out of the same set of operative facts."). It is of no consequence if the exact same causes of action were not pursued by Plaintiffs in the Lebanese proceedings. *See Cameron v. Church*, 253 F. Supp. 2d 611, 619 (S.D.N.Y. 2003) ("New legal theories do not amount to a new cause of action so as to defeat the application of the principle of *res judicata*.") (citation omitted).

## III. THE CENTRAL BANK OF LEBANON AND SGBL ARE ABSENT, INDISPENSABLE PARTIES.

Additionally, Plaintiffs' claims must be dismissed because "a required-entity sovereign," the Central Bank of Lebanon, "is not amenable to suit." *Phil. v. Pimentel*, 553 U.S. 851, 867 (2008). Plaintiffs make extensive claims that the Central Bank of Lebanon was complicit in the alleged illegal activity underlying their claims, FAC, ¶¶ 77-89, including that "the Central Bank of Lebanon was aware that LCB was being used by Abou Jaoude and Hamdoun to launder funds derived from narcoterror operations, but took no action in part because of the Governor's relationship with Hamdoun." *Id.* ¶ 83. By claiming that the Central Bank of Lebanon "turn[ed] a blind eye" to alleged "money laundering and terrorist financing," Plaintiffs have essentially alleged that the Central Bank of

Lebanon, an institution of the Lebanese government, committed the same offenses and torts that they now wrongly allege Defendants committed. *Id.* ¶ 85.

In light of these allegations, the Central Bank of Lebanon is a "required" party under Fed. R. Civ. P. 19 because it has a "significant interest" in the adjudication of this case. *See, e.g.*, *TJGEM LLC v. Republic of Ghana*, 26 F. Supp. 3d 1, 13 (D.D.C. 2013) (Where "sovereign defendants have a significant 'interest relating to the subject of the action' and 'disposing of the action in [their] absence may . . . impede the sovereign defendants' ability to protect their interest,' the sovereign defendants are required parties under Federal Rule of Civil Procedure 19(a)(1)(B)."); *id.* (holding that Ghana was a required party under Rule 19 because plaintiff alleged "that a major Ghanaian official . . . engaged in corrupt practices"), *aff'd on other grounds*, 2015 WL 3653187 (D.C. Cir. June 9, 2015); *cf. Storey v. O'Brien*, 2009 WL 3075602, at *2 (E.D.N.Y. Sept. 23, 2009) ("[A]ll of the parties alleged to have defrauded Plaintiffs . . . should be joined in this case.").

However, the Central Bank of Lebanon cannot be compelled to appear in this case because it has sovereign immunity. *See Libancell S.A.L. v. Republic of Leb.*, 2006 WL 1321328, at *2 (S.D.N.Y. May 16, 2006) ("[B]oth the Republic of Lebanon and the Central Bank of Lebanon are subject to the FSIA."). This requires dismissal of the FAC. *Pimentel*, 553 U.S. at 867 ("A case may not proceed when a required-entity sovereign is not amenable to suit."); *TJGEM,* 26 F. Supp. 3d at 13 ("*Pimentel* holds unambiguously that . . . where a sovereign is a required party for the purposes of Rule 19, the case must be dismissed.").

Separately, SGBL is a required party under Rule 19. The Lebanese court held—in agreement with assertions that Plaintiffs made in the Lebanese Action—that SGBL, which acquired LCB's assets and liabilities pre-liquidation, must be joined to any adjudication of Plaintiffs' mismanagement claims. *See* Ex. 1 to Berger Decl., at 23 ("[SGBL] should be implicated in the present lawsuit because it has replaced the defendant bank in all its rights and duties toward third parties."); *id.* at 44 ("[P]laintiffs

request to implicate [SGBL] in the present lawsuit . . . because it has subrogated in lieu of the defendant bank in all of it[s] rights and obligations towards third parties . . . ."). LCB transferred its assets to SGBL over four years before Plaintiffs filed this suit. *See El Kai Decl.*, ¶ 15. One of those assets included the right to bring an action on behalf of LCB, as Section 2.2 of the Asset Purchase Agreement broadly defines the assets transferred to SGBL as including "any and all rights, titles and interests of the Seller in and to the Properties, assets, and rights of every nature, kind and description, tangible and intangible . . . ." *See* Ex. 7 to El Kai's Decl., at 17; *see also* FAC, ¶ 84 (indicating that LCB sold "substantially all assets and liabilities to another Lebanese bank" prior to filing suit). Because SGBL now holds the right, if any, to bring an action on LCB's behalf, SGBL is an indispensable party.

