UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Ghazi Abu Nahl, et al.                    )<br>                                                       )<br>            Plaintiffs,                      )<br>                                                       )<br>     v.                                              )   Civ. No. 1:15-cv-9755 (LGS)(JCF)<br>                                                       )<br> Georges Zard Abou Jaoude, et al.     )<br>                                                       )<br>            Defendants.                    )<br>                                                       )<br>                                                       )  | |

**DECLARATION OF ZIAD EL-KHOURY**

I, Ziad El-Khoury, hereby swear and affirm as follows:

1. I am the founder and managing partner of the law firm of El-Khoury & Partners Legal Counsel in Beirut, Lebanon, and I am duly licensed to practice law in Lebanon.

2. I hold a Bachelor's Degree in Lebanese law, and an LLM in international studies from American University (Washington College of Law) in Washington, D.C. I am fluent in Arabic and English. My curriculum vitae is attached as Exhibit 1.

3. I have a wide range of experience in corporate, financial, securities, real estate and telecommunications matters, with a particular emphasis on banking, corporate finance, and international business. I have handled matters involving litigation, bankruptcy, and alternative dispute resolution.

4. I do not currently represent, and have not previously represented, Lebanese Canadian Bank ("LCB"), LCB's liquidators, Messrs. Georges Zard Abou Jaoude or Mohamad Hamdoun, or Mr. Ahmad Safa. I have submitted an Affirmation in the case of *Licci v. Lebanese Canadian Bank, SAL* in the Supreme Court of the State of New York, County of Kings, on the issue of service of

process in foreign suits on Lebanese nationals and enforcement of judgments entered by foreign courts against Lebanese nationals.

5. I was asked by counsel for Messrs. Abou Jaoude, Hamdoun, and Safa in the above-referenced case to provide background and information on the structure of the Lebanese court system, as well as on the laws of Lebanon, and the relevant statutes of limitations. As for the laws of Lebanon, I was asked to provide an opinion on whether Lebanese law recognizes and allows the following types of claims:

   a. a claim for a violation of "international law";

   b. a shareholder derivative claim on behalf and in the name of a Lebanese business entity for an alleged violation of international, rather than domestic, law;

   c. a claim based on allegations of aiding and abetting;

   d. a claim based on a principal suing its agents for allegedly aiding and abetting the principal in committing a tort or a crime; and

   e. claims that are comparable to U.S. civil claims of fraud in the inducement, breach of fiduciary duty, abuse of control, corporate waste, and unjust enrichment.

6. I respectfully submit that, as a result of my training in Lebanese law and understanding of U.S. law, I have a sufficient basis for assessing whether comparable claims are available under the legal systems of both jurisdictions.

### Independence of the Lebanese Judicial System

7. In Lebanon, the Constitution provides for three branches of government: an executive, a legislature, and a judiciary.

8. The judiciary is independent from the other branches of government. Lebanon's Constitution reflects judicial independence, as: (a) Section E of the Preamble to the Constitution provides that "[t]he system is based upon the principle of separation of powers, their balance and their cooperation"; (b) Part II of the Constitution lists the various powers, including the legislative

power, the executive power and the judicial power; and (c) Article 20 indicates that judges are independent in exercising their functions. Specifically, Article 20 reads: "[T]he judges, both of the supreme and inferior courts, shall act independently in arriving at deciding cases, and shall pronounce judgments and decisions in the name of the Lebanese people."

9. The principle of just, fair, and impartial court proceedings is embodied not only in Lebanon's Constitution, but also in other laws, including the Code of Civil Proceedings ("CCP"). For instance, Article 1 of the CCP indicates that the judiciary is an independent authority, relative to other authorities, in matters of the establishment of a case as well as pronouncing the verdict, and that any restriction not stipulated by law cannot limit its independence. Pursuant to the CCP, the judicial system allows for a wide series of appeals to guarantee that the right of defense is upheld, including appeals before the second degree courts and third degree courts (i.e., the final courts of appeals known as the "Court of Cassation").

10. The process of becoming a judge in Lebanon is highly selective and conditioned on passing several levels of difficult examinations. Further, new judges undergo years of specialized training before being assigned to a court.

11. Several provisions of Lebanese law seek to ensure a judge's impartiality, including by protecting judges against any transfer, dismissal from the bench, or outside interference with their work. For instance, Article 44 of the law governing the organization of the judiciary (Decree-Law No. 150/83) provides that judges shall perform their duties independently and shall not be dismissed from the judiciary unless otherwise provided by law. To further ensure independence of the judiciary, Article 47 prohibits judges from combining judgeships with public service or with any other profession or employment, with the exception of teaching at higher education establishments after authorization by the Minister of Justice.

12. The Supreme Judicial Council, headed by the First President, or Chief Justice, of the Court of Cassation, is in charge of judicial appointments, transfers, training, and disciplinary actions (paragraph d of article 5 of Decree Law number 150/83). In 2005, the Ministry of Justice issued the Code of Judicial Ethics, which establishes the following principles governing the judiciary: independency, impartiality, integrity, moral courage, modesty, loyalty and dignity, competency, and diligence.

