UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Ghazi Abu Nahl, et al.                              )
                                                    )
                   Plaintiffs,                      )
                                                    )
        v.                                          )   Civ. No. 1:15-cv-9755 (LGS)(JCF)
                                                    )
Georges Zard Abou Jaoude, et al.                    )
                                                    )
                   Defendants.                      )
                                                    )
_____            )

## DECLARATION OF SIMON EL KAI

I, Simon El Kai, hereby swear and affirm as follows:

1.      I am a partner in Abou Jaoude & Associates, a Lebanese law firm operating in
Beirut, and I am licensed to practice law in Lebanon.  My main areas of expertise are Corporate,
M&A, Finance, Media and Advertising and Litigation and Arbitration.  I am fluent in both
English and Arabic.

2.      I hold a Bachelor's Degree in Law (French and Lebanese Law) from St. Joseph
University in Beirut, a D.E.A from Assas- Paris II University in Paris and a Master of Laws from
Columbia University in New York.  My curriculum vitae is attached as Exhibit 1.

3.      My law firm is counsel for Lebanese Canadian Bank ("LCB"), which is now in
liquidation, and for its liquidators, Messrs. Georges Zard Abou Jaoude and Mohamad Hamdoun.
Based on my personal knowledge of several Lebanese legal proceedings involving LCB and its
liquidators, relevant non-confidential factual allegations made therein, and applicable provisions
of Lebanese law, I submit this Declaration to address the impact of those proceedings on the
above-captioned U.S. litigation (the "*Abu Nahl* U.S. Case").   More specifically, in this



Declaration I address: the nature of the claims made in the Lebanese legal proceedings and their overlap with the *Abu Nahl* U.S. Case; the jurisdiction of the Lebanese courts over the subject matter of, and the parties to, the *Abu Nahl* U.S. Case; the standing under Lebanese law of the Plaintiffs in the *Abu Nahl* U.S. Case to pursue claims in the name of LCB, as they purport to do; ownership of claims made in the name and on behalf of LCB; the preclusive impact of the prior Lebanese court rulings on the same claims raised in the *Abu Nahl* U.S. Case; and, the sovereign and regulatory interests of Lebanon in adjudicating in its courts the claims underlying the *Abu Nahl* U.S. Case.

### Related Court Proceedings in Lebanon

4.       There are a number of legal proceedings in Lebanon, both pending and closed, that arise from the same set of facts and allegations at issue in the *Abu Nahl* U.S. Case. Those Lebanese proceedings include the following:

| Court Ref./ Short Title | Pls. | Defs. | Allegations | Court | Status |
|---|---|---|---|---|---|
| 147/ 2011 *"The Lebanese Share- holder Action"* | Ghazi Abu Nahl, Nest Investments Holding Lebanon S.A.L., and others | LCB, Messrs. Abou Jaoude and Hamdoun, Societe Generale de Banque au Liban (third party) | Alleged mismanagement of LCB; Annulment of the LCB Shareholders' General Assembly of 26 May 2010 | First Instance Comm. Court in Beirut | The court entered judgment on the merits against Plaintiffs, finding them to be without factual support. Plaintiffs have appealed. The parties are still exchanging motions before the Court of Appeal in Beirut. The next hearing is scheduled on 12/12/2017. |
| 17852/ 2016 *"Mr. Abou Jaoude's Action"* | Mr. Abou Jaoude | Nest Investments Holding Lebanon SAL, Ghazi Abu Nahl, et al. | Slander and undermining the dignity, honor and credibility of the plaintiff | Public Prosecution of Cassation | The private complaint was referred for investigation by the financial public prosecutor to the first investigating judge in Beirut and is under consideration. |



| 3206/ 2017<br><br>"*Mr. Makari's Action*" | Mr. Farid Makari (LCB share-holder) | Ghazi Abu Nahl, Trust Compass Insurance SAL, et al. | Money Laundering and undermining the Government's standing | Public Prosecution of Cassation | The private complaint was referred for investigation by the financial public prosecutor to the first investigating judge in Beirut and is under consideration. |
|---|---|---|---|---|---|
| 26265/ 2016<br><br>"*Mr. Safa's Action*" | Mr. Ahmad Safa | Ghazi Abu Nahl | Threat, defamation and slander | Public Prosecution of Cassation | The private complaint was referred for investigation by the financial public prosecutor to the first investigating judge in Beirut and is under consideration. |
| 87/2015 | Ghazi Abu Nahl and Co. | LCB, Messrs. Hamdoun and Abou Jaoude, et al. | Annulment of the LCB Shareholders' General Assembly of 28 April 2015 | First Instance Commercial Court in Beirut | On 19/10/2016, the Court rejected the claim. The Plaintiffs filed an appeal against the judgement and served a notice to the Defendants on 27/11/2017. |
| 13/2015 | Nest Holding SAL, et al. | Messrs. Hamdoun and Abou Jaoude, et al. | Complaint for breach of trust, embezzlement, forgery, use of forged | First Instance Commercial Court in Beirut | The Investigating Judge questioned the Defendants as well as witnesses but has not yet closed the case. Two experts were appointed in the case to verify the banking accounts and other issues. They submitted their report in September 2017. The file was transferred to the Public Prosecutor to render his decision before the final decision of the Investigating Judge. |
| 186/2017 | Ghazi Abu Nahl, Nest Invest-ments Holding, and others | LCB, Messrs. Abou Jaoude and Hamdoun | Annulment of the General Assembly of 28 July 2016 | First Instance Commercial Court in Beirut | This law suit has been notified to Messrs. Abou Jaoude and Hamdoun on 27/11/2017. |



