# EXHIBIT 5

**Alam Translation Center**
*Lamia Abou Tayeh*
Sworn Translator





*Hachem Law Firm*          Ex. 5, at 1

*Summary of the complaint lodged before the*
*Public Prosecution of Cassation*

**Court:** First investigating judge in Beirut- Judge Ghassan OWEIDAT

**The plaintiff:** Ahmad Ibrahim SAFA

**The defendant:** Ghazi Kamel ABU NAHL

**Crime:** Threat, defamation and slander

**Prosecution number:** 26265/2016

**Complaint number:** 2/107 in the year 2017

**Outcome of the lawsuit:** It is still under consideration

*Attorney-at-law, Sakher Chahid EL HACHEM*
*(Signature and seal)*



Address: Sami El Solh Str., Badaro, Beirut District, Facing Mc Donald's, Near Elias Al Alam Notary Public
lamaaboutayeh@gmail.com - www.alamtranslationcenter.com
Tel: + 961 1 614430 - Mob: + 961 71 008440




# مكتب محاماة

## ملخص عن الشكوى
## المقدمة
## أمام النيابة العامة التمييزية في بيروت

**المحكمة** : قاضي التحقيق الأول في بيروت ـ الرئيس غسان عويدات

**المدعــي** : أحمد ابراهيم صفا

**المدعى عليه** : غازي كامل أبو نحل

**الجــرم** : تهديد وقدح وذم

**نيابة رقم** : ٢٦٢٦٥/٢٠١٦

**شكوى رقم** : ١٠٧/٢ عام ٢٠١٧

**مصير الدعوى** : لا زالت قيد النظر.



قرب الشياح - سنتر نحله - بيروت-لبنان - ص. ب.: ١١٦/٥٠٠١
خلوي: ٩٩٣٩٣/٠٣ - تلفاكس: ٠١/٢٨١٨١٨-٠١/٢٨١٨٠٦ - ٠١/٢٨٢٢٨٨
بريد إلكتروني: info@hachemlawfirm.com
www.hachemlawfirm.com

Attestation:

To be returned to the plaintiff with stating that in reference to the records and registers of the First Investigating Judge in Beirut, it appeared that there is a complaint lodged by Ahmad SAFA against the defendant Ghazi Kamel Abu NAHL, registered under number 2/107 in the year 2017 dated January 18, 2017.

It has been registered at the Public Prosecution under number 26265/2016 for the crime of threat, defamation and slander.

The lawsuit is still under consideration.

In witness whereof, the present attestation is delivered upon request.
Beirut, on August 09, 2017


*Clerk*
*(Signature and seal)*



إفادة

تعليقاً للمدّعي فوالده أفاد أنّه بالعودة الى السجلات وقيود قلم التحقيق الدول في بيروت تبيّن أن هناك شكوى مقامة من أحمد صفا توجه المدّعى عليه غازي كامل أبو نخل محله تحت رقم ٢/١٨١ عام ٢٠١٧ وتاريخ ١٨/١/٢٠١٧ وسُجّلت لدى قلمنا به برقم ٥/٢٦٥٢ جرم تهديد وقدح وذم
ولا زالت الدعوى قيد النظر.

بناءً للطلب أُعطيت هذه الإفادة
للبيان مررتُ به

٨/٨/٢٠١٧

The defendant ABU NAHL remained a member in the Board of Directors with two members who represent his group. He was also periodically attending the meetings of the Board of Directors as well as the convened General Assemblies to discharge the members of the Board of Directors. He was voting unreservedly on all adopted resolutions, whether emanating from the Board of Directors or the General Assemblies since his election in 2005 and until 2010.

**During this period, Ahmad SAFA held the position of a manager at the mentioned bank, and he carried out certain acts within the contract "business description" entrusted to it. He was never a member of the Board of Directors.**

It should be noted that the defendant ABU NAHL was on good terms and in continuous communication with the supervisory bodies in Lebanese Canadian Bank SAL, as he did not object to any of the decisions taken in the Board of Directors and the General Assemblies.

In 2008, upon the suggestion of the defendant Ghazi ABU NAHL, the Board of Directors of Lebanese Canadian Bank SAL decided to assign one of "Nest Group" members Sheikh Nasser Ben Ali Ben Saoud AL THANI, a member in the Internal Audit Committee. He began his work in June 09, 2008 and suggested to assign one of his most important compliance experts, Mr. Loizos Andreas Haji Loizos to work with the audit committee in order to evaluate the situation and suggest improvements to compliance processes in the bank. The audit committee



تجدر الإشارة إلى أن نسبة مساهمة المجموعة في مصرف L.C.B. بلغت سبعة وأربعون مليون دولار أميركي استعادتها المجموعة عند التصفية مضاعفة.

