# EXHIBIT 6




*Hachem Law firm*   Ex. 6, at 1

## Summary of the complaint lodged before the Public Prosecution of Cassation

**Court:** First investigating judge in Beirut, Judge Ghassan OWEIDAT

**The plaintiff:** Farid MAKARI, vice-president of the Lebanese Parliament

**The defendants:**

1. Ghazi Kamel Abdulrahman ABU NAHL
2. Trust Compass Insurance SAL
3. Trust International Insurance – Bahrain, owned by Ghazi ABU NAHL
4. Mehran Ibrahim EFTEKAR

**Crime:** Money laundering and undermining the Government's standing

**Prosecution number:** 3206/2017

**Complaint number:** 7/1256 in the year 2017

**Outcome of the lawsuit:** It is still under consideration.

*Attorney-at-law, Sakher Chahid EL HACHEM*

*(Signature and seal)*



Address: Sami El Solh Str., Badaro, Beirut District, Facing Mc Donald's, Near Elias Al Alam Notary Public
lamaaboutayeh@gmail.com - www.alamtranslationcenter.com
Tel: + 961 1 614480 - Mob: + 961 71 008440



# مكتب محاماة

## ملخص عن الشكوى المقدمة
### أمام النيابة العامة التمييزية في بيروت

| | |
|---|---|
| **المحكمة** : | قاضي التحقيق الأول في بيروت ـ الرئيس غسان عويدات |
| **المدعـــي** : | نائب رئيس مجلس النواب اللبناني فريد مكاري |
| **المدعى عليهم** : | ١ـ غازي كامل عبد الرحمن أبو نحل |
| | ٢ـ Trust Compass Insurance S.A.L |
| | ٣ـ Trust International Insurance - Bahrain |
| | لصاحبها غازي أبو نحل |
| | ٤ـ مهران ابراهيم اقتجار |
| **الجـــرم** : | تبييض أموال والنيل من مكانة الدولة |
| **نيابــة رقــم** : | ٢٠١٧/٣٢٠٦ |
| **شكــوى رقــم** : | ١٢٥٦/٧ عام ٢٠١٧ |
| **مصير الدعوى** : | لا زالت قيد النظر |

---

فرن الشباك ـ سنتر نخله ـ بيروت ـ لبنان ـ ص.ب: ١١٦/٥١٠١
خلوي: ٠٣/٩٢٩٣٩٣ ـ تلفاكس: ٠١/٢٨١٨١٨ـ٠١/٢٨١٨١٦ ـ ٠١/٢٨٢٢٨٨
بريد إلكتروني: info@hachemlawfirm.com
www.hachemlawfirm.com

appointed as a director of the board of directors as of the date of purchasing such shares and rights and became a shareholder in Lebanese Canadian Bank SAL.

In the year 2007, and during the General Assembly of the Shareholders, defendant Ghazi ABU NAHL requested that his Group, consisting of all defendants, be represented by three members of the board of directors, in addition to the presidency of several Internal Committees at the bank, for the purpose of controlling the bank details directly.

*Accordingly,*

In the year 2007, the General Assembly of Lebanese Canadian Bank SAL elected three members of the board of directors in order to represent Abu Nahl Group, and they are:

1- <u>Qatar General Insurance & Reinsurance Co. (QGRI), represented by Sheikh Nasser AL THANI</u>
2- <u>Jordanian Expatriates Investment Holding (JEIH), represented by Mr. Ahmad TABAJA</u>
3- <u>Nest Investments Holding Lebanon SAL, represented by Mr. Ghazi ABU NAHL</u>

As a result of electing the defendants – the three members of the board of directors of Lebanese Canadian Bank SAL, Ghazi ABU NAHL asked the board of directors to appoint some representatives of his Group as members in some Internal Committees and the presidency of one of them.



Ex. 6, at 8

appointed as a director of the board of directors as of the date of purchasing such shares and rights and became a shareholder in Lebanese Canadian Bank SAL.

In the year 2007, and during the General Assembly of the Shareholders, defendant Ghazi ABU NAHL requested that his Group, consisting of all defendants, be represented by three members of the board of directors, in addition to the presidency of several Internal Committees at the bank, for the purpose of controlling the bank details directly.

