UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GHAZI ABU NAHL,
    *et al.*,

              Plaintiffs,

      v.

GEORGES ZARD ABOU JAOUDE,
    *et al.*,

              Defendants,

      and

LEBANESE CANADIAN BANK,

              Nominal Defendant.

15 Civ. 9755 (LGS)

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS BY DEFENDANTS GEORGES ZARD ABOU JAOUDE, MOHAMED HAMDOUN, AND AHMAD SAFA**

---

# **TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................... 1

II.    FACTUAL BACKGROUND .................................................................................. 4

III.   ARGUMENT .......................................................................................................... 5

      A.    Because LCB Was a Victim of Defendants' Scheme to Aid and Abet
             Hezbollah Crimes Against Humanity, Plaintiffs Are Entitled to Sue Under
             the ATCA. ...................................................................................................... 5

      B.    The Case Should Not Be Dismissed Based on *Forum Non Conveniens*. .............. 8

             1.    Lebanon Is Not an Adequate Forum to Litigate a Claim for Aiding
                   and Abetting Hezbollah Crimes. ............................................................... 8

             2.    Defendants Also Have Not Made the Requisite Showing That
                   Relevant FNC Factors "Tilt Strongly" in Favor of Dismissal. ................. 13

      C.    Defendants' Res Judicata Defense Fails. ............................................................. 15

             1.    The Elements of Res Judicata Are Not Satisfied. ..................................... 15

             2.    Even If the Requirements for Res Judicata Had Been Satisfied, the
                   Court Should Not Recognize the Lebanese Rulings Under
                   Principles of Comity. ................................................................................ 17

      D.    LCB Owns the Claim, Not SGBL, and Plaintiffs Have Derivative Standing
             to Assert It. ................................................................................................... 18

             1.    SGBL Does Not Own the Claim. .............................................................. 18

             2.    Plaintiffs Have Derivative Standing to Assert the Claim. ........................ 19

      E.    Neither SGBL Nor the Central Bank Are Necessary Parties. .............................. 20

      F.    The Court Has Personal Jurisdiction Over Defendants Because They
             Purposefully Used New York Banks to Perpetrate Their Scheme to Aid
             and Abet Hezbollah. ..................................................................................... 22

      G.    Defendants' Waiver Argument Fails. .................................................................. 24

      H.    Plaintiffs' Claims Are Timely. ............................................................................ 25

Conclusion ........................................................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdullahi v. Pfizer, Inc.*,
   562 F.3d 163 (2d Cir. 2009)................................................................................22

*Ackermann v. Levine*,
   788 F.2d 830 (2d Cir. 1986)..............................................................................17

*Ansley v. Cooke*,
   2017 WL 3872481 (S.D. Ohio Sept. 5, 2017) ....................................................25

*Arnett v. Gerber Scientific, Inc.*,
   566 F. Supp. 1270 (S.D.N.Y. 1983)...................................................................19

*In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*,
   228 F. Supp. 2d 348 (S.D.N.Y. 2002).............................................................9, 15

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
   902 F.2d 194 (2d Cir. 1990)..............................................................................22

*Bankers Trust Co. v. Rhoades*,
   859 F.2d 1096 (2d Cir. 1988)............................................................................20

*Bassett v. Mashantucket Pequot Tribe*,
   204 F.3d 343 (2d Cir. 2000)..............................................................................21

*Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, N.A.*,
   247 F. Supp. 3d 377 (S.D.N.Y. 2017)................................................................19

*Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.*,
   291 F.3d 1000 (7th Cir. 2002) .............................................................................7

*Bridgeway Corp. v. Citibank*,
   201 F.3d 134 (2d Cir. 2000).................................................................11, 12, 17

*Brown Media Corp. v. K&L Gates, LLP*,
   854 F.3d 150 (2d Cir. 2017).........................................................................15, 16

*Cabiri v. Assassie-Gyimah*,
   921 F. Supp. 1189 (S.D.N.Y. 1996)............................................................9, 14, 15

*Cameron v. Church*,
   253 F. Supp. 2d 611 (S.D.N.Y. 2003)................................................................17

*Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*,
   528 F. Supp. 1337 (S.D.N.Y. 1982), *aff'd*, 727 F.2d 274 (2d Cir. 1984) ................................9

*Carlenstolpe v. Merck & Co.*,
   819 F.2d 33 (2d Cir. 1987)........................................................................................................14

*Chevron Corp. v. Donziger*,
   974 F. Supp. 2d 362 (S.D.N.Y. 2014), *aff'd*, 833 F.3d 74 (2d Cir. 2016), *cert.*
   *denied*, 137 S. Ct. 2268 (2017) .......................................................................................10, 17

*Chowdhury v. Worldtel Bangl. Holding, Ltd.*,
   588 F. Supp. 2d 375 (E.D.N.Y. 2008) .......................................................................................6

*Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd.*,
   2015 WL 4164763 (S.D.N.Y. July 10, 2015) .........................................................................23

*Daventree Ltd. v. Republic of Azerbijan*,
   349 F. Supp. 2d 736 (S.D.N.Y. 2004), *clarified*, 2005 WL 2585227 (S.D.N.Y.
   Oct. 13, 2005) .......................................................................................................................9, 12

*Diorinou v. Mezitis*,
   237 F.3d 133 (2d Cir. 2001)......................................................................................................17

*Drachman v. Harvey*,
   453 F.2d 722 (2d Cir. 1971), *modified en banc on other grounds* (2d Cir.
   1972) .....................................................................................................................................7, 19

*Firstcom, Inc. v. Qwest Corp.*,
   2006 WL 2666301 (D. Minn. Sept. 18, 2006)...................................................................18, 19

*Fischer v. CF&I Steel Corp.*,
   599 F. Supp. 340 (S.D.N.Y. 1984)...........................................................................................19

*Gibbons v. Am. Univ. of Beirut*,
   1983 U.S. Dist. LEXIS 13401 (S.D.N.Y. Sept. 27, 1983)......................................................13

*Green v. Callahan*,
   664 So. 2d 21 (Fla. Dist. Ct. App. 1995) .................................................................................25

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947)..................................................................................................................14

*Hau Yin To v. HSBC Holdings, PLC*,
   700 F. App'x 66 (2d Cir. 2017) ...............................................................................................23

*Hilton v. Guyot*,
   159 U.S. 113 (1895)..................................................................................................................17

*HSBC USA, Inc. v. Prosegur Paraguay, S.A.*,
    2004 WL 2210283 (S.D.N.Y. Sept. 30, 2004)..................................................9, 11

*Iragorri v. United Tech. Corp.*,
    274 F.3d 65 (2d Cir. 2001) (en banc)..................................................14

*Jerez v. Cooper Indus., Inc.*,
    2003 WL 22126893 (S.D.N.Y. Sept. 12, 2003)..................................................21

*Licci v. Lebanese Canadian Bank, SAL*,
    20 N.Y.3d 327 (2012)..................................................22

*Licci v. Lebanese Canadian Bank, SAL*,
    834 F.3d 201 (2d Cir. 2016), *petition for cert. filed*, No. 16-778 (Dec. 19, 2016)...............1, 5

*Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013)..................................................3, 23

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..................................................6

*Manu Int'l, S.A. v. Avon Prods., Inc.*,
    641 F.2d 62 (2d Cir. 1981)..................................................15

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
    723 F.3d 192 (2d Cir. 2013)..................................................18, 24

