**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Ghazi Abu Nahl,** *et al.* | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civ. No. 1:15-cv-9755 (LGS)(JCF) |
| | ) |
| **Georges Zard Abou Jaoude,** *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

---

### REPLY IN SUPPORT OF DEFENDANTS GEORGES ZARD ABOU JAOUDE, MOHAMAD HAMDOUN, AND AHMAD SAFA'S MOTION TO DISMISS

---

Mitchell R. Berger (MB-4112)
SQUIRE PATTON BOGGS (US) LLP
2550 M Street NW
Washington, D.C. 20037
Telephone:  (202) 457 5601
Facsimile:  (202) 457 6315
Email:  mitchell.berger@squirepb.com

*Attorneys for Defendants Georges Zard Abou Jaoude,*
*Mohamad Hamdoun, and Ahmad Safa*

# TABLE OF CONTENTS

**Page**

I.   *FORUM NON CONVENIENS* REQUIRES DISMISSAL ................................................ 1

II.  THE LEBANESE PROCEEDINGS PRECLUDE ALL PLAINTIFFS' CLAIMS........... 5

III. PLAINTIFFS' ATS CLAIM FAILS AS A MATTER OF LAW..................................... 6

IV.  PLAINTIFFS' CLAIMS FAIL BECAUSE THE CENTRAL BANK OF
     LEBANON AND SGBL ARE ABSENT, INDISPENSABLE PARTIES...................... 8

V.   PLAINTIFFS' DERIVATIVE CLAIMS FAIL AS A MATTER OF LAW .................... 9

CONCLUSION................................................................................................................. 11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advantage Int'l Mgnt. v. Martinez,*
  1994 WL 482114 (S.D.N.Y. Sept. 2, 1994)................................................................5

*Aguinda v. Texaco, Inc.,*
  142 F. Supp. 2d 534 (S.D.N.Y. 2001)......................................................................5

*In re Assicurazioni Generali S.P.A. Holocaust Ins. Litig.,*
  228 F. Supp. 2d 348 (S.D.N.Y. 2002).......................................................................2

*Base Metal Trading SA v. Russ. Aluminum,*
  253 F. Supp. 2d 681 (S.D.N.Y. 2003)..............................................................2, 4, 6

*BFI Group Divino Corp. v. JSC Russ. Aluminum,*
  298 F. App'x 87 (2d Cir. 2008) ...............................................................................2, 3

*Blanco v. Banco Indus. De Venezuela, S.A.,*
  997 F.2d 974 (2d Cir. 1993).......................................................................................1

*Cabiri v. Assasie-Gyimah,*
  921 F. Supp. 1189 (S.D.N.Y. 1996)...........................................................................2

*Cahill v. Arthur Andersen & Co.,*
  659 F. Supp. 1115 (S.D.N.Y. 1986)...........................................................................5

*Cameron v. Church,*
  253 F. Supp. 2d 611 (S.D.N.Y. 2003)........................................................................5

*Cavlam Bus. Ltd. v. Certain Underwriters at Lloyd's,*
  2009 WL 667272 (S.D.N.Y. Mar. 16, 2009) ............................................................1

*Cent. Bank, N.A. v. First Interstate Bank, N.A.,*
  511 U.S. 164 (1994)....................................................................................................6

*Chowdhury v. Worldtel Bangl. Holding,*
  588 F. Supp. 2d 375 (E.D.N.Y. 2008) .......................................................................7

*Cintron v. Atticus Bakery, LLC,*
  242 F. Supp. 3d 94 (D. Conn. 2017)...........................................................................2

*Daventree Ltd. v. Republic of Azer.,*
  349 F. Supp. 2d 736 (S.D.N.Y. 2004)........................................................................2

*De Masi v. Country Wide Home Loans*,
   481 F. App'x 644 (2d Cir. 2012) ............................................................5

*Fagioli S.P.A. v. GE*,
   2015 WL 3540848 (S.D.N.Y. June 5, 2015) ...........................................9

*Felson v. Miller*,
   674 F. Supp. 975 (E.D.N.Y. 1987) ..........................................................9

*Freidzon v. OAO Lukoil*,
   2015 WL 13021409 (S.D.N.Y. Mar. 12, 2015) .......................................2

*Gibbon v. Am. Univ. of Beirut*,
   1983 U.S. Dist. LEXIS 13401 (S.D.N.Y. Sept. 27, 1983)....................3, 4

*Graf von Spee v. Graf von Spee*,
   514 F. Supp. 2d 302 (D. Conn. 2007).....................................................1

*Halberstam v. Welch*,
   705 F.2d 472 (D.C. Cir. 1983) ................................................................6

*Hamid v. Price Waterhouse*,
   51 F.3d 1411 (9th Cir. 1995) ..................................................................7

*Harry v. Rodriguez*,
   2007 WL 3165763 (S.D.N.Y. Oct. 9, 2007) ...........................................5

*Henderson v. Metro. Bank & Trust Co.*,
   470 F. Supp. 2d 294 (S.D.N.Y. 2006)..................................................2, 4

