# EXHIBIT 1B

*MILAD M. NOUJEIM – CERTIFIED TRANSLATOR*
*Translation – Consulting – Legalization*
*Beirut – Damascus Road – Near Justice Palace – Joe Tabet Building*
*Tel / Fax: 01/380912/13 ; Mobile : 03/356045*
*E-mail: njeimtranslation@hotmail.com*

LEGAL TRANSLATION

---

Richard Chemali
Honorary dean of the Faculty of Law and
Political Sciences at Saint-Joseph University
Attorney-at-law

Antoine Merheb
Attorney-at-law

Honorable Tribunal of First Instance at Beirut
Division ruling in commercial affairs
(Chamber of President Georges Harb)
Answering plea
With additional claims

Case Number: 147/2011
Hearing date: April 03, 2013

Beirut, April 03, 2013

**The plaintiffs:**

1- Ghazi Kamel ABOU NAHL
2- Sheikh Nasser Ali Saoud Thani AL THANI
3- Jamal Kamel ABOU NAHL
4- Hamad Ghazi ABOU NAHL
5- Trust Compass Insurance Company S.A.L.
6- Nest Investments Holding Lebanon S.A.L.
7- Trust International Insurance & Reinsurance Company B.S.C. Trust Re
8- Qatari General Insurance and Reinsurance Company S.A.Q
9- Jordanian Expatriates Invest. Holding Co.
10- Trust International Insurance Company (Cyprus) Limited

Represented by their attorneys-at-law the Dean Richard Chemali and Lawyer Antoine Merheb



**Petitioners of introduction in the hearings:**

- Kamel Ghazi ABOU NAHL
- Fadi Ghazi ABOU NAHL

Represented by their attorneys-at-law the Dean Richard Chemali and Lawyer Antoine Merheb by virtue of two powers of attorney copy of which herewith enclosed (Documents N° 37 and 38)

**Against the defendants:**

1- Mr. Georges Zard ABOU JAOUDE
   In his personal capacity and as former Chairman of the Board of Directors – General Manager of the Lebanese Canadian Bank S.A.L. and of the company LCB Investments (Holding) S.A.L and as one of the liquidators of Lebanese Canadian Bank S.A.L. (under liquidation)

2- Mr. Mohammad HAMDOUN
   In his personal capacity and as former member of the board of Directors and General Manager of the Lebanese Canadian Bank S.A.L. and member of the Board of Directors of the company LCB Investments (Holding) S.A.L and as one of the liquidators of Lebanese Canadian Bank S.A.L. (under liquidation)

3- The Lebanese Canadian Bank S.A.L. (under liquidation)

All of them are represented by their attorney-at-law Mr. Maroun ZEIN.

**Third person to be introduced in the hearings**

Société Général de Banque au Liban S.A.L. (SGBL)
Head office located at Sahnawi Building, Saloumi Roundabout, Sin El-Fil



2

*TRANSLATION of the highlighted segments in pages 3 and 4*

**In the recent facts**

Before replying to the first answering plea of the defendants, it is necessary to draw the attention of your honorable tribunal to the following facts that most of them happened after the date of presenting the present action on May 26, 2011:

1- We have mentioned in clause 13 of the Facts section of our writ of summons to the decision of the US Treasury issued in the beginning of February 2011, which accused the Bank, its General Administration and its subsidiary companies of Money Laundering.

2- As the banks reputation is more important than their share capitals, immediately upon publishing the decision of the US Treasury, a large number of the bank clients and depositors rushed to close their accounts and withdraw their deposits. Furthermore the correspondent banks refused to continue their dealing with the bank, which led to its activity suspension.

This was also ascertained by the auditors in their report of May 09, 2011 that was submitted to the members of the board of directors and shareholders of the bank.