## IV.    PLAINTIFFS' ATS CLAIM FAILS BECAUSE NEITHER LCB NOR PLAINTIFFS IS A VICTIM OF THE ALLEGED ATS VIOLATIONS.

In their initial Complaint, Plaintiffs invoked federal jurisdiction through two RICO claims. Plaintiffs deserted these claims in their FAC in response to Defendants' pre-motion letter, which explained the numerous reasons why those RICO claims would fail. Faced with no basis for federal jurisdiction after abandoning their RICO claims, Plaintiffs concocted a theory that Defendants are derivatively liable under the ATS for alleged economic damages to LCB, a corporation, for aiding and abetting "war crimes" and "crimes against humanity" committed by Hezbollah against third parties. But the ATS is a statute designed to "protect[] human rights internationally," not to protect corporations from alleged mismanagement.[5] *See Chavez v. Carranza*, 559 F.3d 486, 492 (6th Cir. 2009). Because the square peg of an ATS claim does not fit into the round hole of this business dispute over the alleged mismanagement of LCB, the ATS claim should be dismissed.

---

[5] Because Plaintiffs' ATS allegations substantively allege "mismanagement and adverse domination of LCB" by Defendants, Lebanese law would treat the ATS claim as one under domestic, not international, law. *See* El-Khoury Decl., ¶¶ 17-20.

First, it is doubtful that a corporation like LCB—on whose behalf Plaintiffs purport to sue derivatively under the ATS—ever could sue for crimes against humanity. *See Chowdhury v. Worldtel Bangl. Holding, Ltd.*, 588 F. Supp. 2d 375, 387 (E.D.N.Y. 2008) ("[T]here is no viable theory under the ATCA upon which the corporate plaintiffs here can recover" because "[c]orporations . . . are not subject to cruel, inhuman or degrading treatment."), *aff'd in part & rev'd in part on other grounds*, 746 F.3d 42 (2d Cir. 2014). Even so, a corporation like LCB cannot sue under the ATS unless the alleged crimes against humanity <u>injured LCB itself, not third parties</u>. *See Viera v. Eli Lilly & Co.*, 2010 WL 3893791, at *1 (S.D. Ind. Sept. 30, 2010) (the ATS provides "a jurisdictional basis for foreign citizens to obtain justice . . . for 'torts' committed <u>against them</u>") (emphasis added); *Keating-Traynor v. Westside Crisis Ctr.*, 2006 WL 1699561, at *7 (N.D. Cal. June 16, 2006) (same).

Here, LCB was not the victim of the alleged crimes against humanity—rather, the victims were those injured by Hezbollah rocket attacks. Plaintiffs consciously mimic the ATS claims of the *Licci* plaintiffs, FAC ¶ 7, but the *Licci* plaintiffs sued for injuries they suffered from Hezbollah rocket "attacks targeting civilians" and "killing or injuring dozens" in July and August 2006. FAC, ¶¶ 144, 74. By contrast here, neither LCB nor the individual Plaintiffs was a victim of those attacks.[6] Case law clearly distinguishes between ATS claims against corporations (which may be brought by individual victims of crimes against humanity), and mere business torts under common law (which may be brought by shareholders of a corporation that allegedly aided or abetted such crimes).[7] Because

---

[6] *See Licci v. Leb. Can. Bank, SAL*, 834 F.3d 201, 206 (2d Cir. 2016) ("According to . . . [the] complaint, Hezbollah . . . fired thousands of rockets into northern Israel . . . [and] Plaintiffs or their family members were injured or killed by these attacks."); *Licci v. Leb. Can. Bank, SAL*, No. 1:08-cv-07253-GBD (S.D.N.Y. Jan. 22, 2009), Compl., at 19-38 (nearly twenty pages of allegations related to the alleged injuries plaintiffs experienced as a result of Hezbollah's rocket attacks in 2006).