13. Several other laws govern a judge's conduct, the Penal Code (Decree Law number 340 issued on 01/03/1943 and its amendments), the Public Servant's Law (Decree Law number 112 issued on 12/06/1959), the Criminal Procedure Code (Law number 328 issued on 02/08/2001), the CCP, and the Law on Unjust Enrichment (Law number 154 issued on 27/11/1999). For instance, the Law of Unjust Enrichment requires certain government officials, including judges, to disclose their financial assets, as well as those of their spouses and minor children, to the First President, or Chief Justice, of the Court of Cassation upon the commencement of their functions (paragraph 1 of Article 4 of the Law number 154 issued on 27/11/1999).

14. In turn, under Article 44 of Decree Law number 150/83, judges who engage in corruption are subject to criminal prosecution. Furthermore, under Article 741 of the CCP, the State may be liable for acts performed by judges in exercising their functions, including any miscarriage of justice, fraud, bribery, and misconduct.

15. In addition to domestic laws promoting the independence of the judiciary, Lebanon acceded to the International Covenant on Civil and Political Rights in 1972. Article 14 of the Covenant provides, among other things, that "[a]ll persons shall be equal before the courts and tribunals" and "everyone shall be entitled to a fair and public hearing by a competent, independent and impartial tribunal established by law." Lebanon has also adopted the Basic Principles Pertaining

to the Independence of the Judiciary, derived from the Seventh United Nations Congress on the Prevention of Crime and the Treatment of Offenders, which was held in Milan, Italy in 1985.

16. For all these reasons, it is not surprising that the judicial system in Lebanon is the primary method of dispute resolution, and the vast majority of disputes are referred to courts rather than domestic arbitration.

### A Claim for a Violation of "International Law"

17. I have reviewed the First Amended Complaint filed by the Plaintiffs in the above-captioned case. The First Cause of Action listed in the Complaint is an alleged "Violation of the Law of Nations," brought as a purported "Derivative" claim on behalf of LCB. This cause of action alleges that the Defendants committed certain acts that are prohibited by "customary international law," for which they claim a private cause of action is permitted under 28 U.S.C. § 1350.

18. As it pertains to Messrs. Abou Jaoude, Hamdoun, and Safa, Plaintiffs' First Cause of Action is principally based on allegations of mismanagement and adverse domination of LCB.

19. Lebanese law (specifically, Articles 166-168 of the Lebanese Code of Commerce ("LCC")) permits claims by shareholders for mismanagement or misconduct by directors or officers, but only "within the limit of his [the shareholder's] interest in the company"—not for the company's entire alleged damage from director/officer mismanagement/misconduct. *See* LCC Art. 168. Under Article 101 of the CCP, the exclusive jurisdiction for such claims is in the court of the principal place of business of the company in question. *See* Beirut First Instance Court, number 286, dated 06/11/1991 Akar vs. Najjar. Numerous derivative suits of this type are brought yearly before the commercial courts of Beirut.

20. Lebanese law recognizes such a claim only if pled as a violation of domestic law, not if pled as a violation of "international law," as is the case in Plaintiffs' First Cause of Action.[1] Lebanese law does not recognize a civil right of action for an alleged violation of international law as such, but instead would recognize a civil right of action under Lebanese law if the same underlying conduct violates domestic law.

### Lebanese Counterparts to "Fraudulent Inducement"

21. There are counterparts to a claim of "fraudulent inducement" under Lebanese law.

22. Articles 208 and 209 of the COC allow claims of "deceit." Deceit, based on a lack of consent, is grounds for declaring a contract void whenever (i) the deceit is the motive without which the deceived party would not have contracted and (ii) the deceived party is prejudiced. Deceit claims can be filed against all other contracting parties, as well as all third parties responsible for, or benefiting from, the deceit.

23. Article 97 of the LCC provides that any fraudulent act aimed at collecting subscriptions or inducing the disbursement of monies shall be subject to the sanction of fraud set forth in Articles 655 to 657 of the Lebanese Criminal Code.

---

[1] According to scholars and Court precedents. the directors or officers are personally liable towards the shareholders or towards prejudiced third parties for acts of fraud or acts that violate the law or the company's bylaws, in particular the following acts: actions that are penalized under the Lebanese general criminal law (fraud - breach of trust - bankruptcy or fraudulent bankruptcy - concealment of profits of the company); or under the Code of Commerce (distribution of fake profits, not publishing the balance sheet); disposing by one or all of the members of the Board of Directors of the Company's assets fraudulently; carrying a person to subscribe to the shares of the company or to buy these shares for more than their value based on false or incorrect statements or based on fictive distribution of profits; deceiving the shareholder by concealing the size of losses of the company at the expense of his interest or on the embezzlement of profits attributable to the shareholder or to cause, due to mismanagement, the embezzlement of funds paid by a shareholder to free his shares. Furthermore, article 166 of LCC grants the shareholder the right to sue for damages as a result of the civil liability arising from the actions of the Chairman or members of the Board of Directors. (The Criminal Court (الهيئة الاتهامية)in Beirut No. 371 dated 30/10/1968 Moghabghab vs. Ahli Bank et al.). Where the plaintiff has the right to bring the individual action against the members of the board of directors as a shareholder in the defendant company, he must prove that the damage resulted from their actions (fraud - violation of the law violating the company's bylaws) (Beirut first instance court ,3rd Chamber of Commerce ruling No. 54 dated 08/02/2000 claim Baaklini vs. The Lebanese Cement Company SAL).