5.    Of these proceedings, the *Lebanese Shareholder Action* and the three private criminal complaints initiated by Messrs. Abou Jaoude, Safa, and Makari, respectively, most directly overlap with, and arise from, the same set of facts at issue in the *Abu Nahl* U.S. Case.[1]

6.    Most notably, in May 2011 in the *Lebanese Shareholder Action*, the two Plaintiffs in the *Abu Nahl* U.S. Case brought—and later lost—a substantively-identical shareholder action against LCB and its liquidators (Messrs. Abou Jaoude and Hamdoun), before they commenced the *Abu Nahl* U.S. Case.  Indeed, the allegations made in the *Lebanese Shareholder Action* cover all of the allegations Plaintiffs Abu Nahl and Nest Investments (Holdings) Ltd. ("Plaintiffs") made in the later-filed *Abu Nahl* U.S. Case.

7.    To illustrate, as later alleged by the same Plaintiffs in the *Abu Nahl* U.S. Case, plaintiffs in the *Lebanese Shareholder Action* made claims for the "devaluation in the shareholders' rights and ... bank's damages resulting from the [alleged] gross and recurrent faults in the management," "mainly related to the policy of external investments adopted by [LCB's] management and to the lending policy and to the problems that the bank faced with the US administration."  Final Judgment, Mar. 2, 2016, Ex. 2 at 8, 10.  The Lebanese court (Tribunal of First Instance of Beirut) issued two rulings adverse to the plaintiffs in that case, on December 10, 2014 (Ex. 3) and March 2, 2016 (Ex. 2), respectively.  In its final ruling (March 2016), the Lebanese court entered judgment against Plaintiffs because they "did not provide any proof that establishes the individual responsibility of ... Abou Jaoude and ... Hamdoun in the management of the bank and setting lending and foreign investments policies and other things" and ordered plaintiffs to pay all of the defendants' legal fees.  Ex. 2 at 9.

---

[1] Mr. Makari is an LCB shareholder and Vice-President of the Lebanese Parliament.

8.      The plaintiffs in the *Lebanese Shareholder Action*, who are the same Plaintiffs in the *Abu Nahl* U.S. case, appealed the judgment against them on the merits in the *Lebanese Shareholder Action*. The parties are still exchanging motions before the Court of Appeal in Beirut. The next hearing is scheduled on 12/12/2017.

9.      In the *Lebanese Shareholder Action*, the Plaintiffs have never raised the same allegations and criticism about the independence or legitimacy of the Lebanese courts that they have now raised with this U.S. court. To the contrary, the Plaintiffs continue to litigate the *Lebanese Shareholder Action* on its merits and to seek relief from the Lebanese courts through their appeal.

10.     Allegations similar to those in the *Abu Nahl* U.S. Case are also at issue in the defamation cases brought by Messrs. Abou Jaoude, Safa, and Makari. *See* Exs. 4, 5 & 6, Summaries of Compl. Lodged before the Pub. Prosecution of Cassation. In their cases, Messrs. Abou Jaoude and Safa complain of slander due to publicly-made allegations by Ghazi Abu Nahl (the Plaintiff here) that Messrs. Abou Jaoude and Safa were involved in money laundering at, and mismanagement of, LCB, the same claims Plaintiffs make in the *Abu Nahl* U.S. Case. *See* Exs. 4 & 5. Along the same lines, Mr. Makari alleges that Plaintiffs have "shak[en] the faith in [the Central Bank of Lebanon] and in the banking sector in general, as well as the public financial trust of the Lebanese government." Ex. 6 at 16.

### Personal Jurisdiction

11.     The Lebanese courts have jurisdiction over the relevant parties to the *Abu Nahl* U.S. Case in connection with these claims, as shown by the fact that those same parties have been litigating against one another on these claims in the Lebanese courts for several years. *See*



Chart, *supra* ¶ 4. The Lebanese courts have jurisdiction over these parties under provisions of article 76 of the Lebanese Code of Civil Procedure (the "LCCP").