تجدر الإشارة إلى أن المدعى عليه غازي أبو نحل هو رجل أعمال أردني ورئيس مجلس إدارة مجموعة "نست إنفستمنتز ش.م.ل (هولدينغ)" وهي شركة تتعاطى بيع بوالص التأمين وتدير في المنطقة عدد من الأعمال التجارية بالدرجة الأولى في قطاع التأمين وإعادة التأمين في الشرق الأوسط وشمال أفريقيا.

كما تجدر الإشارة إلى أن المدعى عليه أبو نحل تملك مباشرة 1,36 % من أسهم البنك اللبناني الكندي ش.م.ل.

وقد بقي المدعى عليه أبو نحل عضواً في مجلس الإدارة مع عضوين بمثلان مجموعته وكان يحضر مجالس الإدارة بشكل دوري كما الجمعيات العمومية المنعقدة لإعطاء براءة ذمة لأعضاء مجلس الإدارة وكان يصوّت بدون تحفظ على جميع القرارات المتخذة سواء من مجلس الإدارة أم في الجمعيات العمومية منذ انتخابه عام 2005 ولغاية عام 2010.

وكان أحمد صفا خلال هذه الفترة يشغل منصب مدير في البنك المذكور ويقوم بأعمال محددة ضمن عقد "وصف الأعمال" المناطة به ولم يكن يوماً عضواً في مجلس الإدارة.

تجدر الإشارة إلى أن المدعى عليه أبو نحل كان على وفاق تام وتواصل مستمر مع أجهزة الرقابة في البنك اللبناني الكندي ش.م.ل ولم يكن يعترض على أي من القرارات المتخذة في مجالس الإدارة والجمعيات العمومية.

وفي العام 2008 وبناء على اقتراح المدعى عليه غازي أبو نحل قرر مجلس إدارة البنك اللبناني الكندي ش.م.ل تعيين أحد أعضاء "تست غروب" الشيخ ناصر بن علي بن سعود الثاني عضواً في لجنة التحقيق الداخلي حيث باشر عمله بتاريخ 9 حزيران 2008 واقترح تعيين أهم خبراء الإمتثال لديه السيد لويزوس أندرياس حاجيلو يزوس للعمل مع لجنة التدقيق من أجل تقييم الوضع واقتراح تحسينات لعمليات الإمتثال في المصرف، كما اقترحت لجنة التدقيق أن تقوم دائرة التدقيق الداخلي بتقديم تقاريرها مباشرة للجنة التدقيق <u>بدلاً من تقديمها لرئيس مجلس الإدارة وقد أخذ بهذا الإقتراح لغاية الاجتماع الذي حصل في شباط 2010.</u>

4

In the present case,

The defendant's party has lodged a lawsuit before the American judiciary in order to obtain indemnities from the plaintiff and used them as moral force.

Accordingly,

The defendant's party has begun to commit the offense also known as extortion, since lodging the lawsuit after which it proceeded to execute the worst ways of threat.

**<u>Through his introduction, in a primary phase, of the role of Ahmad SAFA in facilitating money laundering in Lebanese Canadian Bank, while being fully aware that Ahmad SAFA will obey his demands, due to the impossibility of finding an alternate solution and finding a high position similar to the one he occupies at the moment.</u>**

- Through increasing the pressures to the point where statements of the defendant's party have been broadcasted on social media and Google.
- Through accusing the plaintiff of made-up criminal acts that are not by any means real.
- Through dragging the name of Ahmad SAFA into terrorism and money laundering acts.

All of that in the purpose of embarrassing the plaintiff, infringing his will and forcing him to accept the unjustified offers of the defendant's party.

وبنفس المرجع، رقم ٢٠، نقرأ بأن الإكراه لأجل الإغتصاب، يمكن أن يحصل ليس فقط عن طريق التهديد الذي يصيب الإنسان جسدياً، بل أيضاً عن ذاك الذي يتناول وضع الجاني المادي.

"La notion de contrainte permet de sanctionner toutes les extorsions qui se réalisent par le moyen de menaces visant non pas l'intégrité physique d'une personne mais sa situation matérielle... (même référence – N° 20)".