*Accordingly,*

In the year 2007, the General Assembly of Lebanese Canadian Bank SAL elected three members of the board of directors in order to represent Abu Nahl Group, and they are:

1- <u>Qatar General Insurance & Reinsurance Co. (QGRI), represented by Sheikh Nasser AL THANI</u>
2- <u>Jordanian Expatriates Investment Holding (JEIH), represented by Mr. Ahmad TABAJA</u>
3- <u>Nest Investments Holding Lebanon SAL, represented by Mr. Ghazi ABU NAHL</u>

As a result of electing the defendants – the three members of the board of directors of Lebanese Canadian Bank SAL, Ghazi ABU NAHL asked the board of directors to appoint some representatives of his Group as members in some Internal Committees and the presidency of one of them.



تجدر الإشارة إلى أن غازي أبو نحل ومنذ لحظة تملكه أسهماً وحقوقاً في البنك اللبناني الكندي ش.م.ل كان يحضر الجمعيات العمومية تحت إسم ممثل مجموعة أبو نحل أي ممثل الجهة المدعى عليها بكافة أطرافها حيث كان معظمهم يحضر أيضاً هذه الجمعيات إما مباشرة وإما بالتكليف.

ومن الشروط التي فرضها لتملكه لحقوق وأسهم في البنك اللبناني الكندي ش.م.ل أن يُنتخب عضواً في مجلس الإدارة منذ تاريخ شرائه لهذه الأسهم والحقوق وقد جرى فعلاً إنتخابه عضواً في مجلس الإدارة منذ تاريخ شرائه للأسهم وكسب صفة مساهم في البنك اللبناني الكندي ش.م.ل.

وفي العام 2007 طلب المدعى عليه غازي أبو نحل في الجمعية العمومية للمساهمين ان تكون مجموعته المؤلفة من المدعى عليهم جميعاً ممثلة بثلاثة أعضاء في مجلس الإدارة إضافة إلى رئاسة عدة لجان داخلية في المصرف ليصبح له الإشراف المباشر على مفاصل البنك

وبالفعـــــل،

إنتخبت الجمعية العمومية للبنك اللبناني الكندي ش.م.ل عام 2007 ثلاثة أعضاء في مجلس الإدارة لتمثيل مجموعة أبو نحل وهم السادة :

1. <u>الشركة القطرية العامة للتأمين وإعادة التأمين ش.م.ق ممثلة بالشيخ ناصر آل ثاني</u>
2. <u>الشركة الإستثمارية القابضة للمقترضين الأردنيين م.ع.م ممثلة السيد أحمد طباجة</u>
3. <u>شركة نست إنفستمنت هولدينغ ليباتون ش.م.ل ممثلة بالسيد غازي أبو نحل</u>

وعلى أثر انتخاب المدعى عليهم الثلاثة أعضاء في مجلس إدارة البنك اللبناني الكندي ش.م.ل طلب غازي أبو نحل من مجلس الإدارة تعيين بعض ممثلي مجموعته أعضاء في بعض اللجان الداخلية ورئاسة إحداهن.

3

5- **Corporate Governance Committee** – **Defendant Ghazi Ghazi ABU NAHL was appointed as a chairman of this Committee that enjoys the widest powers to take cognizance of the progress of all bank departments and make reports on the extent of applying the internationally applicable Governance Principles.**

The defendant's inclusion in these Committees might verify that Ghazi ABU NAHL, Ahmad TABAJA and Sheikh Nasser AL THANI were fully aware of all matters and details at the bank, noting that they keep up with the bank progress and development and the process of managing its local, international and universal investments. They cannot pretend that they are unaware of those precise details.

Electing each of the defendants, Ghazi ABU NAHL, Ahmad TABAJA and Sheikh Nasser AL THANI as members of the board of directors and appointing them as well in the most important Internal Committees at the bank, **authorizes them to effectively participate in important and fateful bank decisions, whether regarding developing bank competencies or keeping up with internal, external and international activities, noting that the three defendants in the board of directors attended all board of directors' meetings and participated in general assemblies, either ordinary or extraordinary, since the year 2007 and until taking the decision of bank liquidation in the year 2011; moreover, they used to interfere in every single detail and express their opinions in all resolutions suggested on the board of directors and the general assemblies, as well as to present these suggestions and vote on these resolutions without preservation.**