*Nat'l Coalition Gov't of Union of Burma v. Unocal, Inc.*,
    176 F.R.D. 329 (C.D. Cal. 1997)..................................................7

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
    416 F.3d 146 (2d Cir. 2005)..................................................8, 14

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)..................................................14

*In re Pittsburgh & Lake Erie R.R. Sec. & Antitrust Litig.*,
    543 F.2d 1058 (3d Cir. 1976)..................................................19

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
    244 F. Supp. 2d 289 (S.D.N.Y. 2003)..................................................12, 13

*Rasoulzadeh v. Associated Press*,
    574 F. Supp. 854 (S.D.N.Y. 1983), *aff'd,* 767 F.2d 908 (2d Cir. 1985)..................................................8, 9

*Estate of Rodriquez v. Drummond Co.*,
    256 F. Supp. 2d 1250 (N.D. Ala. 2003)..................................................6

*Saud v. Bank of N.Y.*,
    929 F.2d 916 (2d Cir. 1991)........................................................................17

*Schine v. Schine*,
    250 F. Supp. 822 (S.D.N.Y. 1966)...........................................................24

*Sexual Minorities Uganda v. Lively*,
    960 F. Supp. 2d 304 (D. Mass. 2013) ....................................................5, 6

*Sikhs for Justice v. Nath*,
    893 F. Supp. 2d 598 (S.D.N.Y. 2012).....................................................25

*Smith v. Campbell*,
    782 F.3d 93 (2d Cir. 2015).......................................................................25

*Stevenson v. Bank of America, N.A.*,
    597 F. App'x 4 (2d Cir. 2015) .................................................................16

*Temple v. Synthes Corp.*,
    498 U.S. 5 (1990).....................................................................................21

*Thomas v. Ashcroft*,
    470 F.3d 491 (2d Cir. 2006).....................................................................22

*TJGEM LLC v. Republic of Ghana*,
    26 F. Supp. 3d 1 (D.D.C. 2013), *aff'd*, 2015 WL 3653187 (D.C. Cir. June 9,
    2015) ........................................................................................................21

*United States v. Lebanese Canadian Bank SAL*,
    No. 11 Civ. 9186 (S.D.N.Y.) ........................................................ *passim*

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*,
    825 F.2d 709 (2d Cir. 1987).....................................................................17

*In re Waste Mgmt., Inc. Sec. Litig.*,
    2003 WL 1463585 (N.D. Ill. Mar. 19, 2003)..........................................24

*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F.3d 88 (2d Cir. 2000)................................................................8, 13, 14

**Statutes**

Alien Tort Claims Act, 28 U.S.C. § 1350......................................................... *passim*

Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 852
    (2016)........................................................................................................15

**Other Authorities**

Fed. R. Civ. P. 15(a) ..........................................................................................................20

Fed. R. Civ. P. 19 .........................................................................................................3, 20, 21, 22

# I.      INTRODUCTION

This action seeks redress for crimes and torts Defendants committed in the United States, in violation of U.S. law, to aid and abet the terrorist group Hezbollah.  It is entirely appropriate for a U.S. court to provide relief and to hold parties accountable when they have engaged in a criminal scheme in the United States to finance notorious international terrorists.  That this Court is an appropriate forum is evidenced by the fact that the Court has already exercised jurisdiction over the very same transactions in a civil forfeiture action filed by the United States Government.  *See United States v. Lebanese Canadian Bank SAL*, No. 11 Civ. 9186 (S.D.N.Y.) (the "Civil Forfeiture Action").

As alleged in both the Civil Forfeiture Action and Plaintiffs' First Amended Complaint ("FAC"), Defendants aided and abetted Hezbollah by abusing their control of the Lebanese Canadian Bank ("LCB").   Defendants caused LCB to launder funds (including from drug traffickers) through New York correspondent banks in order to purchase used cars in Michigan. They then caused the cars to be transported to West Africa and the proceeds from their resale to be used to aid and abet Hezbollah crimes against humanity.  FAC ¶¶ 44-76; FAC Ex. B ¶¶ 32-87. As a result of Defendants' crimes, LCB was forced to forfeit $102 million to the United States in the Civil Forfeiture Action that would otherwise have gone to the Bank's shareholders.  FAC ¶¶ 6, 151.  Plaintiffs, who together with related parties own 24% of LCB, bring this action under the Alien Tort Claims Act ("ATCA") to recover the damages that LCB (and they as LCB shareholders) suffered as a result of Defendants' scheme.

Defendants challenge Plaintiffs' ATCA claim on the ground that LCB and Plaintiffs were not direct victims of Hezbollah crimes.  The Second Circuit, however, has held that *aiding and abetting* Hezbollah crimes against humanity itself constitutes a "tort . . . committed in violation of the law of nations" within the meaning of the ATCA, and is thus separately actionable.  *See Licci*

*v. Lebanese Canadian Bank, SAL*, 834 F.3d 201, 211 (2d Cir. 2016) (*"Licci II"*), *petition for cert. filed*, No. 16-778 (Dec. 19, 2016).   LCB and its shareholders were victims, financially, of Defendants' distinct aiding-and-abetting tort.   Plaintiffs are thus entitled to bring suit pursuant to well-established standing principles.

Ignoring the well-known fact that Lebanon is a Hezbollah state, Defendants absurdly argue that Plaintiffs' claims based on Hezbollah crimes should be litigated in Lebanon.   *Newsweek* magazine recently reported that Hezbollah "is clearing its own path towards full control of Lebanon's government."   FAC ¶ 27.   Lebanon's justice minister recently resigned, citing Hezbollah's "domination" of the country.   *Id*.   The State Department recognizes that Lebanese courts have long been subject to Hezbollah pressure.   The attached declarations of distinguished Hezbollah experts Dr. Matthew Levitt, a former Treasury official and the author of *Hezbollah: The Global Footprint of Lebanon's Party of God* (Georgetown University Press, 2013), and Dr. Michael Rubin of the American Enterprise Institute, elaborate on Hezbollah's domination of Lebanon, leading to the inescapable conclusion that "a system dominated by Hezbollah cannot be expected fairly to adjudicate claims based on a wide-ranging international scheme whose very purpose is to launder funds to support Hezbollah's terrorist activities."   FAC ¶ 29.   Defendants' failure to show that Lebanon is an adequate forum to litigate Plaintiffs' ATCA claim is fatal to their motion to dismiss based on *forum non conveniens*.

Defendants fare no better on res judicata.   While Plaintiffs brought an action in Lebanon, it did *not* involve the critical facts at issue here:   Defendants' scheme, documented by the U.S. Government, to violate U.S. law by using New York banks, U.S. car dealers and international drug traffickers to launder money for Hezbollah and support its crimes against humanity.   Because the facts necessary to resolve this case were not at issue in Lebanon, res judicata does not apply.   Res

judicata also is inapplicable because (as Defendants' declarant concedes) violations of the law of nations are not actionable in Lebanon and thus could not have been asserted in the Lebanese proceeding. Moreover, even if the Lebanese case had involved Hezbollah crimes against humanity and the other elements of res judicata were satisfied, comity would forbid recognizing any Lebanese decision concerning Hezbollah given its domination of the Lebanese state.