*HSBC USA v. Prosegur Paraguay, S. A.*,
   2004 WL 2210283 (S.D.N.Y. Sept. 30, 2004).........................................2

*In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz*
   *of Ukraine*,
   311 F.3d 488 (2d Cir. 2002).....................................................................3

*Khulumani v. Barclay Nat'l Bank Ltd.*,
   504 F.3d 254 (2d Cir. 2007).....................................................................6

*Laker Airways v. British Airways*,
   182 F.3d 843 (11th Cir. 1999) .................................................................8

*Linde v. Arab Bank*,
   922 F. Supp. 2d 316 (E.D.N.Y. 2013) .....................................................4

*Linde v. Arab Bank, PLC*,
   16-2119-cv (L) (2d Cir. Feb. 9, 2018) .....................................................6

*Maharaj v. Bankamerica Corp.*,
1995 WL 688907 (S.D.N.Y. Nov. 16, 1995) ..................................................5

*Estate of Manook v. Research Triangle Inst.*,
759 F. Supp. 2d 674 (E.D.N.C. 2010) .......................................................7

*Martindale v. Gleasman*,
2008 WL 2627457 (W.D.N.Y. June 27, 2008) ............................................9

*Nat'l Coal. Gov't of Burma v. Unocal, Inc.*,
176 F.R.D. 329 (C.D. Cal. 1997) ..............................................................7

*Parex Bank v. Russ. Sav. Bank*,
116 F. Supp. 2d 415 (S.D.N.Y. 2000) ...........................................1, 2, 3, 4

*Estate of Parsons v. Palestinian Authority*,
715 F. Supp. 2d 27 (D.D.C. 2010) ............................................................4

*Patane v. Clark*,
508 F.3d 106 (2d Cir. 2007) ....................................................................10

*Pavlov v. Bank of N.Y. Co.*,
135 F. Supp. 2d 426 (S.D.N.Y. 2001) .......................................................3

*R. Prasad Indus. v. Flat Irons Envtl. Sols. Corp.*,
2013 WL 2217831 (D. Ariz. May 20, 2013) .............................................6

*Rasoulzadeh v. Associated Press*,
574 F. Supp. 854 (S.D.N.Y. 1983) ...........................................................2

*Rigroup LLC v. Trefonisco Mgmt.*,
949 F. Supp. 2d 546 (S.D.N.Y. 2013) .......................................................2

*Estate of Rodriquez v. Drummond Co.*,
256 F. Supp. 2d 1250 (N.D. Ala. 2003) ....................................................7

*Ruskay v. Jensen*,
342 F. Supp. 264 (S.D.N.Y. 1972) ...........................................................5

*In re Seadrill Ltd. Sec. Litig.*,
2016 WL 3461311 (S.D.N.Y. June 20, 2016) ..........................................11

*Sexual Minorities Uganda v. Lively*,
960 F. Supp. 2d 304 (D. Mass. 2013) .......................................................7

*Somerville House Mgmt. v. A&E Television Network*,
1993 WL 138736 (S.D.N.Y. Apr. 28, 1993) .............................................5

*Sosa v. Alvarez-Machain*,
  542 U.S. 692 (2004) ...............................................................................................7

*Soules v. Connecticut*,
  2018 WL 774000 (2d Cir. Feb. 8, 2018) ...........................................................1, 5

*Sussman v. Bank of Israel*,
  801 F. Supp. 1068 (S.D.N.Y. 1992) ..................................................................3, 4

*TJGEM LLC v. Rep. of Ghana*,
  26 F. Supp. 3d 1 (D.D.C. 2013) ............................................................................8

*Transunion Corp. v. PepsiCo*,
  640 F. Supp. 1211 (S.D.N.Y. 1986) .......................................................................4

*Turner v. Officers, Dirs. & Emps. of Mid Valley Bank*,
  712 F. Supp. 1489 (E.D. Wash. 1988) ...................................................................9

*Two Shields v. Wilkinson*,
  790 F.3d 791 (8th Cir. 2015) .................................................................................8

## Other Authorities

Rule 19 ...........................................................................................................8, 9, 10

# I.   *FORUM NON CONVENIENS* REQUIRES DISMISSAL.

Plaintiffs' attack on the legitimacy of the Lebanese courts is belied by their continued litigation of look-alike claims in Lebanon.  *See* Wakim Decl. ¶4.  The same set of alleged facts—the loss-causation mechanism of the alleged money-laundering scheme and the settlement payment to the United States—is at issue in the Lebanese actions, in addition to other alleged mismanagement.  El Kai Decl. I, ¶¶ 4-7.  The Forfeiture Action is not just "referenced in Plaintiffs' papers in the Lebanese Action," Wakim Decl. ¶ 3; it is part of the Lebanese court's rulings.  *See* El Kai Decl. II, ¶¶ 4-5, & *id.*, Exs. 1 & 2; *cf. Soules v. Connecticut*, 2018 WL 774000, at *2 (2d Cir. Feb. 8, 2018) (rejecting plaintiff's argument that two actions did not involve the same claim because he "merely mentioned" it in the first action).  It is irrelevant whether prior litigation warrants <u>judicial estoppel</u> of later challenges to the adequacy of a forum.  Opp'n 12, 17 (citing *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 141 (2d Cir. 2000)).  The key point is that "[i]t is at least anomalous" for Plaintiffs to pursue litigation in Lebanon and then argue to a U.S. court that the Lebanese courts are "biased, and corrupt as not to provide an adequate forum."  *Blanco v. Banco Indus. De Venezuela, S.A.*, 997 F.2d 974, 981 (2d Cir. 1993); *Parex Bank v. Russ. Sav. Bank*, 116 F. Supp. 2d 415, 425 (S.D.N.Y. 2000) ("It is notable that [plaintiff] did not find Russia to be an inadequate forum . . . when it [sued defendants in Moscow].").