It has been mentioned textually under the clause of "Significant matter Note" the following:
*"In addition to the content of the clarification N° 2 on the financial statements we mention the following:*
*"On February 10, 2011, the US Treasury Department has considered that "Lebanese Canadian Bank S.A.L. and its subsidiary companies as "financial establishment initially involved in Money Laundering "pursuant to Section 311 of USA Patriot ACT. Immediately after that*



3

> "the correspondent banks outside Lebanon suspended their dealing with "the Bank and the activities of the Bank were limited since that date to "bank formalities inside Lebanon and in very limited manner with "some correspondents abroad. In result, the bank operations were very "restricted with the correspondents and a very large number of the "depositors rushed intensively to withdraw their saved amounts "particularly during the beginning days that follow the announcement "of the USA Treasury Ministry. Consequently, the deposits of the bank "were decreased of about 1,671 billion Lebanese Pounds (equivalent to "1.1 billion US Dollars) up to March 31, 2011 representing around "21% of the whole bank deposits and a decrease of about 56% of "borrowing amounts from the correspondent banks, the value of which "were paid from the available liquidity of the Bank in addition to the "loans against the guarantee of the Lebanese Treasury Bonds from "Bank of Lebanon up to the amount of 400 billion Lebanese Pounds "and 300 million US Dollars on March 31, 2011"

(Enclosed copy of page 4 of the report of Deloitte on the bank accounts of the financial year 2010 – Document n° 39)

3- Seen that compulsory suspension, it becomes clear to everybody that the bank is going to close-up, dissolution, liquidation and sale of its assets to another bank.

4- Thanks to the efforts of the Governor of Bank of Lebanon, who was first of all concerned of sheltering the bank sector from dire consequence crisis, some Lebanese banks (including the bank to be introduced in the hearings, Société Générale de Banque au Liban (SGBL) have submitted offers to buy all the assets and rights of the Bank taking at their own charges all its liabilities and commitments, pursuant to the provisions of article 10 of the promulgated law on January 04, 1993 seeking to facilitate the merge of banks.



4

The article 10 mentioned above stipulates that: *The provisions of the present law shall apply on the bank that purchases all the assets and rights of another bank, which desires to liquidate its business and radiate its name from the list of banks. The purchasing bank shall take at its own charges all the liabilities and commitments of the said bank"*

5- Upon reviewing the offers, the General Administration has chosen SGBL submitted offer of merging the bank pursuant to the provisions of article 10 mentioned above against a lump sum of 580 million US Dollars, 430 million US Dollars of which will be paid in cash unconditionally to the shareholders within thirty-day period from the merging executing date and the remaining balance of 150 million US Dollars upon ending the auditing of the accounts by Ernst & Young.

6- On March 03, 2011 the Bank Board of Directors, including the members of the Group has adopted the approval resolution of such order and entrusted the first defendant jointly with the second defendant to implement the contents of the offer.

(Enclosed copy of the minutes of the meeting of the Bank Board of Directors held on March 03, 2011 – Document n° 40)

7- So, the first defendant served on March 08, 2011 a letter to Mr. Antoine Sahnawi, the chairman of the Board of Directors of SGBL informing him of the approval of the Board of Directors of the SGBL offer.

(Enclosed copy of the letter of the first defendant served on March 08, 2011 to Mr. Antoun Sahnawi – Document n° 41)

*TRANSLATION of the highlighted segment in page 12*

25- In addition to the damages suffered by the members of the Group due to the decrease of the shareholders' rights and to the Bank activity suspension and to its dissolution in result of the US Treasury Decision, thus some members of the Group have suffered personal huge material and moral damages because of the liaison of their names with the attribution of Money Laundering accusations by the US Treasury to the Bank administration.

*This section was intentionally left blank*

6

*TRANSLATION of the highlighted segments in pages 36 and 37*

3. **Concerning Money Laundering:**

The most important decrease occurred to the rights of the shareholders is the one resulting from the US Treasury decision that has accused the Bank General Administration of facilitating the money laundering operations.

Regardless the trueness or not of such decision [How much the group hopes and wishes that the general administration will be innocent thereof], such accusation has in fact led to the suspension of the bank business and enforced it to assign its assets and liabilities to SGBL against a sum not exceeding 250 million US Dollars as we have demonstrated in clause 21 here above of the recent Facts Section and subsequent.