[7] *See In re Chiquita Brands Int'l, Inc.*, 536 F. Supp. 2d 1371, 1371-72 (J.P.M.L. 2008) (involving two types of claims: ATS claims on behalf of victims murdered by the terrorist organization; and mismanagement-type actions filed by Chiquita's shareholders; *compare Does 1-377 Individually and/or as Legal Heirs and/or Personal Representatives of Does 1A-375 v. Chiquita Brands Int'l*, No. 1:07-cv-10300-HB (S.D.N.Y. Nov. 14, 2007), Compl. ¶¶ 604-22 (ATS claims by relatives of decedents); *and Carrizosa, v. Chiquita Brands Int'l*, No. 07-60821 (S.D. Fla. June 14, 2007), Compl. ¶¶ 64-75 (ATS claims by relatives of decedents); *with City of Phila. Pub. Emp. Ret. Sys. v. Aguirre*, No: 1:07-cv-00851-SJD (S.D. Ohio Oct. 12, 2007), Compl. ¶¶ 70-76 (breach of fiduciary duties claim by shareholders); *and Sheet Metal Workers Local Pension Fund v. Aguirre*, No. 1:07-cv-

LCB and the Plaintiffs individually were not victims of the Hezbollah rocket attacks underlying the ATS claim, the ATS claim should be dismissed.

Second, and for the same logical reason, Plaintiffs' ATS aiding and abetting theory fails, regardless of whether that theory is sufficient for the *Licci* plaintiffs. In *Licci*, the plaintiffs alleged that "LCB 'provided extensive banking services to [Hezbollah]' that 'caused, enabled[,] and facilitated the terrorist rocket attacks in which the plaintiffs and their decedents were harmed and killed." 834 F.3d at 215 (emphasis added) (citation omitted). By contrast here, neither LCB nor the individual Plaintiffs sustained injuries from those attacks by Hezbollah, the principal perpetrator of the alleged underlying tort. Plaintiffs and LCB thus lack the requisite injury to pursue any ATS claim hypothesizing that Defendants caused LCB to aid or abet those attacks.[8]

Third, and independent of that flaw, Plaintiffs' ATS aiding-and-abetting theory is inherently implausible as a matter of chronology. *See Chowdhury*, 588 F. Supp. 2d at 379 (applying *Iqbal* plausibility requirement to ATS claims). The international law violations on which Plaintiffs' ATS claim focuses consist of Hezbollah attacks in July and August 2006. *See* FAC, ¶ 74. But LCB's alleged money-laundering in support of Hezbollah did not commence until after those bombings occurred. *See, e.g.*, FAC, ¶ 54 ("On November 30, 2006, Joumaa opened a bank account at LCB to commence the money laundering operations."). Neither LCB nor Defendants plausibly could have aided and abetted the bombings in July and August 2006 through an alleged money laundering scheme that the FAC itself

---

01957-PLF (D.D.C. Oct. 31, 2007), Compl. ¶¶ 109-23 (breach of fiduciary duty, corporate waste, and *ultra vires* conduct claims by shareholders).

[8] Indeed, in finding the *Licci* plaintiffs' aiding and abetting theory viable, the Second Circuit repeatedly emphasized that the rocket attacks launched by Hezbollah killed or injured the *Licci* plaintiffs or their family members. *See Licci*, 834 F.3d at 218 ("Plaintiffs adequately allege that these wire transfer services had a substantial effect on Hezbollah's actions insofar as they 'enabled' and 'facilitated' terrorist rocket attacks harming or killing Plaintiffs and their decedents."); *id.* (emphasis added) ("Plaintiffs further allege that LCB's wire transfers 'substantially increased and facilitated [Hezbollah's] ability to plan, to prepare for[,] and to carry out rocket attacks on civilians,' including the rocket attacks injuring or killing Plaintiffs and their family members.") (emphasis added) (citation omitted). Plaintiffs' aiding and abetting theory also would fail under Lebanese law, which holds the principal (Hezbollah, or even conceivably LCB) liable for acts of alleged agents like Defendants. *See* El-Khoury Decl., ¶¶ 33-34.