24. Article 107 of the LCC provides that board members of a joint stock company and the auditors who commit a fault have joint civil liability toward all persons who suffer damage as a result of the distribution of fictitious dividends. Article 107 further provides for criminal liability for fraud where dividends are distributed without a proper balance sheet or pursuant to fraudulent financial statements.

### Lebanese Counterparts to Breach of Fiduciary Duty, Abuse of Control, or Corporate Waste

25. There are counterparts to claims of breach of fiduciary duty, abuse of control and corporate waste in Lebanon.

26. As previously discussed, Articles 166 and 167 of the LCC allow claims against board members for any acts of fraud or violation of the articles of association of the company or of the applicable laws, or for their mismanagement of the company.

27. If fictitious dividends are distributed, then the provisions of Article 107 of the LCC discussed above can also be invoked against the board members and the auditors.

28. Article 192 of the LCC provides that decisions taken by the shareholders' meetings in compliance with the relevant quorum and voting requirements, and <u>that have not been subject to fraud or abuse of rights</u>, shall bind all shareholders including dissident and absent shareholders. Controlling shareholders owe duties primarily to the company. Widely applied jurisprudence has complementarily concluded that they also owe duties to minority shareholders and resolutions should not only be regularly taken, but must also not undermine the interests of minority shareholders, such as postponement without reason of the distribution of dividends. Failure to take the interests of minority shareholders and the interests of the company into consideration shall constitute an abuse of majority. An enforcement action could be brought by minority shareholders seeking the annulment of a prejudicial decision. Courts may annul the resolution and appoint a court representative whose

objective is to call for a new assembly, noting that the courts usually do not allow such representative to decide in place of the general assembly. Failure by the controlling shareholders to take the appropriate decision may lead the judge to impose indemnities and penalties on the controlling shareholders. On the other hand, the minority shareholders owe duties to the company and to the controlling shareholders, and should not block a decision that must be <u>taken in the interests of the company.</u>

### Lebanese Counterpart to "Unjust Enrichment"

29. A Lebanese claim for "enrichment without cause" is comparable to an "unjust enrichment claim."

30. Articles 141 and 142 of the COC allow a plaintiff to bring claims for "enrichment without cause," a subsidiary claim whereby the plaintiff can claim restitution of any gain realized by one or more defendants whenever the gain achieved by the defendant(s) was obtained without any legal basis and prejudiced the interests of the plaintiff.

### "Aiding and Abetting" under Lebanese Law

31. Articles 212 to 216 of the Penal Code state that: an accomplice to an offence shall be liable to the penalty prescribed by law for the offence. A heavier penalty, in accordance with the provisions of Article 257 of the Criminal Code, shall be applicable to the principal who organizes the commission of an offence or directs the action of the accomplices.

32. As per articles 217 and 218 of the Penal Code, anyone who induces or seeks to induce another person to commit an offence shall be deemed to be an instigator. The responsibility of the instigator shall be separate from that of the person induced to commit the offence. The instigator shall be liable to the penalty for the offence that he wished to commit, whether the offence was completed, attempted or aborted.

### A Principal's Ability to Sue Its Agents When They Allegedly Aided and Abetted the Principal in Committing a Crime

33. Under article 210 of the Penal Code, no one shall be sentenced to a penalty unless he consciously and willingly committed the act. Legal persons (companies) shall be criminally responsible for the activities of their directors, management staff, representatives and employees when such activities are undertaken on behalf of or using the means of such legal persons. If the law provides for a primary penalty other than a fine, that penalty shall replace the fine and shall be imposed on the legal persons within the limits set by Articles 53, 60 and 63.

34. Based on the above, the company may criminally pursue the managers and directors if their offenses were against the company itself. If the offenses were not committed against the company itself, but rather used the company to commit offenses against third parties, including shareholders, such parties may criminally pursue the company and the managers/directors jointly and severally and the company would then have a recourse civil action for indemnification or damages against the managers/directors.

### Statutes of Limitations under Lebanese Law

35. Article 35 of the COC provides for a statute of limitations of five years for claims between shareholders or with third parties arising out of a partnership contract, or claims related to dividends, interest, and arrears.

36. The LCC provides that claims for the restitution of dividends that have been fraudulently distributed are subject to a five-year statute of limitations.

37. Article 349 of the COC provides that, unless a specific statute of limitations applies, the statute of limitations shall be ten years by default.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 30, 2017.

_____
Ziad El-Khoury