**Subject Matter Jurisdiction**

12.     Likewise, Plaintiffs' pending and prior suits in Lebanon involving substantively the same allegations confirm that a Lebanese court would have subject matter jurisdiction over the claims in the *Abu Nahl* U.S. Case. Under Article 76 of the LCCP, courts in Lebanon have jurisdiction over any dispute involving a Lebanese national or relating to rights and interests located in Lebanon. Additionally, Article 78-1 of the LCCP provides that the courts in Lebanon have jurisdiction over any dispute (i) involving assets located in Lebanon or (ii) relating to agreements entered into in Lebanon, or the main obligations of which have to be executed in Lebanon.

13.     The Tribunal of First Instance of the Beirut District, the chamber ruling on commercial matters, has jurisdiction over business-mismanagement and compensation claims. The same court in the *Lebanese Shareholder Action* has already rejected claims made by the Plaintiffs there that are substantively-identical to Plaintiffs' claims in the *Abu Nahl* U.S. Case.

14.     The Lebanese courts' ability to hear claims against LCB or its former directors is unaffected by the fact that LCB is in liquidation. *See* Article 69 of the Lebanese Code of Commerce (the "LCC") (providing that the legal entity survives the winding up of the company throughout the liquidation process). Indeed, the Beirut Tribunal of First Instance accounted for LCB's liquidation in the *Lebanese Shareholder Action*, and heard and rejected Plaintiffs' claims after the liquidation proceedings had commenced. *See* Prelim. Decision, Dec. 10, 2014, Ex. 3 at 41-42 (explaining the need for "the amendment of [LCB's] denomination to become the 'company of the [LCB] (under liquidation)'" and for Messrs. Abou Jaoude and Hamdoun to be



sued in their "personal capacity and as ex-chairman" and "ex-deputy general manager" of LCB and one of LCB's liquidators); *see also id.* at 56 ("rectify[ing] the judicial proceedings and ... replac[ing] the denomination of the defendant bank, the company of [LCB] to become the 'company of [LCB] (under liquidation)'").

### Standing to Sue on behalf of LCB; Ownership of Claims

15.    Lebanese law does not authorize shareholders of a Lebanese company like LCB to sue in the name of the company. Instead, under LCC Articles 167 and 168, shareholders may sue solely in their own name, and only for mismanagement that damaged the value of their shareholdings. It is precisely this type of claim that Plaintiffs Ghazi Abu Nahl and Nest Holding have pursued in the *Lebanese Shareholder Action*. Any other type of claim purportedly on behalf of LCB is not recognized by Lebanese law and, in any event, is a right of action on behalf of LCB that was sold to Societe Generale de Banque au Liban ("SGBL") through the June 22, 2011 Sales and Purchase Agreement ("SPA"), by which LCB transferred to SGBL all of LCB's assets and liabilities in accordance with Law number 192 of 4 January 1993 on Facilitating Bank Mergers. *See Ex.* 7, at 17. Section 2.2. of the SPA lists the following "Transferred Assets":

> "The transferred Assets shall consist *inter alia* of any and all rights, titles and interests of the Seller in and to the Properties, assets, and <u>rights of every nature, kind and description, tangible and intangible whether real, personal or mixed, whether accrued or unaccrued, absolute or contingent, disputed or undisputed, liquidated or unliquidated, secured or unsecured, joint or several, due or to become due, vested or unvested, determined, determinable or otherwise</u> as at the Completion Date, to the extent they relate to the Seller's Business, including without limitation: Advances, Commitments, Assumed Contracts, Disclosure Documents, Securities, Leases, Owned Properties, IT System, Equipment, Supplier Contracts, Books, good will, shares held by the Seller in its Subsidiaries, and all rights in connection with the Business, all as at the Completion Date".

(Emphasis added).  Accordingly, under Section 2.2 of the SPA, one of the assets SGBL acquired was the right to bring claims on behalf of LCB.



16.     Precisely because SGBL acquired the right to sue on claims belonging to LCB for pre-sale activity, Plaintiffs Ghazi Abu Nahl and Nest Holding persuaded the court in the *Lebanese Shareholder Action* that SGBL was a necessary party to their claims of mismanagement of LCB by Messrs. Abou Jaoude and Hamdoun. *See* Ex. 3 at 45 ("[SGBL] satisfies the title and interest to admit its implication"). Following its joinder, SGBL actually participated in the Lebanese litigation. *See* Ex. 2 at 5 (discussing SGBL's second motion).