وأيضاً، وأيضاً، يكون الإكراه عندما يهدد الفاعل باللجوء إلى القضاء بصورة تعسفية، بشكل يمكن أن يؤثر (أي اللجوء إلى القضاء) على الضحية من الناحيتين الجسدية أو النفسية، كل ذلك لأجل حمله على قبول ما يطلبه الفاعل (نفس المرجع).

وفي القضية الحاضرة،

تقدم المدعى عليه بدعوى أمام القضاء الأميركي للحصول على تعويضات من المدعي واستعملها كإكراه معنوي.

وعليـــه،

إن المدعى عليه قد شرع بإرتكاب الجرم أي الإغتصاب لطالما تقدم بدعوى ومارس بعد إقامتها أشد وسائل التهديد،

- <u>من خلال عرضه في مرحلة أولى لدور احمد صفا في عملية تسهيل تبييض الأموال في البنك اللبناني الكندي وهو على خير يقين بأن أحمد صفا سيرضخ لطلباته لإستحالة ايجاد حل بديل وموقع وظيفي رفيع كوظيفته الحالية.</u>

- من خلال زيادة الضغوط الى حد أنه تم نشر إدعاءات المدعى عليه علناً على مواقع التواصل الإجتماعي وGoogle.

- من خلال نسب الى المدعي أفعال جرمية مختلفة لا تمت الى الواقع بصلة.

- من خلال إلصاق إسم أحمد صفا بأعمال الإرهاب و تبييض الأموال.

15

*For these reasons*

The plaintiff lodged a criminal complaint as a civil party against the defendants and whomever appears in the investigation, whether executor, partner or involved in crimes stated in articles 403, 649, 650, 385, 388 and 582, in conjunction with article 209, 319, 320 and 321 of the Lebanese Penal Code, in addition to making up crimes, and they are called for investigation and the arrest of the first defendant referring him arrested, to the competent authorities by virtue of the content of the mentioned articles and imposing strict sanctions, as well as charging them with expenditure, fees and attorney's fees, in addition to damage compensation, given the considerable damage made, which we temporarily estimate at around the amount of ten million American dollars.

*Respectfully yours,*

Attorney-at-law, Sakher Chahid HACHEM - by proxy
(Signature and seal)

*This is to certify that the enclosed text is a true and accurate English rendition of the Arabic document presented to me, as confirmed by my signature and seal below on August 23, 2017*



وبما ان عناصر جريمة الذم متوافرة بحق المدعي في قضيتنا الحاضرة.

وبما ان الجرم المدعى به ينطبق واحكام المواد ٤٠٣، ٣٨٥، ٣٨٨، ٥٨٧ و ٢٠٩/ من قانون العقوبات اللبناني بالإضافة الى المادتين ٦٤٩/ و ٦٥٠/ عقوبات.

وبما ان المدعى عليه تمادى بالإساءة الى المدعي عليه بتوجيه اتهامات ومعلومات مغلوطة عمداً عن وعي ومعرفة وإرادة كلية، كما عمد إلى اختلاق جرائم خطيرة وألصقها بالمدعي.

لـــذا،

يقتضي ادانة المدعى عليه بمقتضى الجرائم والمواد المدعى بها وانزال اشد العقوبات بحقه.

لهــذه الأســباب

يتخذ المدعي صفة الإدعاء الشخصي بحق المدعى عليهم ومن يظهره التحقيق، فاعلا كان ام شريكا ام متدخلا بالجرائم المنصوص عنها في المواد ٤٠٣، ٦٤٩، ٦٥٠، ٣٨٥، ٣٨٨ و ٥٨٢/ معطوفة على المادة ٢٠٩/ من قانون العقوبات اللبناني إضافة إلى اختلاق الجرائم ويطلب التحقيق معهم وتوقيف المدعى عليه الأول واحالته موقوفاً أمام المراجع القضائية المختصة وفقاً لنصوص المواد المذكورة والتشدد بالعقوبة والزامهم بالمصاريف والرسوم والأتعاب وبدل العطل والضرر نظراً للضرر الجسيم المحدث الذي تحدده مؤقتاً بمبلغ وقدره عشرة ملايين دولار أميركي.

وتفضلوا بقبول الإحترام
بالوكـــالــــة
المحامي صخر شهيد الهاشم

22