And among the important and critical resolutions made and approved with no reservations by the defendant's party, selling the bank's assets and then

وبعد المداولة عين مجلس الإدارة ممثلين لمجموعة أبو نحل في اللجان المصرفية الآتية :

١ـ **الشيخ ناصر بن ثان آل ثاني رئيسا للجنة التدقيق والمخاطر (A&RC) Audit & Risk Committee كما كلف السيد LOIZOS HAJI LOIZOS (من قبل غازي أبو نحل) مهام أمانة سر اللجنة, وقد أعطيت للجنة التدقيق برئاسة الشيخ ناصر آل ثاني صلاحية الإتصال بأي مدير أو بأي من أقسام المصرف ومناقشة أي من المسائل معه وذلك بناء لطلب رئيس لجنة التدقيق وبواسطة المدير العام المساعد المدعى عليه مهران افتخار المسؤول المالي لمجموعة غازي أبو نحل التي تضم كافة أطراف المدعى عليهم.**

٢ـ لجنة الموارد البشرية (التوظيف) ـ **عيّن المدعى عليه أحمد طباجيه عضواً فيها** ممثلاً لمجموعة أبو نحل برئاسة رئيس مجلس الإدارة جورج أبو جوده.

٣ـ لجنة Nomination & Remuneration ـ **عيّن الشيخ ناصر آل ثاني عضواً** فيها ممثلاً مجموعة أبو نحل برئاسة رئيس مجلس الإدارة جورج أبو جوده.

٤ـ لجنة Purchasing ـ **عيّن أحمد طباجيه ممثلاً لمجموعة أبو نحل عضواً فيها.**

٥ـ لجنة Corporate Governance (لجنة الحوكمة) ـ **عيّن المدعى عليه غازي غازي أبو نحل رئيساً لهذه اللجنة التي تتمتع بأوسع الصلاحيات للإطلاع على سير كافة دوائر المصرف ووضع التقارير لمدى تطبيق مبادئ الحوكمة المعمول بها دولياً.**

إن دخول الجهة المدعى عليها في هذه اللجان من شأنه التأكيد على أن غازي أبو نحل وأحمد طباجيه والشيخ ناصر آل ثاني كانوا على اطلاع تام بكل شاردة وواردة في المصرف وبأدق التفاصيل وكانوا يواكبون تطور المصرف ونموّه وطريقة إدارة إستثماراته المحلية والدولية والعالمية ولا يمكن التذرع بعدم معرفتهم بتلك التفاصيل ويأدقها.

٤



كما أن انتخاب كل من المدعى عليهم غازي أبو نحل وأحمد طباجه والشيخ ناصر آل ثاني أعضاء في مجلس الإدارة بالإضافة إلى تعيينهم في أهم اللجان الداخلية في المصرف كان <u>يخوّلهم المشاركة الفعلية في اتخاذ القرارات المصرفية المصيرية والهامة سواء لجهة تطوير قدرات المصرف ونموه أم لجهة مواكبة كافة الأعمال الداخلية والخارجية والدولية مع العلم أن المدعى عليهم الأعضاء الثلاثة في مجلس الإدارة كانوا بحضرون جميع مجالس الإدارة كما كانوا يشاركون في الجمعيات العمومية سواء أكانت عادية أم غير عادية منذ عام ٢٠٠٧ ولغاية اتخاذ القرار بتصفية المصرف في عام ٢٠١١ حيث كانوا يتدخلون في كل شاردة وواردة ويبدون آراءهم بكل القرارات التي كانت تعرض على مجلس الإدارة والجمعيات العمومية وكانوا يقدمون الإقتراحات ويصوّتون على هذه القرارات بدون تحفظ</u>.

ومن بين القرارات المهمة والمصيرية التي شاركت في صنعها ووافقت عليها الجهة المدعى عليها بدون أي تحفظ بيع أصول المصرف ومن ثم تصفية المصرف كما وإجراء التسويات مع الخزينة في الولايات المتحدة الأميركية. كما هو ثابت في قرارات الجمعية العمومية المرفقة ربطاً (مستند رقم ٢، ٣ و ٤).