Defendants' remaining arguments also lack merit. Principally:

1.      Defendants contend that the claim asserted here belongs to Societe Generale Bank de Liban ("SGBL"), which purchased LCB's assets. But it was LCB – not SGBL – that forfeited $102 million to the United States. The forfeited funds constituted, in effect, proceeds that SGBL paid LCB to acquire its assets, and those monies would have flowed through to LCB's shareholders but for the forfeiture. Accordingly, it was LCB and its shareholders — not SGBL — that suffered the loss and that are entitled to sue for damages.

2.      Defendants argue that SGBL and the Central Bank of Lebanon (the "Central Bank") are Rule 19 necessary parties. SGBL, however, has no interest in this case because it does not own the claim. As for the Central Bank, the FAC references it only because it turned a blind eye to Defendants' crimes. That is relevant to show that Plaintiffs' claim cannot viably be heard in Lebanon, but it does not make the Central Bank a necessary party.

3.      Defendants dispute personal jurisdiction. The Second Circuit, however, has specifically held that a defendant's purposeful use of New York correspondent banks to perpetrate a scheme to aid and abet Hezbollah crimes against humanity supports the exercise of personal jurisdiction. *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) (*"Licci I"*). That is precisely what the FAC alleges. *See* FAC ¶¶ 25.

For these and the additional reasons set forth below, Defendants' motion should be denied.

## II.    **FACTUAL BACKGROUND**

This proceeding is, in effect, part II of the Civil Forfeiture Action and is based on the Government's allegations there.   In the forfeiture case, the Government detailed an intricate scheme to use LCB to launder money for Hezbollah through New York banks, Michigan car dealers and international drug traffickers.   FAC Ex. B.   A related Treasury Department Finding described the money-laundering network and determined that "LCB managers [*i.e.*, Defendants] are complicit in the network's money laundering activities."   FAC Ex. A at 8 ("Treasury Finding").

Based on Defendants' criminal scheme perpetrated in the United States in violation of U.S. law, the Government sought forfeiture of LCB funds located in the U.S.   Specifically, LCB had sold its assets to SGBL in 2011.   Proceeds of that sale were being held in an escrow account outside the United States.   The U.S. Government sought forfeiture of equivalent funds held in U.S. correspondent accounts of the escrow institution on the ground that they were "traceable to the assets of LCB."   FAC Ex. B ¶ 52.

LCB forfeited $102 million to the United States in 2013 to resolve the forfeiture claim.   *See United States v. Lebanese Canadian Bank*, No. 11 Civ. 9186 (S.D.N.Y.), Doc. No. 462 (Ex. A to Declaration of Dennis B. Auerbach ("Auerbach Decl.")).   LCB, not SGBL, forfeited the funds.   *Id.* ¶ 4 ("LCB . . . shall forfeit to the United States . . . all of LCB's right, title, and interest in the Seized Funds.").   In announcing the settlement, the head of the Drug Enforcement Administration stated that it "addresses the role [LCB] played in facilitating illicit money movement from the United States to West Africa to Hizballah-controlled money laundering channels."   FAC ¶ 6.

Through their control of LCB, Defendants perpetrated the scheme alleged in the Civil Forfeiture Action, concealed it from Plaintiffs, and thereby caused LCB's $102-million loss.   *See* FAC ¶¶ 1-8, 52, Ex. A at 8.   That loss is specific to the United States and the actions the U.S. Government took in response to Defendants' criminal scheme to launder money for Hezbollah.

Plaintiffs sue derivatively to obtain redress for this injury to LCB so that they and related parties can recover their $24+ million share of the sale proceeds forfeited to the United States as a result of Defendants' scheme.

## III.    ARGUMENT

### A.  Because LCB Was a Victim of Defendants' Scheme to Aid and Abet Hezbollah Crimes Against Humanity, Plaintiffs Are Entitled to Sue Under the ATCA.

Contrary to Defendants' assertion, LCB and Plaintiffs, as LCB shareholders, were victims of Defendants' scheme to aid and abet Hezbollah crimes and thus can recover the damages they suffered pursuant to the ATCA.

The ATCA affords district courts original jurisdiction over "any civil action by an alien for a tort . . . committed in violation of the law of nations . . . ."  28 U.S.C. § 1350.  In *Licci II*, the Second Circuit held that Hezbollah attacks on civilians are crimes against humanity, which violate the law of nations within the meaning of the ATCA.  834 F.3d at 213.  The court further held that *aiding and abetting* such attacks by purposefully providing financial support to Hezbollah also violates the law of nations.  *Id*.  In so holding, the court determined that aiding and abetting Hezbollah crimes against humanity is itself a "tort . . . committed in violation of the law of nations" over which a federal court may exercise ATCA jurisdiction.

While LCB and its shareholders were not victims of Hezbollah attacks on civilians, they *were* victims, financially, of Defendants' separate aiding and abetting tort:  LCB was forced to forfeit $102 million of proceeds from the SGBL sale to the United States.  That is all that is necessary to support standing.

As with other statutes, a plaintiff has standing under the ATCA if it has suffered "(1) an injury in fact, which is (2) fairly traceable to the defendant's misconduct, and which can be (3) redressed through a favorable decision of the court."  *See, e.g.*, *Sexual Minorities Uganda v. Lively*,

960 F. Supp. 2d 304, 324 (D. Mass. 2013), citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).  Where, as here, ATCA liability is based on aiding and abetting, a plaintiff has standing if "the allegations of the complaint sufficiently support a finding that Plaintiff's injury is directly traceable to Defendant's conduct."  *Sexual Minorities Uganda*, 960 F. Supp. 2d at 325.

The $102-million loss suffered by LCB, and the corresponding loss suffered by Plaintiffs as significant LCB shareholders, constitutes injury in fact, traceable to Defendants' misconduct, which can be redressed by a damages award.  Each requirement for ATCA standing is satisfied.

Citing *Chowdhury v. Worldtel Bangl. Holding, Ltd.*, 588 F. Supp. 2d 375 (E.D.N.Y. 2008), Defendants argue that an organization cannot sue under the ATCA because it cannot suffer physical injury.  However, *financial* injury to an organization *is* actionable under the ATCA.  That is what is at issue here.  In *Sexual Minorities Uganda*, an organization sued under the ATCA based on defendant's acts to aid and abet persecution of LGBTI people in Uganda, alleging that it "had to retain the services of security personnel, take additional security measures for its premises, and relocate its offices and operations," all of which had "obviously cost money."  960 F. Supp. 2d at 324.  The organization was not itself persecuted.  Nonetheless, the court held that its financial loss constituted injury in fact traceable to defendant's misconduct, and that the organization thus had standing to sue for aiding and abetting under the ATCA.  *Id.* at 324-25.

Likewise, in *Estate of Rodriquez v. Drummond Co.*, 256 F. Supp. 2d 1250 (N.D. Ala. 2003), a labor union alleged that defendants' complicity in an attack against a third party "threaten[ed] [the union's] viability" and "force[d] it to expend scarce resources."  *Id.* at 1259.  The union was not itself physically harmed by violations of the law of nations, but it nonetheless had "alleged sufficient injury to have standing under the ATCA and to weather a motion to dismiss."  *Id.*

6

Similarly, in *National Coalition Gov't of Union of Burma v. Unocal, Inc.*, 176 F.R.D. 329 (C.D. Cal. 1997), workers were subjected to forced labor in Burma.  A labor organization brought ATCA and ancillary common law claims, alleging that it was "forced to divert resources to assist refugees attempting to escape forced labor." *Id*. at 341.  The organization was not itself subjected to forced labor, but the court still held that it had alleged a cognizable financial injury sufficient to confer standing to sue a defendant that had negligently taken advantage of the forced labor, and that such injury was "fairly traceable to the alleged violations of international law." *Id.* at 342.