The Lebanese Shareholder Action that was commenced and is still pursued by Plaintiffs provides, at a minimum, "a good indication of the . . . adequacy" of the Lebanese judicial system.[1]  *See Graf von Spee v. Graf von Spee*, 514 F. Supp. 2d 302, 314 (D. Conn. 2007) ("A good indication of the . . . adequacy of the German judicial system is . . . [that] plaintiffs have commenced multiple court proceedings, resulting in fifteen written decisions . . . , which deal with these very issues, all of which have concluded in favor of defendants.").  Indeed, Plaintiffs were happy to litigate in Lebanon "until

---

[1] *See also Cavlam Bus. Ltd. v. Certain Underwriters at Lloyd's*, 2009 WL 667272, at *2, *6, *9 (S.D.N.Y. Mar. 16, 2009) (that a related suit was pending in London was a reason for dismissal).

the results were not to their liking." *Base Metal Trading SA v. Russ. Aluminum*, 253 F. Supp. 2d 681, 707 (S.D.N.Y. 2003), *aff'd*, 98 F. App'x 47 (2d Cir. 2004). It was only then that Plaintiffs concocted the notion that Lebanon was not "an adequate forum and filed suit in [the] United States." *Parex Bank*, 116 F. Supp. 2d at 425. A "tactical maneuver" like this is not owed any deference. *Base Metal Trading*, 253 F. Supp. 2d at 698.

Further, arguments that "'[t]he alternative forum is too corrupt to be adequate' [do] not enjoy [an] impressive track record." *Henderson v. Metro. Bank & Trust Co.*, 470 F. Supp. 2d 294, 303 (S.D.N.Y. 2006) (citations omitted), *mot. for recons. granted on new evidence*, 502 F. Supp. 2d 372, 380 (S.D.N.Y. 2007).[2] The reason for this is simple: U.S. courts "are reluctant 'to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation.'" *Id.* As for Plaintiffs' focus on Hezbollah and its supposed domination of Lebanon's court system, those arguments are both theoretical and misplaced. Hezbollah is not a defendant here or in Lebanon, and Defendants are not its alter egos.[3] This renders irrelevant Plaintiffs' cited cases on <u>a defendant's</u> ability to influence local courts.[4] Further, even when it is the <u>defendant</u> who allegedly has influence over local courts,

---

[2] *See also Freidzon v. OAO Lukoil*, 2015 WL 13021409, at *6 (S.D.N.Y. Mar. 12, 2015) (rejecting argument that plaintiff could only receive a fair trial in the United States despite his claims about the unfairness of the Russian judicial system); *BFI Group Divino Corp. v. JSC Russ. Aluminum*, 298 F. App'x 87, 91 (2d Cir. 2008) ("Where a plaintiff rebuts the defendant's claim of adequacy of the forum with charges that the foreign judicial process is biased or corrupt, this Court and our district courts are reluctant to agree." (citations omitted)); *Rigroup LLC v. Trefonisco Mgmt.*, 949 F. Supp. 2d 546, 555 (S.D.N.Y. 2013) (collecting cases) (holding that Russia was an adequate alternate forum despite plaintiff's conclusory and unsupported allegations of judicial corruption, intimidation, and bias).

[3] Otherwise, the aiding-and-abetting claim would be illogical because a principal cannot aid and abet itself. *See Cintron v. Atticus Bakery, LLC*, 242 F. Supp. 3d 94, 107 (D. Conn. 2017).

[4] *See, e.g., Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736, 756 (S.D.N.Y. 2004) (discussing "the extent of control wielded by the executive branch of the Azeri government—a party to this litigation—over the Azeri courts"); *HSBC USA v. Prosegur Paraguay, S.A.*, 2004 WL 2210283, at *3 (S.D.N.Y. Sept. 30, 2004) ("In addition to the violence . . . directed at . . . witnesses, HSBC would likely be unable to obtain basic justice in Paraguay [because the robbery at issue] was allegedly 'coordinated and supported by . . . []governmental, military and police officials.'"). *In re Assicurazioni Generali S.P.A. Holocaust Ins. Litig.*, 228 F. Supp. 2d 348, 353, 355 (S.D.N.Y. 2002) is both irrelevant and inapposite. The proposition for which Plaintiffs cite it comes from the Court's reasoning with regard to a motion to dismiss on *forum non conveniens* grounds in favor of the International Commission on Holocaust Era Insurance Claims, "a private, nongovernmental forum that [defendants] both created and control." *Cabiri v. Assasie-Gyimah*, 921 F. Supp. 1189, 1198 (S.D.N.Y. 1996) is also inapposite given that Plaintiffs are litigating in Lebanon. And Ghana was not an adequate alternative forum in *Cabiri* because "it would be unsafe for [plaintiff] to travel to Ghana to institute an action there," especially considering his political asylum status in the United States based on a "well-founded fear of persecution." *Id.; see also Rasoulzadeh v. Associated Press*, 574 F.