In spite of its denial of the accusation of the US Treasury Department, the defendants have acknowledged that the procedures that have led to the position of the US Treasury "have been based on the fact that the illicit money laundering offences are generated from the drugs trade made by persons who have abused the mechanism of the Bank business. They have used the Bank to pass their criminal acts. This has caused huge damages to the Lebanese Canadian Bank and its administration and its shareholders". This is literally mentioned in page 5 of the complaint filed by the defendants to the Public Prosecutor of Cassation through their attorney-at-law Sheikh Boutros Harb.

Such complaint added that such **"question requires the inquiry to determine the actors' identity, to refer them to the tribunals pursuant to the following legal provisions"**.

But unfortunately, supposing that the first and second defendants are innocent of the offence the US Treasury accuses them, which the group hopes and wishes, it remains that they are civil responsible of their failure in controlling



7

the performance of the directors and employees of the bank that are all of them recruited by the General administration and who were working under their supervision and for their account, with the emphasis that the first defendant was the head of the anti-money laundering committee and the second defendant was a member.

==================================================

Literal translation of the Arabic highlighted segments herewith enclosed
The certified translator Milad NOUJEIM – Expert N° 212 – Official Gazette N°5 of 29/01/2011
Beirut, February 08, 2018

**MILAD M. NOUJEIM – CERTIFIED TRANSLATOR**
*Translation – Consulting – Legalization*
Beirut – Damascus Road – Near Justice Palace – Joe Tabet Building
Tel / Fax: 01/380912/13 ; Mobile : 03/356045
E-mail: njeimtranslation@hotmail.com

**LEGAL TRANSLATION**

---

Richard Chemali
Honorary dean of the Faculty of Law and
Political Sciences at Saint-Joseph University
Attorney-at-law

Antoine Merheb
Attorney-at-law

Honorable Tribunal of First Instance at Beirut
Division ruling in commercial affairs
(Chamber of President Georges Harb)
2nd answering plea

Case Number: 147/2011
Hearing date: January 08, 2014

Beirut, January 07, 2014

**The plaintiffs:**

1- Ghazi Kamel ABOU NAHL
2- Sheikh Nasser Ali Saoud Thani AL THANI
3- Jamal Kamel ABOU NAHL
4- Hamad Ghazi ABOU NAHL
5- Trust Compass Insurance Company S.A.L.
6- Nest Investments Holding Lebanon S.A.L.
7- Trust International Insurance & Reinsurance Company B.S.C. Trust Re
8- Qatari General Insurance and Reinsurance Company S.A.Q
9- Jordanian Expatriates Invest. Holding Co.
10- Trust International Insurance Company (Cyprus) Limited

**Petitioners of introduction in the hearings:**

- Kamel Ghazi ABOU NAHL
- Fadi Ghazi ABOU NAHL

*TRANSLATION of the highlighted segment in page 4*

And without the mistakes of the General Administration, the bank would not have been forced to enter into settlement with the US Treasury against a huge penalty of 102 million US Dollars that has been deducted from the price and thus from the liquidity.

The astonishing matter is that the defendants consider that they have realized great meritorious work because the US treasury has released, upon settling the penalty mentioned above, the sum of 150 million US Dollars that it has seized as guarantee of any amount to be judged against the defendant party.

*This section was intentionally left blank*

3



**TRANSLATION of the highlighted segments in pages 5 and 6**

3. The defendants declare that the obtained benefit from the settlement made with the US Treasury is that the accusations of this latter were not based in reality on material evidences that may justify such condemnation, as if the matter was otherwise it would not be conceivable that the US Administration proceeds to enter into negotiations with a bank proven involved in money laundering generated from the trade of drugs to support terrorist organizations. They further add that "upon concluding the settlement and settling the lump sum amount of 102 million US Dollars [how much is petty and meager such amount!!] The Tribunal at New York has rendered a decision ordering the recordation of the settlement conditions including the prosecution disclaimer at first against the administration of the Bank and its shareholders and the confirmation that it will not refer in the future to such point, which may be considered as a final discharge to the administration and to all the shareholders".