alleges did not commence until after the bombings occurred. *See, e.g., Ofisi v. BNP Paribas, S.A.*, 2017 WL 4355922, at *1, *7, *14 (D.D.C. Sept. 29, 2017) (dismissing aiding and abetting crimes against humanity claim brought against a bank under the ATS because "most of the facts alleged with respect to [the bank's] conduct post-date[d] the embassy bombings," meaning "there [we]re no well-pled allegations that any funds processed by [the bank] were used to carry out the embassy bombings").[9]

## V.    PLAINTIFFS' DERIVATIVE CLAIMS FAIL FOR ADDITIONAL REASONS.

### A.    Plaintiffs Lack Standing to Bring a Derivative Suit on Behalf of LCB Because LCB's Assets Were Transferred to SGBL.

A plaintiff must own the claim it pursues to have standing. *See Compagnie Noga D'Importation Et D'Exportation S.A. v. Russ. Fed'n*, 2008 WL 3833257, at *6 (S.D.N.Y. Aug. 15, 2008) ("A party that has assigned its entire interest in a claim lacks standing to bring suit on that claim."), *aff'd*, 350 F. App'x 476 (2d Cir. 2009); *In re Motors Liquidation Co.*, 533 B.R. 46, 52 (Bankr. S.D.N.Y. 2015) ("[Plaintiff] is asking this Court's assistance in prosecuting a claim she no longer owns . . . [t]hat leaves her without a substantive right to enforce, . . . and, additionally, without the Article III standing that is essential to bring a claim in the federal courts."), *aff'd*, 2016 WL 3461359 (S.D.N.Y. June 21, 2016) and *aff'd*, 689 F. App'x 95 (2d Cir. May 3, 2017).

"[S]hareholder derivative suits are intangible assets of a corporation that pass along with a sale of a corporation's assets, and only an acquiring company and its shareholders can pursue derivative

---

[9] Additionally, international comity requires dismissal of Plaintiffs' ATS claim given Plaintiffs' allegations that the Central Bank of Lebanon was complicit in the alleged international law violations of LCB, and given the ongoing proceedings in Lebanon concerning these same claims. *See supra* at Part II. The Supreme Court has "repeatedly stressed the need for judicial caution in considering which claims could be brought under the ATS, in light of foreign policy concerns." *Kiobel v. Royal Dutch Petro. Co.* ("*Kiobel II*"), 569 U.S. 108, 116 (2013); *see also Sosa v. Alvarez-Machain*, 542 U.S. 692, 727-28 (2004); *see also Kiobel II*, 569 U.S. at 124 ("Nothing about this historical context suggests that Congress also intended federal common law under the ATS to provide a cause of action for conduct occurring in the territory of another sovereign."). Indeed, in cases like this, the Supreme Court has found that countries like Lebanon should be allowed to regulate their own financial institutions and affairs. *See F. Hoffman-LaRoche Ltd. v. Empagran S.A.*, 542 U.S. 155, 165 (2004) (ruling that, in foreign-injury cases, "application of [U.S.] laws creates a serious risk of interference with a foreign nation's ability independently to regulate its own commercial affairs" and the "justification for that interference [is] insubstantial"). This is because financial institutions like LCB are "important enough that their home countries' governments are acutely concerned about their financial well-being and exposure to lawsuits." *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 156 n.21 (2d Cir. 2014).

claims." *Firstcom, Inc. v. Qwest Corp.*, 2006 WL 2666301, at *4 (D. Minn. Sept. 18, 2006) (citing *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 435-36 (8th Cir. 1999)); *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank*, 247 F. Supp. 3d 377, 409-15 (S.D.N.Y. 2017) (dismissing derivative claims for lack of standing because rights to bring suit had been previously transferred to a non-party entity by way of agreement)).  Here, Plaintiffs lack standing to bring suit on behalf of LCB because, long before Plaintiffs commenced this action, LCB transferred its assets to SGBL, including the right to bring an action on behalf of LCB.  El Kai Decl., ¶¶ 15-16 (explaining that all of LCB's assets and liabilities were transferred to SGBL by way of the Asset Purchase Agreement "in accord with [Lebanese] Law Number 192 of 4 January 1993 on Facilitating Bank Mergers") & Ex. 7 to El Kai Decl., at 17; *see also* FAC, ¶ 84 (indicating that LCB sold "substantially all assets and liabilities to another Lebanese bank" prior to filing suit).