### The Preclusive Effect of the Judgment in the *Lebanese Shareholder Action*

17.     Although the plaintiffs in the *Lebanese Shareholder Action* have appealed the final judgment against them, the judgment would have a preclusive effect on any judgment in the *Abu Nahl* U.S. Case. Under Article 1014-e of the LCCP, a condition of the enforcement of foreign judgments in Lebanon is "the non-breach of said foreign judgment of Lebanese public policy," as reflected in Articles 54, 55, 303, 552, and 559 of the LCCP. Article 54 of the LCCP gives a defendant the right to dispute a case and to request that it be barred from court if the same case was brought before another court. Article 55 of the LCCP gives a defendant the right to dispute a case and to request that it be barred from court if the subject matter and parties are similar or related to a case that was brought before another court. Under these provisions (as well as LCCP Articles 303, 552, and 559, relating to the effect of final decisions), a Lebanese court will not enforce a foreign judgment where a Lebanese judgment covering the same subject matter was entered first.

### The Interest of Lebanon in Having the Claims Decided in Lebanon

18.     Lebanon has a significant interest in having the claims underlying the *Abu Nahl* U.S. Case decided by Lebanese tribunals for four independent reasons.

19.     First, considering the nationality of the Plaintiffs, the Defendants and the underlying rights and interests, courts in Lebanon have mandatory jurisdiction to hear the matter.



20.     As noted above, Article 76 of the LCCP provides that courts in Lebanon have mandatory jurisdiction over any dispute involving a Lebanese national or relating to rights and interests located in Lebanon, unless other courts have explicit jurisdiction over such dispute. Furthermore, Article 78-1 of the LCCP provides that the courts in Lebanon have jurisdiction over any dispute (i) involving assets located in Lebanon or (ii) relating to agreements entered into in Lebanon, or the main obligations of which have to be executed in Lebanon.

21.     Further, Plaintiffs' claims in the *Abu Nahl* U.S. Case pertain to alleged failures in the management of LCB. Until the date of completion of the sale of its assets and liabilities to SGBL in September 2011, LCB was a regulated bank duly registered on the List of Banks of the Central Bank of Lebanon ("CBL"), and subject to the rules and regulations imposed by the latter.

22.     The CBL and the Banking Control Commission (the "BCC") have sole authority to regulate the banking activities of a bank existing and operating in or out of Lebanon. The CBL and the BCC also have control and monitoring authorities, including a system incorporating corrective measures and sanctions for failure to comply with such rules and regulations. Further, Ahmad Safa, one of the defendants named in the *Abu Nahl* U.S. Case, is currently a member of the BCC.

23.     Moreover, assets of Defendants Georges Zard Abou Jaoude, Mohamad Hamdoun, and Ahmad Safa are located in Lebanon, and the agreements and legal relations between the Plaintiffs and the Defendants are subject to Lebanese law.

24.     Second, as Messrs. Abou Jaoude, Safa, and Makari allege in their related Lebanese suits, Lebanon has a unique interest in having the claims underlying the *Abu Nahl* U.S. Case decided in Lebanon because "accusing [the] Central Bank and the Governor of Central Bank of money laundering for the support of terrorism would be … a crime against the Lebanese



- 9 -

Government." Ex. 6 at 18; *see also* Ex. 4 at 15 ("[F]alse accusations ... around ... Bank of Lebanon and its governor and regarding the latter leading money laundering operations and encouraging them in order to support terrorism in general and Hezbollah in particular, are merely made-up facts aiming to diminish the value of national banknotes and to shake the faith in the standing of the Government's monetary funds, its titles, and all titles relevant to general financial trust."). Mr. Makari claims that Plaintiffs' allegations in the *Abu Nahl* U.S. Case and other publications "affect[ed] the credibility and transparency of Bank of Lebanon's Governor and the bank itself, aim[ing] to shake the faith in the Lebanese monetary fund and in the Lebanese Government supervising the same, in addition to directly affecting the relation of the banks in Lebanon with foreign banks all over the world." Ex. 6 at 18.

25.    Third, as the Tribunal of First Instance correctly observed in the *Lebanese Shareholder Action*, Lebanese bank secrecy law applies to many of the underlying documents at issue. *See* Ex. 3 at 35. It is therefore Lebanon's sovereign obligation in the first instance to interpret its bank secrecy law and to ensure that any proceedings follow it.

26.    Fourth, The Lebanese prosecutorial and investigative authorities have opted to pursue the privately-initiated criminal complaints of Messrs. Abou Jaoude, Safa, and Makari. While Lebanese law allows private citizens to commence criminal complaints, government investigation and prosecution of such complaints is not automatic, but instead requires a finding that amounts to a determination of what would be "probable cause" under U.S. law. The Lebanese authorities have taken action to proceed with investigating and prosecuting the Makari Action, as well as Mr. Abou Jaoude's and Mr. Safa's Actions. This is a clear indication—in and of itself—that there is a "probable cause" for these cases and that Lebanon has an important regulatory interest in the subject matter of the *Abu Nahl* U.S. Case.



I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 29th, 2017.

Simon El Kai
Attorney at law