وبالفـعــــل،

وفي أوائل العام ٢٠١١ بدأت الولايات المتحدة الأميركية واستناداً إلى مزاعم (Allégations) بمتابعة أعمال البنك اللبناني الكندي ش.م.ل حيث بدأت الإتصالات والتواصل بين إدارة البنك اللبناني الكندي ش.م.ل والخزينة الأميركية بواسطة المصرف المركزي اللبناني بنتيجتها اتخذ المساهمون قراراً ببيع موجودات ومطلوبات المصرف إلى مصرف سوسيتيه جنرال في لبنان ش.م.ل SGBL بموافقة المساهمين بمن فيهم المدعى عليهم جميعاً ولا سيما غازي أبو نحل.

وبعد ذلك وفي العام ٢٠١٣ تم توقيع تسوية مع السلطات الأميركية المختصة بقرار صدر بالإجماع عن الجمعية العمومية لمساهمي البنك اللبناني الكندي ش.م.ل بمن فيهم الجهة المدعى عليها بكافة أطرافها ولا سيما غازي أبو نحل بكافة الصفات الواردة أعلاه ولم يبد أي تحفظ أو إعتراض حيث استطاع أن يسترد ويسترجع كافة توظيفاته في المصرف مضاعفة

٨

<u>to launder money resulting from narcoterrorism but no measures were taken due to the relation between the Governor and HAMDOUN.</u>

- ... Bank of Lebanon has continued to overlook wider cases relevant to money laundering and terrorism spreading in the Lebanese banking sector...

These are extremely serious accusations made by the defendant represented by Ghazi ABU NAHL against Bank of Lebanon, to shake the faith in it and in the banking sector in general, as well as the public financial trust of the Lebanese government. It also forms a conspiracy lead by ABU NAHL aiming to damage the banking sector in Lebanon, to affect the government's financial security and to undermine its financial standing. These are all false, made-up accusations that are in no way linked to reality nor truth, and making these accusations should be faced with the most severe punishments onto the defendant Ghazi ABU NAHL, and it requires that the latter be incarcerated by virtue of articles 319 / 320 / and 321 / of the Penal Code.

It is worth mentioning that all of the statements mentioned in the lawsuit lodged by the defendant's party in the United States of America have been published on the Internet, Google, and all networks related to the United States Treasury and money laundering lists, therefore leading whomever enters these networks to read these lies and misleading allegations made-up by the defendant Ghazi ABU NAHL, which inflicted the most serious material and moral damages to the plaintiff and to his political and social history, <u>especially that he is the representative of the nation and he was elected and is still the vice-president of the Lebanese parliament.</u>

The plaintiff found out that the reason behind the defendants resorting to the American judiciary and lodging a civil lawsuit against Lebanese Canadian Bank



إنها إتهامات خطيرة جداً أطلقتها الجهة المدعى عليها ممثلة بغازي أبو نحل ضد مصرف لبنان لزعزعة الثقة فيه وبالقطاع المصرفي بشكل عام ولزعزعة الثقة المالية العامة للدولة اللبنانية وهي تشكّل مؤامرة رئيسها أبو نحل لضرب القطاع المصرفي في لبنان والإعتداء على أمن الدولة المالي والنيل من مكانتها المالية وهي إتهامات كاذبة، مختلقة ولا تمت إلى الواقع والحقيقة بصلة يتعيّن على إطلاقها إنزال أقصى العقوبات بحق المدعى عليه غازي أبو نحل وهي تستوجب إدخاله السجن عملاً بالمواد /٣١٩/ و/٣٢٠/ و/٣٢١/ عقوبات.

تجدر الإشارة إلى أن كل الإدلاءات الصادرة عن الجهة المدعى عليها الواردة في الدعوى المقامة منه في الولايات المتحدة الأميركية قد جرى نشرها على شبكات الإنترنت وشبكات Google والشبكات التابعة للخزانة الأميركية ولوائح تبييض الأموال حيث بات لكل من يدخل هذه المواقع الإلكترونية ان يقرأ هذه الأكاذيب والأقاويل الضالة التي اختلقها المدعى عليه غازي أبو نحل الذي ألحق أفدح الأضرار المادية والمعنوية بالمدعي وبسيرته السياسية والإجتماعية سيما وأنه ممثل الأمة وانتخب نائباً لرئيس مجلس النواب اللبناني ولا يزال.