As in these cases, LCB (and Plaintiffs) suffered a financial injury in fact, fairly traceable to Defendants' violations of the law of nations.  They are thus entitled to redress from Defendants[1] under basic standing principles.  Indeed, standing is all the more clear here because Defendants aided and abetted Hezbollah through crimes committed *in the United States* (not Uganda or Burma), making it even more incumbent for a U.S. court to provide relief.

Contrary to Defendants' assertion, permitting LCB and Plaintiffs to recover under the ATCA for the financial injury Defendants inflicted by using the Bank to aid and abet Hezbollah crimes is consistent with the ATCA's purposes.  As Defendants acknowledge, the ATCA "is a statute designed to 'protect[] human rights internationally.'"  Defs' Mem. at 15.  Terror against civilians is a paramount human-rights abuse and "[t]he only way to imperil the flow of money and discourage the financing of terrorist acts is to impose liability on those who knowingly and intentionally supply the funds to the persons who commit the violent acts."  *Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.*, 291 F.3d 1000, 1021 (7th Cir. 2002).  A lawsuit based on the Civil Forfeiture Action and Treasury Finding holding Defendants accountable

---

[1] Officers and directors are liable to a corporation and its shareholders not just for mismanagement in the traditional corporate-law sense, but also for injuries caused by their statutory violations.  *See*, *e.g.*, *Drachman v. Harvey*, 453 F.2d 722, 727 (2d Cir. 1971), *modified en banc on other grounds* (2d Cir. 1972).  That is what is at issue here.

for abusing LCB to financially support Hezbollah terrorism is a highly effective way to discourage terrorist financing.

Finally, Defendants' argument that Plaintiffs' ATCA claim is "implausible as a matter of chronology" (Defs' Mem. at 17) lacks merit.  Defendants focus on the Hezbollah rocket attacks on Israeli civilians in 2006, arguing that such attacks pre-dated the scheme alleged in the FAC. The FAC, however, cites the 2006 rocket attacks as just one example of Hezbollah crimes against humanity.  FAC ¶ 74.  It alleges that "[b]etween 2005 and 2011, Hezbollah plotted and/or committed *numerous* violations of the law of nations," citing, for instance, its role in the ongoing Syrian civil war.  *Id*. (emphasis added).  Defendants' scheme aided and abetted these ongoing Hezbollah crimes and Plaintiffs' ATCA claim is thus entirely plausible chronologically.

## B.  <u>The Case Should Not Be Dismissed Based on *Forum Non Conveniens*</u>.

### 1.  *Lebanon Is Not an Adequate Forum to Litigate a Claim for Aiding and Abetting Hezbollah Crimes.*

The most critical step in a *forum non conveniens* ("FNC") analysis "is to determine if an adequate alternative forum exists."  *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000).  The defendant "has the burden to establish" the existence of an adequate alternative forum (*id*.), and failure to meet this burden is "fatal" to a motion to dismiss based on FNC.  *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 157 (2d Cir. 2005).

Given Hezbollah's domination of the Lebanese government, documented by the State Department, the attached declarations, and elsewhere, Defendants cannot meet their burden of showing that Lebanon is an adequate alternative forum.  "A motion to relegate a plaintiff to a foreign forum will be denied if the plaintiff shows that . . . conditions in the foreign forum plainly demonstrate that the plaintiffs are highly unlikely to obtain basic justice therein."  *Rasoulzadeh v. Associated Press,* 574 F. Supp. 854, 861 (S.D.N.Y. 1983) (citation and internal quotation marks

omitted), *aff'd,* 767 F.2d 908 (2d Cir. 1985); *accord Cabiri v. Assassie-Gyimah*, 921 F. Supp. 1189,

1199 (S.D.N.Y. 1996); *HSBC USA, Inc. v. Prosegur Paraguay, S.A.*, 2004 WL 2210283, at *2

(S.D.N.Y. Sept. 30, 2004).  When "doubts raised [about a foreign system] are sufficiently serious"

and the Court is "unable to conclude" that the forum is adequate, a motion to dismiss based on

FNC must be denied.  *See Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*,

528 F. Supp. 1337, 1343 (S.D.N.Y. 1982), *aff'd*, 727 F.2d 274 (2d Cir. 1984).

A plaintiff is not likely to obtain justice in a foreign forum where defendants "could dictate

the outcome of th[e] dispute through their control over [the other country's] courts."  *Daventree*

*Ltd. v. Republic of Azerbijan*, 349 F. Supp. 2d 736, 756 (S.D.N.Y. 2004), *clarified*, 2005 WL

2585227 (S.D.N.Y. Oct. 13, 2005); *see also In re Assicurazioni Generali S.p.A. Holocaust Ins.*

*Litig.*, 228 F. Supp. 2d 348, 357 (S.D.N.Y. 2002) (forum inadequate where "decision-making

processes are and can be controlled by the defendants in this case").  Accordingly, in *Cabiri*, the

court denied FNC dismissal of a claim against a Ghanaian security official who engaged in torture

under color of Ghanaian law because it found that "plaintiff is highly unlikely to obtain justice in

the Ghanaian courts."  921 F. Supp. at 1199.  Similarly, in *HSBC*, the court refused to dismiss a

claim based on a robbery in Paraguay "coordinated and supported by a network of current and ex-

governmental, military and police officials" because "HSBC would likely be unable to obtain basic

justice in Paraguay."  2004 WL 2210283, at *3.  And in *Daventree*, the court refused to dismiss a

claim alleging fraud and corruption by Azerbaijani government officials based on evidence that

defendants "could dictate the outcome of this dispute through their control over Azeri courts."  349

F. Supp. 2d at 756; *see also Rasoulzadeh*, 574 F. Supp. at 861 (denying FNC dismissal of claim

asserted by enemies of Iranian regime because the court had "no confidence whatsoever in the

plaintiffs' ability to obtain justice at the hands of the courts administered by Iranian mullahs");

*Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 610 (S.D.N.Y. 2014) (Ecuadorian courts unfair because, *inter alia*, "Ecuadorian judges sometimes decide cases based on substantial outside pressures, especially in cases of interest to the government"), *aff'd*, 833 F.3d 74 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2268 (2017).

Lebanon is not an adequate forum here under this standard.  The declarations of Hezbollah experts Drs. Levitt and Rubin explain that Hezbollah "dominates the political infrastructure of Lebanon," and enjoys "permanent veto" power there; Hezbollah's influence "extends well into the country's judicial system;" Hezbollah uses its "influence in Lebanon to protect itself and its allies;" Hezbollah "has demonstrated an ability to derail open judicial inquiry into itself and its members;" in a case like this involving Hezbollah crimes and the criminal manner in which they are financed, "Hezbollah could leverage its connections" to "sidetrack any court hearing through a variety of means, overt or covert;" Hezbollah has intervened in prominent judicial matters involving itself and its allies; and "[a]t present, it is impossible for allegations against Hezbollah to be decided impartially in Lebanon."  *See* Declaration of Dr. Matthew Levitt; Declaration of Dr. Michael Rubin ("Rubin Decl."); FAC ¶¶ 27-29; *accord*, Tony Badran, *Lebanon Is Another Name for Hezbollah*, FOUND. FOR DEF. OF DEMOCRACY (July 26, 2017), http://www.defenddemocracy.org/media-hit/lebanon-is-another-name-for-hezbollah ("Hezbollah, of course, controls the Lebanese government . . . The Lebanese state, in other words, is worse than a joke.  It's a front.").