U.S. courts are reluctant to find the alternative forum inadequate on that ground.  *See, e.g., Sussman v. Bank of Israel*, 801 F. Supp. 1068, 1078 (S.D.N.Y. 1992) (rejecting argument that plaintiffs cannot obtain a fair hearing in Israel because they make serious charges against Israeli officials), *aff'd per curiam*, 990 F.2d 71 (2d Cir. 1993); *BFI Group Divino Corp.*, 298 F. App'x at 91 ("[T]his Court will not presume judicial bias . . . when the defendant is a state-owned entity.").

Unconvincingly, Plaintiffs try to distinguish this case from "common civil matters," in which Lebanon was held to be an adequate alternative forum, but which had "no connection to politics or to Hezbollah terrorism."  Opp'n 13.  Despite Plaintiffs' sensational rhetoric, this case is simply about alleged mismanagement of a bank, as confirmed by Plaintiffs' now-abandoned RICO claims and their common law claims.  In any event, the law does not give special treatment to high-profile or politically-charged cases.  *See Pavlov v. Bank of N.Y. Co.*, 135 F. Supp. 2d 426, 433 (S.D.N.Y. 2001) (rejecting the argument that "the Russian legal system is corrupt and riddled with political influence, <u>characteristics that allegedly would be at their worst given the political sensitivity of the subject matter of this case</u>") (emphasis added), *vacated on other grounds*, 25 F. App'x 70 (2d Cir. 2002).[5]  Indeed, courts routinely reject judicial-bias arguments in 'political' cases.  *See, e.g., In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002) (affirming dismissal despite plaintiffs' claims that forum was inadequate because of corruption and state ownership of assets at issue); *Parex Bank*, 116 F. Supp. 2d at 425 (rejecting argument that Russia is not an adequate forum

---

Supp. 854, 861 (S.D.N.Y. 1983) ("I consider that if the plaintiffs returned to Iran to prosecute this claim, they would probably be shot.").

[5] The holding in *Gibbon v. Am. Univ. of Beirut* that Lebanon is an adequate alternative forum did not depend on the type of the dispute at issue.  1983 U.S. Dist. LEXIS 13401, at \*13 (S.D.N.Y. Sept. 27, 1983) ("Despite the unusual military and political conditions . . . in Lebanon, [plaintiff's] bare allegations cannot serve as a substitute for evidence sufficient to rebut [defendant's] prima facie showing that an adequate alternative forum does exist.").

for a Latvian bank suing the Central Bank of Russia despite "the politically tumultuous . . . relationship

between . . . Latvia and Russia").[6]

Defendants' declarations establish that Lebanon is an adequate alternative forum because its

statutory and constitutional provisions "afford[] adequate procedural protections." *Parex Bank*, 116

F. Supp. 2d at 425.[7]  Plaintiffs fail to meet their burden of proof to show otherwise. *See Henderson*, 470

F. Supp. 2d at 303.  The conclusory allegations of Plaintiffs' experts do not establish the inadequacy

of Lebanon's judicial system.[8]  *Base Metal Trading*, 253 F. Supp. at 706.  Most tellingly, in their dogged

pursuit of the Lebanese Shareholder Action and in related Lebanese proceedings, *see* El Kai Decl. I,

¶ 4, Plaintiffs have never challenged the legitimacy or independence of the Lebanese courts, nor raised

their makeweight belated allegations of Hezbollah influence.  *Id.*, ¶ 9; El Kai Decl. II, ¶ 10.

In sum, Plaintiffs' choice of forum is owed no deference; Lebanon is an adequate alternative

forum; and dismissing this case for *forum non conveniens* would serve both private and public interests.

---

[6] *See also Transunion Corp. v. PepsiCo*, 640 F. Supp. 1211, 1219 (S.D.N.Y. 1986) ("political turmoil in a foreign country" is not a reason to deny motion to dismiss for *forum non conveniens*), *aff'd*, 811 F.2d 127 (2d Cir. 1987).

[7] Defendants in *Parex Bank*, like Defendants here, demonstrated that: "Institutional fairness of the [alternative forum] is ensured by a constitutionally mandated independent judiciary and numerous procedural protections under . . . the Civil Code . . . [T]hese safeguards include, *inter alia*, the presumption of equality of parties, . . . lifetime tenure for judges, and appellate review." *Id.* at 424.