In confirmation of their declaration, the defendants produced under document N° 3 copy of New York tribunal decision in English language without translating it.

However,

- The defendants did not demonstrate from which recital or segment of the decision of the tribunal of New York it has deducted the "prosecution disclaimer at first against the administration of the Bank and its shareholders or the final discharge.

- The defendants have paid the sum of 102 million US Dollars so that the US Treasury stops pursuing them of the offense of money laundering. Thus such discharge has cost the Bank and the



4

shareholders the sum of 102 million US Dollars only, which is perhaps, considered by the defendants an insignificant amount.

- The settlement does not mean an acquittal of the General Administration, proof is the statement of Mrs. Michele Leonhart from US Drug Enforcement Administration upon the issue of the said decision taken as an argument by the defendants.

The statement of Mrs. Leonhart states textually:
*"This Settlement is significant and addresses the role the Lebanese Canadian Bank played in facilitating illicit money movement from the United States to West Africa to Hizbollah – controlled money laundering channels"*

And the conclusion of the US Attorney Preet Bharara who represented the US Treasury before the Tribunal of New York is entirely in contradiction of the conclusion of the defendants. He declared, upon the issue of the settlement decision, the following:

*"Today's settlement shows that banks laundering money for terrorists and narco-traffickers will face consequences for their actions, wherever they may be located".*

(Enclosed both statements mentioned above. Documents N° 86 and 87)

Where are we from the disclaimer of the prosecution …. And the final discharge???

4. Last but not least, we draw the attention of the honorable tribunal and the litigant party that the personal damages suffered by some persons of the group, because of the liaison of their names with the attribution of Money Laundering Accusations by the administration of the US Treasury to the Bank administration that are directly emanating from

5

the mistakes of the general administration and which are the core of the object of the present action.



*This section was intentionally left blank*

*TRANSLATION of the highlighted segments in pages 24 and 25*

**3.** **Concerning the Settlement with the American Authorities:**

The defendants evoke under the title of the "Money Laundering" object that the wishes of the plaintiffs are realized as, indeed, the accusation of the US Treasury has disappeared..."

It is true that the plaintiffs hopped that the accusation of the US Treasury would disappear, but of course, without burdening the Bank shareholders with a penalty of a very small amount of 102 million US Dollars!!!

If the allegations of the defendants were true that the US Treasury has acknowledged their innocence, we do not understand and nobody understands:

- Why they have charged the bank with the penalty amount of 102 million US Dollars?
  The expression of forfeiture that is mentioned in the decision means Loss of property due to a violation of law.

- And why the defendants did not persevere in their defense before the US tribunals till the end and confirm their innocence by a judicial judgment and imposed on the US Administration the payment of all the expenses and advocate fees?

  Noting that the US judicature condemns the plaintiff that did not confirm its prosecution to pay all the expenses suffered by the adverse party including the actual paid advocate fees that have exceeded in the case that concerns the Bank and the General Administration one million US Dollars.

7

In any case, the declarations of the defendants are not consistent with the statement of the US Attorney Preet Bharara who represented the US Treasury in the settlement. (Kindly refer to paragraph 3 of the "Comments on the recent facts" of the present plea).

Do the burdening of the Bank with the amount paid to the US Treasury and the expenses that exceeded one million US Dollars to defend the Bank before the US tribunals and the constraint of the bank to sell all its liabilities and assets and to suspend its activity not constitute damages suffered by the shareholders???

Finally it is necessary to draw the attention that supposing the allegation of the defendants that they are not responsible toward the US Treasury, is true, it remains that they still are civil responsible toward the shareholders and particularly toward the group of their failure that allowed the US Treasury to pursue them without any other bank, as we have demonstrated in pages 36 and 37 of our precedent plea on the basis of the reports issued by the Banks Control Committee and by the auditor that the defendants have entirely ignored in their last answer as they are incapable of answering.

===============================================

Literal translation of the Arabic highlighted segments herewith enclosed
The certified translator Milad NOUJEIM – Expert N° 212 – Official Gazette N°5 of 29/01/2011
Beirut, February 08, 2018

8