## B.    Plaintiffs Waived Any Right They Had to Pursue Their Derivative Claims.

Alternatively, Plaintiffs waived their right to bring derivative claims in this case for two reasons established by decisions of the Lebanese courts: (i) Plaintiffs were actively involved in the management and operations of LCB, *see Martindale v. Gleasman*, 2008 WL 2627457, at *5 (W.D.N.Y. June 27, 2008) (citations omitted) ("[A] shareholder who participated in the challenged activity or did not oppose the challenged actions is estopped and may not subsequently challenge its legality in a derivative suit."); and (ii) LCB shareholders, including Plaintiffs, entered into a resolution in connection with approval of the U.S. forfeiture-case settlement, *see* FAC ¶ 6, where they waived all claims against each other in connection with the settlement payment.  As the Lebanese court held, "plaintiffs [including Abu Nahl and Nest Investments] . . . comprised the decision of the general assembly held on 18/6/2013, taken unanimously by the shareholders saying that they all agree that the settlement amount is a waiver of any claim in front of themselves or in front of any other shareholder."  *See* Ex. 3 to El Kai Decl., at 38.

### C.    Plaintiffs Cannot Sue Derivatively in LCB's Name.

Additionally, "the rights of a shareholder in a foreign company (including the right to sue derivatively) are determined by the law of the place where the company is incorporated." *In re BP p.l.c. Derivative Litig.*, 507 F. Supp. 2d 302, 307 (S.D.N.Y. 2007). Under this rule, Plaintiffs' "derivative" claims on behalf of LCB (which include the ATS claim) must be dismissed because they would be unable to maintain claims in LCB's name under Lebanese law. *See, e.g., id.* at 306-10 (dismissing derivative action on behalf of corporation incorporated in England and Wales because "English law governs and prohibits derivative actions"); *Seybold v. Groenink*, 2007 WL 737502, at *6 (S.D.N.Y. Mar. 12, 2007) (dismissing derivative action on behalf of Netherlands corporation because "plaintiff has not pled that she has brought her suit through any of the[] means" available for a minority shareholder under Dutch law). Under Lebanese law, Plaintiffs do not have the right to bring a derivative claim in LCB's name, as they purport to do here. Instead, as shareholders, following the alleged failure by LCB to sue on these claims, FAC ¶¶ 140, 142, Plaintiffs as LCB shareholders may sue solely in their own name, and only for damages within the limit of [their] interest in the company. *See* El Kai Decl., ¶ 15; El-Khoury Decl., ¶ 19. By contrast here, Plaintiffs purport to sue not only in LCB's name, but also to recover <u>all</u> of LCB's alleged damages, rather than the alleged damages only to Plaintiffs' minority shareholding stake.

## VI.    PLAINTIFFS' COMMON LAW CLAIMS FAIL FOR ADDITIONAL REASONS.

### A.    Plaintiffs' Common Law Claims are Time-Barred.

Plaintiffs' common law claims (all but one of which is a derivative claim) are untimely under New York law, which establishes the following statutes of limitations: fraudulent inducement—six years from the time it accrues, or within two years of discovery; breach of fiduciary duty, abuse of control, corporate waste, and unjust enrichment—six years. *See Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 19 (2d Cir. 1983); *Myers Indus. v. Schoeller Arca Sys., Inc.*, 171 F. Supp. 3d 107, 116-17 (S.D.N.Y.