لقد اكتشف المدعي بأن سبب لجوء المدعى عليهم إلى القضاء الأميركي والتقدم بالدعوى المدنية ضد البنك اللبناني الكندي ش.م.ل وبعض أعضاء مجلس إدارته ومساهميه هو للتستر على ملاحقتهم من قبل وزارة الخزانة الأميركية بخصوص إدراج أسمائهم على لائحة "OFAC" لارتباطهم بالعقوبات المالية على حزب الله.

كما اكتشف المدعي بأن المدعى عليهم هم من تسببوا بملاحقة البنك اللبناني الكندي ش.م.ل من قبل الخزانة الأميركية وإجباره على بيع موجوداته وأرصدته وليس العكس كما يزعمون إذ أنه ثبت أن غازي أبو نحل وأحمد طباجة وحسابات مجموعة طباجة كانت موضع ملاحقة فعلية من قبل وزارة الخزانة الأميركية وقد أودعت أسماءهم على لائحة "OFAC". الأمر الذي ألحق أفدح الأضرار بالمدعي نتيجة بيع أسهمه في البنك.

إن وجود أسماء المدعى عليهم على لائحة "OFAC" ألحق أفدح الأضرار بالبنك اللبناني الكندي ش.م.ل وبالمدعي كونه مساهماً في البنك وأساءت إلى سمعته وموقعه البرلماني والسياسي والإجتماعي سواء في لبنان أم أمام الدول الأجنبية.

إلا ان كافة الأفعال التي أقدمت عليها الجهة المدعى عليها تشكّل جرائم معاقب عليها في القانون اللبناني.

١٠

and regarding the latter leading money laundering operations and encouraging them in order to support terrorism in general and Hezbollah in particular, are merely made-up facts aiming to diminish the value of national banknotes and to shake the faith in the standing of the Government's monetary funds, its titles, and all titles relevant to general financial trust.

The false accusations and allegations made by the defendant's party before the American Judiciary, affecting the credibility and transparency of Bank of Lebanon's Governor and the bank itself, aim to shake the faith in the Lebanese monetary fund and in the Lebanese Government supervising the same, in addition to directly affecting the relation of the banks in Lebanon with foreign banks all over the world, since the person accusing Central Bank and the Governor of Central Bank of money laundering for the support of terrorism would be committing a crime against the Lebanese Government, therefore and as a result of these accusations, leading foreign banks to stop dealing with Lebanese banks.

In addition to that, according to law, whomever causes doubt in the Government's financial standing and national monetary fund through accusing the Governor of Bank of Lebanon, regarding matters related to terrorism and money laundering, deserves as foreigner and resident in Lebanon to be deprived from his/her civil rights and residency, and expatriated from the country, by virtue of articles 65, 82 and 88 of the Penal Code.

And since the plaintiff is a Lebanese citizen, a deputy representing the nation in the Parliamentary seminar, elected vice-president, director that presides the sessions of the parliament and the parliamentary committees, a banker and a businessman in possession of various titles. Thus, he is affected by the actions of



<u>ثانياً : في القانون</u>

الف - <u>في النيل من مكانة الدولة المالية</u>

المواد /٣١٩/٣٢٠/ ٣٢١ عقوبات.

ثابت تماماً أن الإتهامات الكاذبة التي أدلت بها الجهة المدعى عليها أمام القضاء الأميركي والتي تناولت أوضاع مصرف لبنان وحاكم مصرف لبنان لجهة إدارة هذا الأخير لعمليات تبييض الأموال وتشجيعها في سبيل دعم الإرهاب بشكل عام وحزب الله بشكل خاص تشكّل وقائع ملفّقة لإحداث التدني في أوراق النقد الوطنية ولزعزعة الثقة في مكانة نقد الدولة وسنداتها وجميع الأسناد ذات العلاقة بالثقة المالية العامة.

إن الإتهامات والمزاعم الكاذبة التي أدلت بها الجهة المدعى عليها أمام القضاء الأميركي والتي تمس بمصداقية وشفافية حاكم مصرف لبنان بالذات من شأنها زعزعة الثقة بالنقد اللبناني وبالدولة اللبنانية المشرفة على هذا النقد، كما تؤثر بشكل مباشر على علاقة المصارف في لبنان بالمصارف الأجنبية في كافة أنحاء العالم إذ أن من يتّهم المصرف المركزي وحاكم المصرف المركزي بأعمال تبييض الأموال لدعم الإرهاب يكون قد ارتكب جريمة بحق الدولة اللبنانية حيث ونتيجة لهذه الإتهامات قد تلجأ المصارف الأجنبية إلى إيقاف التعامل مع المصارف اللبنانية.