The State Department has specifically recognized that the Lebanese judiciary has long been subject to Hezbollah pressure, finding that "[t]he Constitution provides for an independent judiciary; however, in practice, it was subject to political pressure . . . Lebanese and Palestinian militias, particularly Hizballah, retained significant influence over much of the country."  *2004 Country Reports on Human Rights Practices: Lebanon*, U.S. DEP'T STATE (Feb. 28, 2005); *see*

*also* Rubin Decl. ¶¶ 14, 17 (citing State Department reports concerning corruption and improper influence within Lebanese judiciary).  Moreover, according to corruption watchdog Transparency International, Lebanon is more corrupt than over 135 other countries, including Brazil, Russia, Iran, and Kazakhstan.  FAC ¶ 30.  Such evidence is highly relevant to the FNC inquiry.  *See, e.g.*, *HSBC*, 2004 WL 2210283, at *3-4 (denying FNC dismissal based, *inter alia*, on State Department report that Paraguay's "courts are often pressured" and evidence that Paraguay was "the fourth most corrupt country in the world"); *see also Bridgeway Corp. v. Citibank*, 201 F.3d 134, 143 (2d Cir. 2000) (district court properly relied on State Department reports to find that Liberian courts could not provide due process).

Plaintiffs' concerns about the Lebanese justice system are real, not theoretical.  The Central Bank, whose cooperation is essential to bring a money-laundering claim in Lebanon, has turned a blind eye to Defendants' scheme.  FAC ¶¶ 31, 77-89.  Indeed, after leaving LCB, Defendant Ahmad Safa was given a high position within an arm of the Central Bank, further demonstrating the Central Bank's indifference, at best, to laundering money for terrorists.  *Id.* ¶ 14.  Moreover, criminal defamation cases have been brought against Plaintiffs in Lebanon simply for having the temerity to assert claims in the United States based on the U.S. Government's allegations in the Civil Forfeiture Action.  Defs' Mem. at 5-6.  These facts underscore that a claim founded on Defendants' scheme to launder funds through the United States to finance Hezbollah crimes against humanity could not possibly be adjudicated fairly in Lebanon.

Defendants' declarant states that the Lebanese judiciary is *formally* independent.  *See* El-Khoury Decl. ¶¶ 7-8, 10-15.  But he offers nothing to contradict the overwhelming evidence summarized above that Lebanon, including its courts, is *in fact* dominated by Hezbollah.

Defendants' evidence of the mere formal independence of the Lebanese judiciary does not

meet their FNC burden.  *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289 (S.D.N.Y. 2003), is on point.  There, plaintiffs brought an ATCA claim based on ethnic cleansing in Sudan.  Defendants moved to dismiss based on FNC, relying on an expert declaration asserting the formal independence of the Sudanese judiciary.  The court held that the declaration did not satisfy defendants' burden because it lacked "any statement indicating that the Sudanese judicial system is fair and free from corruption, and that plaintiffs, who are alleging that Sudan committed genocide and war crimes, could get a fair trial."  *Id*. at 335.  The court further stated that "[i]t would be rather surprising if the government of Sudan conducted a war of 'ethnic cleansing' against plaintiffs and at the same time granted them a fair judicial process to remedy those injuries."  *Id*. at 336.  Similarly, in *Daventree*, the court held that a declaration emphasizing the formal independence of courts in Azerbaijan was insufficient to rebut evidence that the politically well-connected defendants could, as a practical matter, dictate the outcome of litigation against them.  349 F. Supp. 2d at 756.  And in *Bridgeway*, the Second Circuit held insufficient an expert affidavit that concerned "the design of the Liberian judicial system, but sa[id] nothing about its practice during the period in question."  201 F.3d at 142.  Likewise here, the testimony of Defendants' declarant does not meet Defendants' FNC burden given the overwhelming evidence that Hezbollah dominates Lebanon and the fact that Plaintiffs' claims concern Hezbollah crimes.

The fact that Plaintiffs previously sued in Lebanon on claims unrelated to Hezbollah crimes does not suggest that Lebanese courts can fairly adjudicate the claims here that *do* involve such crimes.  Indeed, in *Bridgeway*, the Second Circuit rejected as "without merit" the notion that a plaintiff had conceded a foreign court's impartiality by suing there in the past.  201 F.3d at 141.

Defendants' cases also do not show that Lebanon is an adequate forum.  They merely say that Lebanese courts can viably adjudicate routine civil matters like medical malpractice or

insurance indemnification, which have no connection to politics or to Hezbollah terrorism.  In *Gibbons v. American University of Beirut*, 1983 U.S. Dist. LEXIS 13401 (S.D.N.Y. Sept. 27, 1983), for instance, the court held that a medical malpractice case could be fairly litigated in Lebanon, explaining that it was "a common civil matter."  *Id*. at *13.  This case, by contrast, is not a "common civil matter" unrelated to politics.  Rather, it directly concerns Hezbollah and thus cannot be fairly litigated within a system that Hezbollah controls.

Finally, Defendants concede that there is no cause of action in Lebanon for violations of international law.  El-Khoury Decl. ¶ 20.  That in itself renders Lebanon an inadequate forum to hear Plaintiffs' ATCA claim.  *See Presbyterian Church*, 244 F. Supp. 2d at 337 (questioning adequacy of Canadian courts where they would "only be able to treat plaintiffs' allegations as violations of Canadian, rather than international law" because "this treatment fails to recognize the gravity of plaintiffs' allegations").

2.  *Defendants Also Have Not Made the Requisite Showing That Relevant FNC Factors "Tilt Strongly" in Favor of Dismissal.*

Even if — contrary to fact — Defendants had met their burden of showing that Lebanon is an adequate alternative forum, their motion to dismiss based on FNC still would fail.

If a defendant has shown that an adequate alternative forum exists, a court must then give strong consideration to plaintiff's choice of forum and "balance a series of factors" in determining whether dismissal is appropriate.  *Wiwa*, 226 F.3d at 100.  These factors include, *inter alia*, the interest of the United States in affording a federal forum for the type of claim at issue and the convenience of the parties.  *Id*.  Dismissal is only appropriate if the defendant can establish, after considering plaintiff's choice of forum, that the factors "tilt strongly" in favor of dismissal.  *Id*. (citation and internal quotation marks omitted); *see also id.* (FNC is discretionary device that should be used to dismiss a case only in "rare instances").

13

The FNC factors do not "tilt strongly" in favor of dismissal here.  First, a plaintiff's forum choice is entitled to substantial deference and "'should rarely be disturbed.'"  *Wiwa*, 226 F.3d at 100 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)); *accord Norex Petroleum*, 416 F.3d at 154 (noting "strong presumption in favor of the plaintiff's choice of forum" (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)).  The deference owed even to a foreign plaintiff's choice of forum is significant if the forum choice "has been dictated by reasons that the law recognizes as valid."  *See Iragorri v. United Tech. Corp.*, 274 F.3d 65, 71-72 (2d Cir. 2001) (en banc).  Here, Plaintiffs have sued in the United States on their ATCA claim for the legally valid reasons that U.S. courts, unlike Lebanese courts: (a) will hear claims for violations of international law; and (b) can impartially adjudicate a case concerning Hezbollah.  Substantial deference is thus owed to Plaintiffs' forum choice.