[8] Dr. Levitt discusses Hezbollah at length, Levitt Decl., at 1-11, but says nothing about the procedural protections of Lebanon's court system.  *Contra* El-Khoury Decl. ¶¶ 7-16.  He then merely speculates: "[T]he notion that litigants in this case could get a fair hearing in Lebanon is unfounded." Levitt Decl. ¶ 21.  This type of conclusory testimony is insufficient to meet the Plaintiffs' burden of proof.  *Base Metal Trading*, 253 F. Supp. 2d at 706 (finding insufficient testimony that "plaintiffs cannot expect a fair and impartial resolution of their claims in [Russia]").  Dr. Rubin's testimony is likewise speculative.  *See* Rubin Decl., ¶¶ 19-20 (speculating that "Hezbollah <u>could</u> leverage its connections . . . to sidetrack any court hearing" and that Lebanese judges "<u>may</u> be susceptible to influence") (emphasis added).  *See Gibbon*, 1983 U.S. Dist. LEXIS 13401, at *13 (without evidence, plaintiff's statements regarding Lebanese courts are "speculation or innuendo"); *see also Linde v. Arab Bank*, 922 F. Supp. 2d 316, 325 (E.D.N.Y. 2013) (finding inadmissible Dr. Levitt's statements "about the state of mind of an entity"); *Estate of Parsons v. Palestinian Authority*, 715 F. Supp. 2d 27, 32-33 (D.D.C. 2010) (Dr. Levitt's testimony about who is responsible for an attack was "speculation and conjecture"), *aff'd in part, rev'd in part on other grounds*, 651 F.3d 118, 397 U.S. App. D.C. 236 (D.C. Cir. 2011); *cf. Sussman*, 801 F. Supp. at 1077-78 ("[P]laintiffs' preference for an American court cannot be indulged [based on] an American judge's speculation that his Israeli colleagues would violate their oaths of office" just because an expert said Israeli courts have a "negative predisposition" against claims that name government officials as defendants).  Finally, U.S. Treasury's Assistant Secretary Marshall Billingslea has recently "highlighted the close partnership [between] U.S. government [and] the Central Bank of Lebanon" and "reiterated the U.S. commitment to work with Lebanon to protect and promote Lebanon's financial system . . . ."  U.S. Embassy in Lebanon, *Assistant Secretary of the Treasury for Terrorist Financing Marshall Billingslea Visits Lebanon*, Jan. 23, 2018, https://lb.usembassy.gov/assistant-secretary-treasury-terrorist-financing-marshall-billingslea-visits-lebanon/.

That this case contains an ATS count makes no difference, both as a matter of law[9] and because Plaintiffs' ATS claim is in substance a claim for mismanagement of a Lebanese bank.

## II.     THE LEBANESE PROCEEDINGS PRECLUDE ALL PLAINTIFFS' CLAIMS.

Plaintiffs miss the critical point that *res judicata* bars re-litigation if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Soules*, 2018 WL 774000, at *2.  The third, same-claim element is met when the two suits involve the same "nucleus of operative facts," that is "the underlying facts are related in time, space, origin, or motivation," "form a convenient trial unit," and "their treatment as a unit conforms to the parties' expectations." *Id.*  As discussed above, the same nucleus of operative alleged facts is at issue here as in the Lebanese Shareholder Action.  El Kai Decl. I, ¶ 17; El Kai Decl. II, ¶¶ 3-6.  Further, Mr. Safa is a privy to other defendants because Plaintiffs "were fully aware of the [alleged] role played by" him when they filed the Lebanese Shareholder Action, and his alleged participation in the alleged wrongs "was not independent of that of the other defendants." *Ruskay v. Jensen*, 342 F. Supp. 264, 271 (S.D.N.Y. Mar. 25, 1972).  That Plaintiffs chose not to name Mr. Safa in the Lebanese Shareholder Action but added him here does not entitle them to a second day in court. *Cahill v. Arthur Andersen & Co.*, 659 F. Supp. 1115, 1123 (S.D.N.Y. 1986).[10]  Thus, *res judicata* bars this action. *De Masi v. Country Wide Home Loans*, 481 F. App'x 644, 646 (2d Cir. 2012).

---

[9] *Aguinda v. Texaco, Inc.*, 142 F. Supp. 2d 534, 554 (S.D.N.Y. 2001) (holding that *forum non conveniens* "doctrine applies in undiminished fashion to ATCA suits"), *aff'd on other grounds*, 303 F.3d 470 (2d Cir. 2002); *Advantage Int'l Mgmt. v. Martinez*, 1994 WL 482114, at *4 (S.D.N.Y. Sept. 2, 1994) ("All that is required in this Circuit is that the parties and issues be sufficiently similar so that when a judgment issues from the foreign court, *res judicata* will apply.").