2016); *Gonzales v. Nat'l Westminster Bank PLC*, 847 F. Supp. 2d 567, 570 (S.D.N.Y. 2012); *Blake v. Blake*, 638 N.Y.S.2d 632, 632-33 (N.Y. App. Div. 1996).[10]

Plaintiffs' allegations alone confirm that their claims are time-barred. LCB, on whose behalf Plaintiffs purport to sue for mismanagement, necessarily would have "discovered" any injury resulting from wire transfers at the time that it made those transfers, as early as in 2006. *See* FAC, ¶¶ 54, 56.[11] While Plaintiffs claim that Defendants "concealed their misconduct" and that the public disclosure of the alleged money laundering scheme in 2011 "came as a shock to Abu Nahl and the Nest Group," *id.* ¶¶ 133, 162, these claims are belied by their own allegations that (i) Abu Nahl had been an active member of the board of directors since June 28, 2007, (ii) Nest Group representatives held three board seats, (iii) Nest Group member Sh. Nasser Bin Ali Bin Saud Al Thani had been appointed to the Audit Committee, and (iv) attended Audit Committee meetings from at least June 2008. *See id.* ¶¶ 96, 105, 106, 109. Further, as to the FAC's claim that Defendants fraudulently induced Plaintiffs' 2006 investment in LCB, Plaintiffs necessarily discovered the basis for that claim not later than 2011, but they did not bring that claim here within the two-year discovery period prescribed by New York limitations law.

As the Lebanese courts recognized, Plaintiffs were "fully aware of all matters and details" at LCB and kept up with the "bank progress and development" and the "process of managing its local, international and universal investments." Ex. 6 to El Kai Decl., at 10. As the Lebanese court held, Plaintiffs "cannot pretend that they [were] unaware of those precise details," *id.*, or "pretend to have

---

[10] Under N.Y. C.P.L.R. § 202, Lebanese statutes of limitations would govern this suit if they are shorter than the New York statutes of limitations. However, if Plaintiffs' claims are untimely under New York law, as here, then no analysis under Lebanese law is necessary. *See Bechtel Do Brasil Construções Ltda. v. UEG AraucÁria Ltda.*, 638 F.3d 150, 154 (2d Cir. 2011) ("[U]nder New York's borrowing statute, 'the claim must be timely under New York law as a threshold issue before considering the law of the jurisdiction where the cause of action accrued.'") (citation omitted).

[11] It defies logic that LCB could have concealed the existence of these transfers from itself. *See Kirschner v. Grant Thornton LLP*, 2009 WL 1286326, at *10 (S.D.N.Y. Apr. 14, 2009) ("The Trustee's attempt to parse the [corporation] fraud fails because the Trustee 'cannot plausibly assert that [corporation's] structure concealed its debts from itself.'") (citation omitted), *aff'd*, 626 F.3d 673 (2d Cir. 2010).

forgotten that they approved" many of the activities about which they now complain, Ex. 1 to Berger Decl., at 28. Abu Nahl, for instance, "voted unreservedly on all adopted resolutions" throughout his tenure on LCB's board. *See* Ex. 5 to El Kai Decl., at 9. He also remained generally "on good terms and in continuous communication with the supervisory bodies in [LCB]" and "did not object to any of the decisions" by the LCB board. *Id.* Likewise, Sh. Nasser was heavily involved in decisions related to governance and compliance and assigned "one of his most important compliance experts . . . to work with the audit committee . . . to evaluate the situation and suggest improvements to compliance processes in the bank." *Id.*

Further, to the extent Plaintiffs raised any objections or concerns about compliance and internal controls starting in 2007 (as alleged in the FAC), this only confirms that Plaintiffs would have been on inquiry notice of any supposed wrongdoing or fraud at that time. *See* FAC, ¶ 98 ("Almost immediately after the transaction closed [], the Nest Group encountered difficulties" and there were "immediate red flags for the Nest Group."); *id.* ¶¶ 99-103. But Plaintiffs did not file their original Complaint in this action until December 14, 2015—more than four years after they filed their substantively-identical shareholder action in the Lebanese courts. And Plaintiffs cannot rely on the doctrine of fraudulent concealment to toll the limitations period beyond the point in time at which they were on inquiry notice. *See Stone v. Williams*, 970 F.2d 1043, 1048-49 (2d Cir. 1992) (holding that tolling due to allegations of fraudulent concealment is "not indefinite" and lasts only until a plaintiff is put on notice of alleged fraud); *Adams v. Deutsche Bank AG*, 2012 WL 12884365, at *6 (S.D.N.Y. Sept. 24, 2012), *aff'd*, 529 F. App'x 98 (2d Cir. 2013); *Butala v. Agashiwala*, 916 F. Supp. 314, 319-20 (S.D.N.Y. 1996) (after a plaintiff has been placed on inquiry notice of a potential claim, unsubstantiated allegations of fraudulent concealment cannot be used to further extend the applicable limitations period); *McDonald v. Brown*, 2014 WL 116003, at *5 (S.D.N.Y. Jan. 13, 2014) (fraudulent inducement claim was time-barred where plaintiff had knowledge that placed him "on notice" of