ومن المعروف علماً وقانوناً واجتهاداً أن من تسبب بالتشكيك بمكانة الدولة المالية والنقد الوطني من خلال إتهام رأس الهرم أي حاكم مصرف لبنان بأمور تتعلق بالإرهاب وتبييض الأموال يستحق إذا كان أجنبياً وله مقام في لبنان إتخاذ التدابير بحقه يمنعه من الحقوق المدنية ومنع الإقامة وإخراجه من البلاد عملاً بالمواد ٦٥/ و٨٢/ و٨٨/ عقوبات.

وبما أن المدعي مواطن لبناني ونائب يمثل الشعب في الندوة البرلمانية وقد انتخب ثانياً لرئيس مجلس النواب ويدير جلسات المجلس واللجان النيابية كما أنه رجل مصرفي ورجل أعمال يملك سندات واسناد مختلفة وبالتالي فهو متضرر من افعال الجهة المدعى عليها لهذه الناحية وله الحق بالإدعاء وفقاً لهذه المواد ولسواها،

١٠

*For these reasons*

The plaintiff lodged a criminal complaint as a civil party against the defendants Ahmad TABAJA and Ghazi ABU NAHL and the other defendants in crimes of money laundering and undermining the financial standing of the government, which are the crimes stipulated in law number 44/2015 and articles 319, 320, 321, 65, 82 and 88 of the Lebanese Penal Code requesting to investigate, arrest and bring them before the competent judicial authorities and charge them with the most severe penalties by paying an amount of one hundred and fifty million US dollars as a material and moral damage to the plaintiff, given his political, parliamentary and social position.

Respectfully yours,

Attorney-at-law Sakher Chahid EL HACHEM
(By proxy)

*This is to certify that the enclosed text is a true and accurate English rendition of the Arabic document presented to me, as confirmed by my signature and seal below on August 23, 2017.*



وبما أنه ثابت أن المدعى عليهم ولا سيما غازي أبو نحل قد خالف قرار العقوبات المفروضة من قبل الأمم المتحدة والولايات المتحدة الأميركية على بعض المنظمات والأحزاب في لبنان.

وبما أنه ثابت أن الأفعال المرتكبة من المدعى عليهم ولا سيما غازي أبو نحل وأحمد طباجة تشكل جرم تبييض الأموال المنطبقة على المادتين الثانية والثالثة من القانون رقم ٤٤/ تاريخ ٢٠١٥/١١/٢٤.

وبما أن الأفعال التي قام بها غازي أبو نحل وأحمد طباجة والشركات المدعى عليها تشكل جرماً معاقب عليه في القانون اللبناني.

وبما أنه ثابت أن ما قام به المدعى عليهم ألحق أفدح الأضرار المادية والمعنوية بالمدعي وبالبنك اللبناني الكندي ش.م.ل حيث يملك المدعي أسهماً في هذا المصرف العريق وقد تسببوا بملاحقته نتيجة أفعالهم الجرمية، مما إلزمه ببيع أصوله وموجوداته بضغط من وزارة الخزانة الأميركية.

## لهــذه الأســبــاب

يتخذ المدعي صفة الإدعاء الشخصي بحق المدعى عليهم أحمد طباجة وغازي أبو نحل والمدعى عليهم الآخرين بجرائم تبييض الأموال والنيل من مكانة الدولة المالية الجرائم المنصوص عنها في القانون رقم ٢٠١٥/٤٤ والمواد ٣١٦ و٣٢٠ و٣٢١ و٦٥ و٨٢ و٨٨ من قانون العقوبات اللبناني طالباً التحقيق معهم وإحالتهم موقوفين أمام المراجع القضائية المختصة وإنزال أقصى العقوبات بحقهم وإلزامهم بدفع مبلغ وقدره مائة وخمسون مليون دولار أميركي بمثابة عطل وضرر مادي ومعنوي للمدعي نظراً لموقعه السياسي والبرلماني والإجتماعي.

وتفضلوا بقبول الإحترام
بالوكـــالـــة
المحامي صخر شهيد الهاشم

١٢