Second, the fact that this is an ATCA case weighs strongly against dismissal.  The very purpose of the ATCA is to provide aliens with a federal forum to adjudicate violations of the law of nations.  "Since this action is brought pursuant to . . . the Alien Tort Claims Act . . . this Court has an interest in having the issues of law presented decided by a United States court."  *Cabiri*, 921 F. Supp. at 1199.

Further, as set forth in the Civil Forfeiture Action, Defendants perpetrated their scheme through crimes and torts committed in the United States.  U.S. courts have a strong interest in holding parties accountable for such acts.  *See Carlenstolpe v. Merck & Co.*, 819 F.2d 33, 35 (2d Cir. 1987).  In particular, persons who "contribute material support or resources, directly or indirectly, to . . . organizations that pose a significant  risk of committing acts of terrorism that threaten the security of nationals of the United States . . . necessarily direct their conduct at the United States, and should reasonably anticipate being brought to court in the United States to

answer for such activities."  Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, § 2(a)(6), 130 Stat. 852 (2016).  Hezbollah is such a terrorist organization and Defendants provided it with material support through the scheme detailed in the Civil Forfeiture Action and the FAC. Defendants should thus answer for their crimes and torts in an American court.  The U.S. interest is particularly strong here because the case involves the same transactions at issue in the Civil Forfeiture Action — a case over which this Court has already exercised jurisdiction.

Defendants argue that the relevant evidence is located in Lebanon.  In fact, significant evidence is also located in the United States.  The FAC alleges that Defendants perpetrated their scheme through New York correspondent banks and Michigan car dealers.  *See, e.g.*, FAC ¶¶ 25, 44-76.  Important evidence concerning the scheme such as bank and car-sale records, is thus likely located in those states.  To be sure, other evidence is located in Lebanon.  But where, as here, there are "abundant available means for collecting [ ] evidence" abroad, the foreign location of some evidence is of limited relevance to the FNC analysis.  *Assicurazioni Generali*, 228 F. Supp. 2d at 359-60.  Most such evidence also is within Defendants' control, thus weighing against dismissal. *See Cabiri*, 921 F. Supp. at 1198-99.  That some points of Lebanese law may potentially be relevant likewise is not dispositive, as interpreting foreign law is "a chore federal courts must often perform."  *Manu Int'l, S.A. v. Avon Prods., Inc.*, 641 F.2d 62, 68 (2d Cir. 1981).

In sum, even if Lebanon were an adequate alternative forum, the FNC factors do not "tilt strongly" in favor of dismissal.  Accordingly, Defendants' motion to dismiss should be denied.

## C. Defendants' Res Judicata Defense Fails.

### 1.    *The Elements of Res Judicata Are Not Satisfied.*

A prior decision bars a subsequent action based on res judicata only if the prior case involved the same cause of action, the prior case resulted in a final judgment on the merits, and the parties in the two cases are the same.  *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150,

157 (2d Cir. 2017).  Defendants have the burden of proving that res judicata applies.  *Id*.  They cannot meet that burden.

Most fundamentally, the causes of action in Lebanon and the U.S. are not the same.  A critical issue in determining identity of claims is "whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first."  *Brown Media*, 854 F.3d at 157 (citation and internal quotation marks omitted).  The core facts in the U.S. case, as detailed in the Civil Forfeiture Action and Treasury Finding, involve Defendants' abuse of LCB to launder money for Hezbollah through New York banks and Michigan car dealers, thus aiding and abetting Hezbollah terrorism.  These facts are essential to the U.S. lawsuit, but they were not raised — and, for the reasons stated, could not viably have *been* raised — in Lebanon.  As explained in the Declaration of Georges Wakim ("Wakim Decl."), "the money laundering scheme to benefit Hezbollah documented by the United States Government does not constitute the factual basis for the Lebanese Action, the facts concerning that scheme were not presented to the court in the Lebanese Action, and the aiding and abetting of terrorism by defendants documented by the United States Government that is at issue in the US Action was not litigated before the Lebanese court."  Wakim Decl. ¶ 3.

Moreover, as noted above, Defendants' declarant concedes that there is no cause of action in Lebanon for violations of international law.  El-Khoury Decl. ¶ 20.  Accordingly, even if they had wanted to, Plaintiffs *could not* have brought a claim in Lebanon that Defendants violated the law of nations by aiding and abetting Hezbollah crimes against humanity.  Res judicata thus cannot bar Plaintiffs' ATCA claim.  *See Stevenson v. Bank of America, N.A.*, 597 F. App'x 4, 5 (2d Cir. 2015) (res judicata not applicable where cause of action could not have been asserted in first case).  The case on which Defendants rely itself makes clear that res judicata applies only when a claim

"could have been raised" in the prior action.  *Cameron v. Church*, 253 F. Supp. 2d 611, 619 (S.D.N.Y. 2003) (quoting *Saud v. Bank of N.Y.,* 929 F.2d 916, 918-19 (2d Cir. 1991)).[2]

Finally, Defendant Ahmad Safa was not a party to the Lebanese action that resulted in the decisions on which Defendants rely.  Wakim Decl. ¶ 5.  Accordingly, in no event can res judicata bar Plaintiffs' claims against him.

2.      *Even If the Requirements for Res Judicata Had Been Satisfied, the Court Should Not Recognize the Lebanese Rulings Under Principles of Comity.*

Recognition of foreign judgments is governed by principles of comity.  *See Hilton v. Guyot*, 159 U.S. 113 (1895); *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987).  Courts are not required to grant recognition to foreign judgments, and will only do so if enforcement of the foreign judgment does not violate public policy.  *Diorinou v. Mezitis*, 237 F.3d 133, 143 (2d Cir. 2001); *Victrix*, 825 F.2d at 713.  Enforcement of a judgment obtained through proceedings that are incompatible with due process violates public policy.  *See Ackermann v. Levine*, 788 F.2d 830, 842 n.12 (2d Cir. 1986).  Recognition should be afforded only when there is "nothing to show . . . prejudice" in the foreign court.  *Hilton*, 159 U.S. at 202.

As explained above, claims involving Hezbollah crimes against humanity cannot be fairly litigated in Lebanon.  Accordingly, even if the Lebanese action had involved the scheme to aid and abet Hezbollah crimes against humanity and the claims were thus the same, recognition of the Lebanese decisions would not be appropriate.  *See, e.g.*, *Chevron*, 974 F. Supp. 2d at 609-17 (denying recognition based, in part, on undue executive influence over Ecuadorian judiciary; citing State Department conclusion "that Ecuadorian judges sometimes decide cases based on substantial outside pressures, especially in cases of interest to the government"); *Bridgeway*, 201 F.3d at 141-

---

[2] Res judicata also would not apply under Lebanese law.  *See* Declaration of Lebanese law professor Marie-Claude Najm Kobeh ¶¶ 6-7.

44 (denying recognition based in part on State Department finding that Liberian judicial system was in a "state of disarray;" rejecting evidence concerning formal "design" of Liberian judiciary).