[10] *See also Cameron v. Church*, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003) ("*Res judicata* . . . preclude[s] claims, rather than particular configurations of parties."); *Somerville House Mgmt. v. A&E Television Network*, 1993 WL 138736, at *2 (S.D.N.Y. Apr. 28, 1993) ("newly-added defendants" could have been defendants in the earlier action); *Harry v. Rodriguez*, 2007 WL 3165763, at *2 (S.D.N.Y. Oct. 9, 2007) ("[A]ddition of . . . defendants does not save . . . complaint because '[one] may not avoid the preclusion . . . merely because [of] a larger number of . . . defendants.'") (citation omitted), *aff'd*, 337 F. App'x 17 (2d Cir. 2009); *Maharaj v. Bankamerica Corp.*, 1995 WL 688907, at *4-6 (S.D.N.Y. Nov. 16, 1995) (same).

International comity leads to the same result, independent of *res judicata*, because the Lebanese Shareholder Action involves the same underlying set of alleged facts, and would be treated by the Lebanese courts as an antecedent action involving the "same subject matter" as this action, thus precluding recognition in Lebanon of any judgment in this action.  *See* El Kai Decl. I, ¶ 17; El Kai Decl. II, ¶¶ 3-10; Defs.' Mem. (Dkt. #64) 11-13; *see also Base Metal Trading*, 253 F. Supp. 2d at 709 ("it would be a particular affront to notions of international comity for the Court effectively to ignore or overrule the findings" of the foreign court).

## III.    PLAINTIFFS' ATS CLAIM FAILS AS A MATTER OF LAW.

Plaintiffs cannot salvage their ATS "aiding and abetting" claim for at least three critical reasons.  First, an aiding and abetting claim requires that the plaintiff allege harm from the underlying tort of the principal wrongdoer—here, Hezbollah.  *See Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254, 287 (2d Cir. 2007) (citing Restatement 2d Torts § 876) (aiding and abetting liability available in ATS cases "[f]or harm resulting to a third person from the tortious conduct of another") (emphasis added); *Halberstam v. Welch*, 705 F.2d 472, 478 (D.C. Cir. 1983) ("[A]n aider-abettor is liable for damages caused by the main perpetrator.") (emphasis added).[11]  Put differently, "[a] claim of aiding and abetting tortious conduct necessarily requires that the primary tortfeasor must commit a tort that causes injury to the plaintiff."  *R. Prasad Indus. v. Flat Irons Envtl. Sols. Corp.*, 2013 WL 2217831, at *8 (D. Ariz. May 20, 2013) (citations omitted).  Plaintiffs concede that they do not allege harm from a Hezbollah attack.  Opp'n 5.

Second, Article III standing, in the sense of having a concrete injury (*see* Opp'n 5-7), does not leapfrog the ATS statutory question of whether Plaintiffs have alleged injury from an underlying violation of international law.  *See* Defs.' Mem. 15-17.  Plaintiffs allege harm from Defendants' alleged

---

[11] The Supreme Court has described *Halberstam* as "a comprehensive opinion on [aiding and abetting]," *see Cent. Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 181 (1994), and the Second Circuit has adopted its reasoning in the ATS context.  *See, e.g., Linde v. Arab Bank, PLC*, 16-2119-cv (L), at 30 (2d Cir. Feb. 9, 2018).

mismanagement of LCB, not from alleged international law violations of the primary tortfeasor, Hezbollah. *See* Opp'n 1 (suit is based on Defendants "abusing their control of [LCB]"). This alleged business tort cannot support an ATS claim. *See* Defs.' Mem. 15-18; *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1418 (9th Cir. 1995) ("The wrongs alleged are in substance fraud, breach of fiduciary duty and misappropriation of funds . . . [a]lthough the conduct was international in scope, no violation of . . . international law is claimed.").[12]

Third, because Plaintiffs allege business torts by Defendants that post-date the only international law violation alleged with some specificity, they do not carry their burden to plead with sufficient facts a violation of international law that is causally connected to Defendants' alleged acts. *See* Defs.' Mem. 17-18; *see also Estate of Manook v. Research Triangle Inst.*, 759 F. Supp. 2d 674, 680-81 (E.D.N.C. 2010) (dismissing ATS claim for failure to plead requisite facts, noting that plaintiffs' mere "use of the term 'war crime' . . . does not convert the [alleged] conduct into a war crime actionable under the ATS").[13]  Plaintiffs concede that their sole specific allegation regarding Hezbollah attacks, the bombings in July and August 2006, is not causally or chronologically related to any alleged acts of the Defendants. *See* Opp'n 8.  No further amendment could overcome this substantive failing.

---

[12] Unlike here, in Plaintiffs' cited cases, a plaintiff-entity incurred financial losses to protect itself, or its members, from crimes against humanity. *See Sexual Minorities Uganda v. Lively*, 960 F. Supp. 2d 304, 324-25 (D. Mass. 2013) (financial damages allegedly incurred because "Plaintiff's operations, conferences, and staff have allegedly been targeted as part of the persecutory campaign"); *Nat'l Coal. Gov't of Burma v. Unocal, Inc.*, 176 F.R.D. 329, 340-42 (C.D. Cal. 1997) (financial damages allegedly incurred by plaintiff-entity because it had to divert funds from programs to protect members from harm caused by alleged violations of international law); *Estate of Rodriquez v. Drummond Co.*, 256 F. Supp. 2d 1250, 1258-60 (N.D. Ala. 2003) (financial damages allegedly incurred by plaintiff-union because an attack against union leaders forced "other members and leaders . . . to go into hiding, has threatened its viability, and has forced it to expend scarce resources in providing security and protection to its members"). These cases only highlight Defendants' point that an actionable ATS claim requires that the plaintiff allege an injury directly connected to the underlying violation of international law.