alleged fraud); *Gonzales*, 847 F. Supp. 2d at 570-72 (rejecting fraudulent concealment argument and holding that breach of fiduciary duty claim was time-barred where it was "clear that Plaintiffs were on notice of . . . alleged fraud . . . more than two years before the [] Complaint was filed").[12] Accordingly, Plaintiffs' common law claims—both derivative and direct—are untimely and should be dismissed.

### B. Plaintiffs' Common Law Claims Fail for Several Additional Reasons.

Plaintiffs' common law claims fail for three additional reasons. <u>First</u>, after the Court dismisses Plaintiffs' ATS claims, it should decline to exercise supplemental jurisdiction over the common law claims. *See Cohen v. Postal Holdings LLC*, 873 F.3d 394, 404 (2d Cir. 2017) (Calabresi, J., concurring) ("It is important to emphasize that when appellate courts review district courts' decisions to exercise supplemental jurisdiction after all federal claims have been dismissed, the default rule is that federal courts should not decide related state-law claims . . . ."); *Yanchukov v. Finskiy*, 2017 WL 3491965, at *8 (S.D.N.Y. Aug. 14, 2017) (citing *Valencia ex rel. Franco v. Lee*, 316 F. 3d 299, 305 (2d Cir. 2003)) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

<u>Second</u>, Plaintiffs' fraudulent inducement claim fails because it lacks the requisite particularity under Fed. R. Civ. P. 9(b). *See Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000). While Plaintiffs make general, conclusory allegations concerning how they were fraudulently induced to purchase shares in LCB, such allegations fall far short of meeting the heightened standard under Rule 9(b).

---

[12] To invoke the doctrine of fraudulent concealment, a plaintiff must also meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See Salinger v. Projectavision, Inc.*, 934 F. Supp. 1402, 1412 n.6 & 1417 (S.D.N.Y. 1996). While Plaintiffs in this case have alleged fraudulent concealment in a conclusory manner, *see* FAC, ¶ 166, they do not set forth sufficient facts to support such a claim.

Third, the claims for abuse of control and corporate waste are not separate and independent claims; rather, these factual allegations are subsumed in the claim for breach of fiduciary duty, *see Amfesco Indus., Inc. v. Greenblatt*, 568 N.Y.S.2d 593, 596-97 (N.Y. App. Div. 1991) (categorizing claims of waste and mismanagement of corporate assets as breaches of fiduciary duty); *see also Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004). And, the unjust enrichment claim fails because the Complaint does not allege what benefit was unjustly conferred on Defendants at LCB's expense. *See Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 410 (S.D.N.Y. 2013) ("The [complaint] is silent on what benefit was unjustly conferred on Bessemer at Plaintiffs' expense, and dismissal would be proper on that basis alone.").[13]

## CONCLUSION

For the foregoing reasons, Plaintiffs' First Amended Complaint should be dismissed with prejudice.

Dated: December 11, 2017
Washington, D.C.

Respectfully submitted,

/s/ Mitchell R. Berger
Mitchell R. Berger (MB-4112)
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, N.W.
Washington, D.C. 20037
Phone: 202-457-6000
Fax:     202-457-6315

*Attorneys for Defendants Georges Zard Abou Jaoude, Mohamad Hamdoun, and Ahmad Safa*

---

[13] To the extent that Plaintiffs claim that Lebanese law applies to their common law claims, their claims fail under Lebanese law as well. *See* El-Khoury Decl., ¶¶ 21-34.