**D.  LCB Owns the Claim, Not SGBL, and Plaintiffs Have Derivative Standing to Assert It.**

     1.     *SGBL Does Not Own the Claim.*

Defendants seek to evade liability by contending that LCB purportedly sold the ATCA claim at issue here to SGBL as part of the asset sale between those parties.  The assertion is belied by the settlement agreement filed with the court in the Civil Forfeiture Action.  The settlement agreement specifies that the $102 million forfeited to the United States was the property of *LCB* — not SGBL.  *See* Auerbach Decl., Ex. A ¶ 4 ("*LCB*, as part of the settlement set forth herein, shall forfeit to the United States for disposition according to law all of *LCB's* right, title, and interest in the Seized Funds") (emphasis added).  Indeed, not only did SGBL not forfeit anything — it actually received a $60-million *distribution* from funds originally seized in the Civil Forfeiture Action as part of the forfeiture settlement.  *Id.* ¶¶ 5, 7.

Moreover, as noted, the funds forfeited to the United States effectively were proceeds of LCB's sale of assets to SGBL, which would otherwise have been distributed to Plaintiffs and other LCB shareholders.  *See* Section II, *supra*.  LCB obviously did not convey to SGBL in the asset sale its right to the *very proceeds of that sale*.  In short, LCB and its shareholders were the only parties injured by the forfeiture.  They, not SGBL, are thus the ones entitled to sue for damages.

Defendants' cases offer them no support.  In *Firstcom, Inc. v. Qwest Corp.*, 2006 WL 2666301 (D. Minn. Sept. 18, 2006), the court on summary judgment held that the specific contract at issue in that case provided for the sale of the derivative claim plaintiffs sought to assert.  *Id.* at *4-6.  Here, the LCB-SGBL sale agreement is not part of the pleadings or the records of this Court and thus cannot properly be considered by the Court on a motion to dismiss.  *See Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013).  Even if the sale

agreement *were* properly considered, it would, as noted, be absurd to construe that contract to convey ownership to SGBL of the very proceeds it paid to acquire LCB's assets.

Moreover, the corporation that sold its assets in *Firstcom* dissolved immediately after the sale and thus ceased to have the capacity to sue.  2006 WL 2666301 at *3-4.  By contrast, LCB was not dissolved; it continues to exist as a legal entity in liquidation and thus has the capacity to sue or be sued.  *See* Wakim Decl. ¶ 6.

Defendants' reliance on *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, N.A.*, 247 F. Supp. 3d 377 (S.D.N.Y. 2017), also is unfounded.  The court there based its ruling that a claim was transferred in an asset sale on a highly fact-specific seven-page inquiry focused on the language of the sale agreement and the nature of the claim.  *Id*. at 409-15.  The decision has no relevance to the very different contract and the very different claim here.

2.      *Plaintiffs Have Derivative Standing to Assert the Claim.*

Contrary to Defendants' assertion, Plaintiffs have derivative standing to assert the ATCA claim.  Citing cases where jurisdiction was based on diversity, Defendants contend that Lebanese law governs whether Plaintiffs can sue derivatively and that derivative actions purportedly are not permitted under Lebanese law.  *See* Defs' Mem. at 20.  The Court here, however, has federal-question jurisdiction under the ATCA.  Standing to sue derivatively in a *federal-question* case is an issue of *federal* law.  *See, e.g.*, *Drachman*, 453 F.2d at 727; *Fischer v. CF&I Steel Corp.*, 599 F. Supp. 340, 344 (S.D.N.Y. 1984); *Arnett v. Gerber Scientific, Inc.*, 566 F. Supp. 1270, 1272-73 (S.D.N.Y. 1983); *see also In re Pittsburgh & Lake Erie R.R. Sec. & Antitrust Litig.*, 543 F.2d 1058, 1067 (3d Cir. 1976) ("standing in a Rule 23.1 case to assert a derivative claim based on federal law is a federal law question").  Under federal law, "an action to redress injuries to a corporation . . . must be brought in the name of the corporation through a derivative action."

19

*Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1101 (2d Cir. 1988) (citation and internal quotation marks omitted).

Even if Lebanese law applied, it would also allow for Plaintiffs to sue derivatively. *See* Declaration of Lebanese Law Professor Marie-Claude Najm Kobeh ("Najm Kobeh Decl.") ¶ 8. Defendants' declarant agrees. *See* El-Khoury Decl. ¶ 19. Under Lebanese law, a shareholder's *damages* in a derivative action are limited to its percentage interest in the company. Najm Kobeh Decl. ¶ 9; *see also* Defs' Mem. at 20 (shareholders may sue "for damages within the limit of [their] interest in the company"). That, however, does not mean that a shareholder lacks standing to bring a derivative suit to pursue that proportional recovery. Najm Kobeh Decl. ¶¶ 8-9.

Finally, even if a derivative claim were not permissible, that would just mean that Plaintiffs should be allowed to amend the FAC to assert direct claims. It would not warrant dismissal. *See* Fed. R. Civ. P. 15(a). Whether this case proceeds as derivative or direct, Plaintiffs have the right to sue for the substantial damages they suffered as a result of the crimes and torts Defendants committed in the United States to aid and abet Hezbollah crimes against humanity.[3]

**E. Neither SGBL Nor the Central Bank Are Necessary Parties.**

Defendants next assert that dismissal is required under Fed. R. Civ. P. 19. In fact, neither SGBL nor the Central Bank — the two entities referenced in Defendants' motion — are necessary parties under Rule 19.

For the reasons stated above, SGBL does not own the claim based on the $102-million forfeiture. It thus has no relevant interest in the outcome of the case, and is not a necessary party under Rule 19(a). Defendants' focus on how SGBL was treated in Lebanon but, as explained, the

---

[3] Lebanese courts do not have mandatory or exclusive jurisdiction to hear Plaintiffs' claims. *See* Najm Kobeh Decl. ¶ 10. Indeed, as Defendants' declarant concedes, Lebanese courts do not have jurisdiction *at all* to hear a claim for violations of the law of nations. El-Khoury Decl. ¶ 20.

Lebanese and U.S. claims are not the same, and SGBL's different role in Lebanon just further highlights that point.  Further, joinder is a procedural issue.  Rule 19 thus applies, not Lebanese law.  Under Rule 19, SGBL clearly is not a necessary party.

The Central Bank also is not a necessary party.  The FAC references the Central Bank only because its cooperation is necessary for a money-laundering case to be brought in Lebanon, and the Central Bank has instead turned a blind eye to Defendants' misconduct (based in part on its Governor's close relationship with Defendant Hamdoun).  FAC ¶¶ 31, 77-89.  Defendants have also invoked their good standing with the Central Bank to justify their misconduct.  *Id.* ¶ 12-13.  These allegations are relevant simply because they further establish that Plaintiffs cannot viably pursue their claims concerning the scheme to aid and abet Hezbollah in Lebanon.  The FAC does not allege that the Central Bank is jointly liable for Defendants' misconduct.

Even if joint liability *had* been alleged, that would not make the Central Bank a necessary party.  "[I]t has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."  *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990).  "Federal courts interpreting Rule 19(a) have made absolutely clear that it is not necessary for all joint tortfeasors to be named as defendants."  *Jerez v. Cooper Indus., Inc.*, 2003 WL 22126893, at *1 (S.D.N.Y. Sept. 12, 2003); *accord Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 358 (2d Cir. 2000).