[13] In *Sosa v. Alvarez-Machain*, 542 U.S. 692, 729 (2004), the Supreme Court directed lower courts to exercise "vigilant doorkeeping" in ATS cases, leading courts to apply a heightened pleading standard. *See, e.g., Chowdhury v. Worldtel Bangl. Holding*, 588 F. Supp. 2d 375, 379 (E.D.N.Y. 2008) (ATS claims are one of the "contexts" referred to in *Iqbal* "where some additional factual amplification will often be necessary").

IV.  **PLAINTIFFS' CLAIMS FAIL BECAUSE THE CENTRAL BANK OF LEBANON AND SGBL ARE ABSENT, INDISPENSABLE PARTIES.**

The Central Bank of Lebanon is an indispensable party because Plaintiffs allege that the Central Bank facilitated Defendants' alleged mismanagement of LCB and, further, that the Lebanese courts cannot provide an adequate alternative forum because of the Central Bank's complicity in Defendants' alleged business torts.  *See* FAC, ¶¶ 77-89; Opp'n 21-22.  This Court thus will be obliged to make findings on those issues, and that circumstance alone gives the Central Bank a stake in the outcome here, even though Plaintiffs do not seek to impose financial liability on the Central Bank. *See* Defs.' Mem. 13-14; *see also TJGEM LLC v. Rep. of Ghana*, 26 F. Supp. 3d 1, 12 (D.D.C. 2013) (cited at Opp'n 21-22) (holding that an absent sovereign is a required party under Rule 19 when plaintiff alleged the sovereign had engaged in corrupt acts with defendant, which would oblige the fact-finder to evaluate the propriety of the sovereign's acts); *Two Shields v. Wilkinson*, 790 F.3d 791, 797 (8th Cir. 2015) (government was a required party under Rule 19 because its "interest in the administration, enforcement, and interpretation of its laws and regulations" was at issue in the case); *Laker Airways v. British Airways*, 182 F.3d 843, 848 (11th Cir. 1999) (an absent party is a required party under Rule 19 when it "emerges as an active participant in the allegations . . . that are critical to the disposition of the important issues in the litigation").

Separately, SGBL also is an indispensable party because it acquired from LCB all LCB's causes of action, which necessarily included claims for mismanagement or other business torts against LCB's officers and directors.  *See* Defs.' Mem. 14-15, 18-19; El Kai Decl. I, ¶¶ 15-16; El Kai Decl. II, ¶ 11. Indeed, Plaintiffs prevailed before the Court of First Instance of Beirut on their contention that SGBL "should be implicated in [the Lebanese Shareholder Action] because it has replaced [LCB] in all its rights and duties toward third parties . . . ."  *See* Berger Decl., Ex. 1 (Dkt. #67-1), at 23.  Through Section 2.2 of the Sale and Purchase Agreement ("SPA") (*see* El Kai Decl. I, ¶ 15), LCB sold to SGBL assets that were defined in the broadest terms imaginable, which necessarily includes unasserted legal

8

claims. *See, e.g.*, *Turner v. Officers, Dirs. & Emps. of Mid Valley Bank*, 712 F. Supp. 1489, 1495-96 (E.D.

Wash. 1988) (interpreting asset purchase agreement with broad language like the SPA to have

transferred right to future litigation claims to acquiring bank); *see also* Defs.' Mot. 18-19 (citing cases).

The Court may consider the SPA in determining whether SGBL is an indispensable party. *See Fagioli

S.p.A. v. GE*, 2015 WL 3540848, at *2-4 (S.D.N.Y. June 5, 2015) (holding that a court could properly

rely on materials outside of pleadings in granting a motion to dismiss under Rule 19 and citing cases).

## V.     PLAINTIFFS' DERIVATIVE CLAIMS FAIL AS A MATTER OF LAW.

Plaintiffs have not alleged that they acquired the "mismanagement" claim from SGBL or that

they made demand on SGBL to pursue that claim. *See also* El Kai Decl. II, ¶ 11.  Further, it is irrelevant

whether SGBL received any distribution in the Civil Forfeiture Action (Opp'n 18); the relevant issue

is whether SGBL owns a separate asset—a claim against Defendants for alleged mismanagement of

LCB.  Plaintiffs thus lack the legal capacity under Lebanese law to sue for **LCB's** losses due to

Defendant's alleged mismanagement.  *See* El Kai Decl. II, ¶ 11; *Felson v. Miller*, 674 F. Supp. 975, 977

(E.D.N.Y. 1987) (foreign law of plaintiff's domicile govern capacity to sue).