*TJGEM LLC v. Republic of Ghana*, 26 F. Supp. 3d 1 (D.D.C. 2013), *aff'd*, 2015 WL 3653187 (D.C. Cir. June 9, 2015), an out-of-circuit decision, does not support Defendants' position.  There, a bidder for a flood-alleviation project in Ghana sued the Republic of Ghana and other defendants based on the award of the contract to a competing bidder.  The court held that Ghana was a necessary party because "the plaintiff is asking for an examination of the reasons for, and propriety of, a foreign sovereign's decision to award a contract for a construction project in a

21

foreign state." *Id*. at 12.  Ghana thus had a direct interest in the outcome of the action.  The Central Bank has no such interest here.

While Defendants say that the Central Bank should be joined because it is disparaged in the FAC, that is not the law.  Indeed, to show that a foreign forum is inadequate for FNC purposes, it is often necessary for the plaintiff to demonstrate that a foreign legal system is infected by corruption or undue influence.  *See* Section III.B.1, *supra*; *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009) (plaintiff may defeat FNC dismissal by "producing evidence of corruption . . . in the foreign forum").  If that converted the foreign sovereign into a necessary party (which could not be feasibly joined based on sovereign immunity), then a plaintiff could rarely make the showing required to defeat FNC dismissal, without at the same time inviting Rule 19(b) dismissal.  Defendants cite no authority for such a heads I win, tails you lose application of the federal rules.

## F.  The Court Has Personal Jurisdiction Over Defendants Because They Purposefully Used New York Banks to Perpetrate Their Scheme to Aid and Abet Hezbollah.

At the motion-to-dismiss stage, the plaintiff need only "make a prima facie showing that [personal] jurisdiction exists."  *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006).  This showing may be made by "pleading in good faith . . . legally sufficient allegations of jurisdiction." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).

Plaintiffs easily meet this standard.  Under New York law and the Due Process Clause, there are two requirements for the exercise of specific jurisdiction:  the defendant must have engaged in purposeful conduct in New York such as the transaction of business in the State; and plaintiffs' claim must have arisen from that purposeful activity.  *See, e.g.*, *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327 (2012).  Both prongs are satisfied here.

Defendants transacted business in New York by purposefully using correspondent bank accounts in New York to effectuate their scheme to aid and abet Hezbollah.  *See* FAC ¶ 25; FAC

Ex. B ¶ 64.  In the very context at issue here — misuse of LCB to aid and abet Hezbollah — the Second Circuit in *Licci I* recognized that "the use of a New York correspondent bank account, standing alone, may be considered a 'transaction of business' . . . if the defendant's use of the correspondent account was purposeful."  *Licci I*, 732 F.3d at 168 (citation omitted).  The court further concluded that "the selection and repeated use of New York's banking system, as an instrument for accomplishing the alleged wrongs for which the plaintiffs seek redress, constitutes purposeful availment . . . of the privilege of doing business in New York, so as to permit the subjecting of LCB to specific jurisdiction within the Southern District of New York consistent with due process requirements."  *Id*. at 171 (citation and internal quotation marks omitted).

The FAC alleges that Defendants "repeatedly caused funds to be transferred by wire through LCB correspondent accounts in New York; such transfers formed an essential part of Defendants' scheme; and such transfers were purposefully and deliberately routed through various banks in this district for the purpose of purchasing used cars in Michigan and otherwise advancing the laundering scheme described in this action."  FAC ¶ 25; *see also id.* (citing Treasury Finding that LCB managers "personally process transactions on the [money laundering] network's behalf").  These allegations of repeated, purposeful use of New York correspondent accounts to advance the scheme to aid and abet Hezbollah crimes against humanity are plainly sufficient to support the exercise of personal jurisdiction.

Defendants' cases are off base.  In *Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66 (2d Cir. 2017), personal jurisdiction was lacking because plaintiffs alleged "mere maintenance of correspondent bank accounts at an affiliate bank in New York" rather than "the kind of intentional and repeated use of correspondent accounts that amounts to a transaction of business."  *Id*. at 67.  Similarly, in *Community Finance Group, Inc. v. Stanbic Bank Ltd.*, 2015 WL 4164763 (S.D.N.Y.

July 10, 2015), use of a correspondent bank account in New York was "adventitious" rather than "purposeful" because plaintiffs alleged only a single transfer to the account that plaintiff had not even itself initiated. *Id*. at *4. Here, by contrast — as in *Licci I* — the FAC alleges Defendants' repeated, purposeful use of correspondent banks in New York to perpetrate their scheme. That makes out a prima facie case for the exercise of jurisdiction.

## G.  Defendants' Waiver Argument Fails.

Plaintiffs did not waive or release their claims against Defendants. First, Defendants' waiver argument relies on material outside the pleadings: the El-Kai declaration and attachments thereto. The issue is not, therefore, properly raised on a motion to dismiss. *Nakahata,* 723 F.3d at 202; *Schine v. Schine*, 250 F. Supp. 822, 827 (S.D.N.Y. 1966) ("The controversy as to whether or not in fact the plaintiffs had the requisite knowledge essential to a defense of estoppel obviously must await trial determination.").

Second and relatedly, Defendants' assertion that Plaintiffs purportedly knew of and acquiesced to Defendants' misconduct (Defs' Mem. at 19) directly contradicts the allegations of the FAC (*see, e.g.*, ¶¶ 132-35), which must be accepted as true on a motion to dismiss.

Third, the purported release on which Defendants rely only applies to the act of agreeing to forfeit $102 million to settle the forfeiture case. Defs' Mem. at 19. Defendants were *not* released for participating in the *underlying criminal scheme* that forced LCB to forfeit $102 million. That underlying scheme is what is at issue in this case.

Finally, the purported release concerns claims by a shareholder against another LCB "shareholder." Defs' Mem. at 19. Plaintiffs, however, sue Defendants in their capacities as LCB *managers or directors*. FAC ¶¶ 12-14. The release of a party in one corporate capacity does not release that party in a different corporate capacity. *See In re Waste Mgmt., Inc. Sec. Litig.*, 2003 WL 1463585, at *1 (N.D. Ill. Mar. 19, 2003) ("[T]he release of liability for a person for actions in

one fiduciary capacity does not automatically release that same person for potential breaches in a different fiduciary capacity"); *Ansley v. Cooke*, 2017 WL 3872481, at *3 (S.D. Ohio Sept. 5, 2017) (release of defendant in officer capacity did not release him in owner/shareholder capacity); *Green v. Callahan*, 664 So. 2d 21, 23 (Fla. Dist. Ct. App. 1995) (same).  Any argument that a broader release was intended raises factual issues that cannot be resolved on a motion to dismiss.  *Id.*

## H.  Plaintiffs' Claims Are Timely.

Defendants do not and cannot dispute that Plaintiffs' ATCA claim is timely.  *See, e.g.*, *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 627 (S.D.N.Y. 2012) (10-year statute of limitations applicable to ATCA).  To the extent there is a need for the Court to exercise ancillary jurisdiction over Plaintiffs' non-ATCA claims concerning the $102-million forfeiture, those claims are timely as well because they did not accrue until the forfeiture occurred in 2013 — well within the relevant limitation periods.  *See, e.g.*, *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (tort claim accrues when wrongful act results in damages).

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss should be denied.


Dated: January 22, 2018                                     Respectfully submitted,

                                                             s/ Dennis B. Auerbach
                                                            Anthony Herman
                                                            Dennis B. Auerbach
                                                            Andrew E. Siegel
                                                            COVINGTON & BURLING LLP
                                                            One CityCenter, 850 Tenth Street
                                                            Washington, DC  20001
                                                            (202) 662-5226

                                                            *Counsel for Plaintiffs*

25