Even assuming that, under Lebanese law, Plaintiffs could pursue a "derivative" version of that

claim without demand on SGBL, Plaintiffs far exceed the Lebanese law parameters on "derivative"

claims by seeking to recover **all** of LCB's alleged damages, rather than alleged damage solely to the

value of their minority shareholdings in LCB.  *Id.*  Regardless, Plaintiffs waived even that derivative

claim, because they executed a claim-waiver agreement, and because the Lebanese court held that

Plaintiffs were actively involved in the very same management decisions that they now challenge.  *See*

Defs.' Mem. 19.  The Court may consider Plaintiffs' waiver agreement because it demonstrates that

Plaintiffs as shareholders gave "their clear approval and agreement with the main elements" of the

actions that they now challenge as mismanagement.  *See Martindale v. Gleasman*, 2008 WL 2627457, at

*5-6 (W.D.N.Y. June 27, 2008) (granting motion to dismiss derivative suit based on waiver by plaintiff-

shareholders). The waiver agreement forecloses Plaintiffs' strained "capacity" argument that they may sue Defendants in their capacity as officers or directors of LCB, rather than as shareholders. *See* Opp'n 24-25. The key point is that the waiver agreement precludes <u>Plaintiffs</u> from suing in <u>their capacity as shareholders</u>, as they purport to do. *See* Defs.' Mem. 19; El Kai Decl. I, Ex. 3, at 38. This Court may consider the full array of background documents establishing waiver, including the Lebanese court's findings, because they are among the "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007).

Relatedly, Plaintiffs' common law derivative and direct claims are time-barred, as effectively conceded by their perfunctory opposition. Opp'n 25. The fulcrum of Plaintiffs' timeliness argument is that their claims did not accrue until conclusion of the Civil Forfeiture Action in 2013. *Id.* This is implausible given their own allegations showing: (1) LCB, on whose behalf Plaintiffs purport to sue, necessarily would have "discovered" any injury resulting from wire transfers at the time it made them, as early as 2006, *see* FAC ¶¶ 54, 56; (2) Abu Nahl had been an active member of the board of directors since June 28, 2007, Nest Group representatives held three board seats, and Nest Group member Sh. Nasser Bin Ali Bin Saud Al Thani had been appointed to the Audit Committee and attended Audit Committee meetings since at least June 2008, *see id.* ¶¶ 96, 105, 106, 109; and (3) Plaintiffs allegedly raised objections and concerns about compliance and internal controls starting in 2007, confirming they would have been on inquiry notice of any supposed wrongdoing at that time. *See id.* ¶ 98 ("Almost immediately after the transaction closed [], the Nest Group encountered difficulties" and there were "immediate red flags for the Nest Group."); *id.* ¶¶ 99-103. Notwithstanding these supposed "red flags" from 2006-2008, Plaintiffs waited until December 14, 2015 to file their original Complaint in this action. Plaintiffs' common law claims are therefore untimely. *See* Defs.' Mem. 20-23.[14]

---

[14] Finally, Plaintiffs failed to respond to Defendants' arguments that: (1) the Court should decline to exercise supplemental jurisdiction over the common law claims once it dismisses the ATS claim; (2) Plaintiffs' fraudulent inducement claim fails because it lacks the requisite particularity under Rule 9(b); and (3) the claims for abuse of control and corporate waste are

## CONCLUSION

For the foregoing reasons, and those set out in Defendants' opening brief and declarations,

Plaintiffs' First Amended Complaint should be dismissed with prejudice.

Dated: February 12, 2018          Respectfully submitted,
Washington, D.C.

                                  */s/ Mitchell R. Berger*
                                  Mitchell R. Berger (MB-4112)
                                  SQUIRE PATTON BOGGS (US) LLP
                                  2550 M Street, N.W.
                                  Washington, D.C. 20037
                                  Phone: 202-457-6000
                                  Fax:     202-457-6315

                                  *Attorneys for Defendants Georges Zard Abou Jaoude,*
                                  *Mohamad Hamdoun, and Ahmad Safa*

---

subsumed in the claim for breach of fiduciary duty.  *See* Defs.' Mem. 23-24.  These arguments therefore have been conceded in Defendants' favor.  *See In re Seadrill Ltd. Sec. Litig.*, 2016 WL 3461311, at *12 n. 2 (S.D.N.Y. June 20, 2016) (plaintiff "conceded by silence" arguments it failed to address in the opposition to the motion to dismiss).

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 12th day of February 2018, a true and correct copy of the foregoing Reply in Support of Defendants Georges Zard Abou Jaoude, Mohamad Hamdoun and Ahmad Safa's Motion to Dismiss was filed electronically and is available for viewing and downloading from the ECF system, and was also served by first class mail on:

Anthony Herman
Christian J. Pistilli
Andrew E. Siegel
Dennis B. Auerbach
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW Washington, D.C. 20001
Tel: (202) 662-6000
Email: aherman@cov.com
        cpistilli@cov.com
        asiegel@cov.com
        dauerbach@cov.com

*Attorneys for Plaintiffs*

                                    */s/ Mitchell R. Berger*
                                    Mitchell R. Berger