UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Ghazi Abu Nahl,** *et al.* | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civ. No. 1:15-cv-9755 (LGS)(JCF) |
| | ) |
| **Georges Zard Abou Jaoude,** *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**MEMORANDUM OF DEFENDANTS GEORGES ZARD ABOU JAOUDE, MOHAMAD HAMDOUN, AND AHMAD SAFA IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Mitchell R. Berger (MB-4112)
SQUIRE PATTON BOGGS (US) LLP
2550 M Street NW
Washington, D.C. 20037
Telephone: (202) 457 5601
Facsimile: (202) 457 6315
Email: mitchell.berger@squirepb.com

*Attorneys for Defendants Georges Zard Abou Jaoude, Mohamad Hamdoun, and Ahmad Safa*

## TABLE OF CONTENTS

          **Page**

INTRODUCTION ................................................................................................................... 1

I.     PLAINTIFFS ALLEGE A MONEY-LAUNDERING TORT NOT RECOGNIZED BY INTERNATIONAL LAW .................................................. 1

       A.     Plaintiffs' ATS Claim Is Preempted by Congressional Action ............................. 2

       B.     Money-Laundering to Finance Terrorism Is Not a Tort in Violation of International Law .................................................................................................. 3

       C.     Plaintiffs Fail to Satisfy the ATS's State-Action Requirement ............................ 7

       D.     *Almog* Does Not Support Recognizing an ATS Claim in This Case ..................... 8

II.    THE PROPOSED ATS CLAIM IS NOT ACTIONABLE BY LCB ................................. 9

CONCLUSION ........................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Almog v. Arab Bank, PLC*,
 471 F. Supp. 2d 257 (E.D.N.Y. 2007) ..................................................................................8, 9

*Barboza v. Drummond Co.*,
 2007 WL 8025825 (S.D. Fla. July 17, 2007)............................................................................6

*Bearing Fund LP v. PricewaterhouseCoopers LLP*,
 611 Fed. Appx. 34 (2d Cir. 2015)...........................................................................................10

*Bigio v. Coca-Cola Co.*,
 239 F.3d 440 (2d Cir. 2000).....................................................................................................7

*Burch v. Pioneer Credit Recovery, Inc.*,
 551 F.3d 122 (2d Cir. 2008).....................................................................................................1

*Flores v. S. Peru Copper Corp.*,
 414 F.3d 233 (2d Cir. 2003).....................................................................................................2

*Garcia v. Chapman*,
 911 F. Supp. 2d 1222 (S.D. Fla. 2012) ....................................................................................7

*Hirsch v. Arthur Andersen & Co.*,
 72 F.3d 1085 (2d Cir. 1995)...................................................................................................10

*In re Chiquita Brands Int'l*,
 792 F. Supp. 2d 1301 (S.D. Fla. 2011) .................................................................................5, 6

*In re Xe Servs. Alien Tort Litig.*,
 665 F. Supp. 2d 569 (E.D. Va. 2009) .......................................................................................7

*Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*,
 153 F. Supp. 3d 1291 (W.D. Wash. 2015).......................................................................5, 6, 8

*Jesner v. Arab Bank, PLC*,
 138 S. Ct. 1386 (2018)..................................................................................................... passim

*Kadic v. Karadic*,
 70 F.3d 232 (2d Cir. 1995).......................................................................................................7

*Karunamunige Chamila Krishanthi v. Rajakumara Rajaratnam*,
 2010 WL 3429529 (D.N.J. Aug. 26, 2010) .............................................................................3

*King v. Burwell*,
    135 S. Ct. 2480 (2015) ................................................................................................................3

*Licci v. Leb. Can. Bank, SAL*,
    834 F.3d 201 (2d Cir. 2016) ................................................................................................6, 8, 9

*Liu Bo Shan v. China Constr. Bank Corp.*,
    421 F. App'x 89 (2d Cir. 2011) .................................................................................................7, 8

*Mamani v. Berzaín*,
    654 F.3d 1148 (11th Cir. 2011) ......................................................................................................5

*Mwani v. Bin Ladin*,
    2006 WL 3422208 (D.D.C. Sept. 28, 2006) ..................................................................................5

*O'Neill v. Al Rajhi Bank*,
    714 F.3d 118 (2d Cir. 2013) ......................................................................................................5, 6

*Republic of Iraq v. ABB AG*,
    920 F. Supp. 2d 517 (S.D.N.Y. 2013) ..........................................................................................10

*Saperstein v. Palestinian Auth.*,
    2006 WL 3804718 (S.D. Fla. Dec. 22, 2006) ................................................................................6

*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004) .............................................................................................................. passim

*UCAR Int'l Inc. v. Union Carbide Corp.*,
    119 Fed. Appx. 300 (2d Cir. 2004) ..............................................................................................10

*United States v. Ahmed*,
    94 F. Supp. 3d 394 (E.D.N.Y. 2015) ..............................................................................................8

*United States v. Stein*,
    541 F.3d 130 (2d Cir. 2008) ...........................................................................................................7

*United States v. Yousef*,
    327 F.3d 56 (2d Cir. 2003) .............................................................................................................5

*Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*,
    517 F.3d 104 (2d Cir. 2008) ...........................................................................................................5

*Walker, Truesdell, Roth & Associates, Inc. v. Globeop Fin. Servs. LLC*,
    993 N.Y.S.2d 647 (N.Y. Sup. Ct. 2013) ......................................................................................10

*Weiss v. Nat'l Westminster Bank PLC*,
    453 F. Supp. 2d 609 (E.D.N.Y. 2006) ............................................................................................3

**Statutes**

18 U.S.C. § 2333(a) ............................................................................................................................3

18 U.S.C. § 2339C ..............................................................................................................................3

**INTRODUCTION**

The proposed Second Amended Complaint ("PSAC") fails the Court's test for amendment (Opinion and Order, ECF #94 ("Op.") at 10 n.3) because Plaintiffs do not allege "a tort in violation of international law that is actionable" by Lebanese Canadian Bank ("LCB"), on whose behalf Plaintiffs purport to sue derivatively (PSAC ¶¶ 143-50). Leave to amend thus should be denied based on futility. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008). Plaintiffs do not state a claim for primary liability under the Alien Tort Statute ("ATS") for at least six reasons:

First, *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386 (2018), forecloses Plaintiffs' reliance on the International Convention for the Suppression of the Financing of Terrorism ("Financing Convention" or "Convention") to advance an ATS primary-liability claim for "money laundering to aid terrorism." Op. at 10 n.3; *see* Pls.' Mem. (ECF #96) ("Mem.") at 1. In *Jesner*, a three-Justice plurality—in whose judgment two other Justices concurred—held that the Convention cannot support a primary-liability ATS claim because Congress did not provide for one when implementing the Convention. Second, the Convention does not evidence an international law consensus to impose civil liability for terrorism financing. Third, even the central criminal prohibition of the Convention is not universally accepted. Fourth, what conduct constitutes terrorism and terrorism financing is not "well-defined." Fifth, Plaintiffs failed to plead that these Defendants were state actors or acted under color of law ("state action"). Sixth, even if money laundering was a viable theory for primary liability under the ATS, it is not actionable here by LCB, given the PSAC's allegations that LCB was the key perpetrator.

**I.    PLAINTIFFS ALLEGE A MONEY-LAUNDERING TORT NOT RECOGNIZED BY INTERNATIONAL LAW.**

The ATS does not establish substantive rights but rather "enable[s] federal courts to hear claims in a *very limited* category defined by the law of nations and recognized at common law." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 (2004) (emphasis added). *Sosa* made clear that courts "have no congressional mandate" in ATS cases "to seek out and define new and debatable violations of the law

1

of nations" and must exercise "great caution in adapting the law of nations to private rights." *Id.* at 728; *see also Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 248 (2d Cir. 2003) ("[C]ourts must proceed with extraordinary care and restraint" when "determining what offenses violate customary international law."). Very recently in *Jesner*, the Supreme Court reiterated the *Sosa* warning that "ATS claims must be 'subject to vigilant doorkeeping'" because "ATS litigation implicates serious separation-of-powers and foreign-relations concerns." 138 S. Ct. at 1398.[1] The PSAC rests on an unsettled primary-liability theory, not a recognized norm of international law, which cannot support ATS jurisdiction here.

### A.     Plaintiffs' ATS Claim Is Preempted by Congressional Action.

Plaintiffs rely solely on the Financing Convention, whose terms only require each signatory-nation, "in accordance with its domestic legal principles," to enact provisions for (i) "*criminal* liability of *individuals*" and (ii) liability [that] may be *criminal, civil or administrative*" of "a *legal entity*" accused of financing terrorism. Convention, Art. 5.1, 5.2. (emphasis added), *available at* http://www.un.org/law/cod/finterr.htm. The *Jesner* plurality (whose judgment the Court's majority adopted) noted that the United States implemented the Convention "by adopting detailed regulatory regimes governing financial institutions" including a "private right of action under the Anti-Terrorism Act." 138 S. Ct. at 1401. As a result, "[t]he Convention neither requires nor authorizes courts, without congressional authorization, to displace those detailed regulatory regimes by allowing common-law actions under the ATS." *Id.* Directly at odds with *Jesner*, and "without congressional authorization," Plaintiffs seek to displace the detailed U.S. regulatory regime by having this Court recognize a civil claim by *foreign nationals* against *individuals* under the ATS based on the Convention. It would disrespect

---

[1] A majority of Justices in *Jesner* also questioned whether "a proper application of *Sosa* would preclude courts from ever recognizing any new causes of action under the ATS." *Id.* at 1403 (majority opinion); *see also id.* at 1408 (Thomas, J., concurring) ("Courts should not be in the business of creating new causes of action under the Alien Tort Statute."); *id.* at 1409 (Alito, J., concurring in part and in the judgment) ("I am not certain that *Sosa* was correctly decided."); *id.* at 1413 (Gorsuch, J., concurring in part and in the judgment) ("I harbor serious doubts about *Sosa*'s suggestion. In our democracy the people's elected representatives make the laws that govern them. Judges do not.").

the role of Congress to recognize such a claim when Congress did not authorize one.  *See King v. Burwell*, 135 S. Ct. 2480, 2496 (2015) ("[W]e must respect the role of the Legislature, and take care not to undo what it has done.").

Congress implemented the Financing Convention through a criminal statute, 18 U.S.C. § 2339C, which authorizes prosecution or extradition of individuals who finance terrorist groups.  *See Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 629 (E.D.N.Y. 2006).  Any ATA civil remedy predicated on that criminal provision (*see Jesner*, 138 S.Ct. at 1401) is expressly available only to *U.S. nationals, not to foreign nationals* like Plaintiffs or LCB.  18 U.S.C. § 2333(a).  This carefully-wrought congressional framework thus has "implicitly" "shut the door" to Plaintiffs' proposed federal common-law claim based on the Convention and enforceable through the ATS.  *See Sosa*, 542 U.S. at 731; *cf. Jesner*, 138 S. Ct. at 1403 ("[S]eparation-of-powers concerns that counsel against courts creating private rights of action apply with particular force in the context of the ATS," which implicates "foreign-policy concerns" that are the province of the "political branches.") (plurality opinion).

Reflecting this same logic, *Karunamunige Chamila Krishanthi v. Rajakumara Rajaratnam*, 2010 WL 3429529, at *13 (D.N.J. Aug. 26, 2010) held that "[t]he Financing Convention is neither self-executing nor does it create a private right of action" under the ATS.  *See also id.* (holding that the "federal analog implementing this Financing Convention into domestic law clearly foregoes the applicability of a private civil remedy").  Plaintiffs' proposed ATS claim thus is precluded.

### B. Money-Laundering to Finance Terrorism Is Not a Tort in Violation of International Law.

Money-laundering to finance terrorism is not a tort in violation of international law for the additional reason that there is no "specific, universal, and obligatory" international norm against it.  *Sosa*, 542 U.S. at 732 (internal citations omitted).  <u>First</u>, for reasons the *Jesner* plurality explained, the Financing Convention does not reflect an international-law consensus to impose civil liability on individuals for financing terror groups.  Instead, the Convention requires only criminal liability for

3

individuals, and leaves it to each signatory-nation's discretion whether to allow for "criminal, civil or administrative" liability for legal entities.  *See supra* at 2 (quoting Convention Art. 5).

Second, an international-law consensus that certain conduct violates *criminal* law does not imply a similar consensus that there should be parallel civil liability, in part because private plaintiffs are poor stewards of prosecutorial discretion:  "The creation of a private right of action raises issues beyond the mere consideration whether underlying primary conduct should be allowed or not, entailing, for example, a decision to permit enforcement without the check imposed by prosecutorial discretion." *Sosa*, 542 U.S. at 727.  Because the Convention makes civil liability (i) discretionary, (ii) a matter of domestic law only, and (iii) limited to entities and not individuals, it does not support a "tort in violation of international law" for money-laundering to finance terrorism under the ATS.

Third, even the criminal proscription in the Financing Convention is not universally accepted as *Sosa* requires.  This is well illustrated by the confusing pack of over 104 reservations and declarations the signatories have taken with respect to the Convention.[2]  Contrary to Plaintiffs' contention, these reservations are not "mainly those concerning arbitration." Mem. at 4 n.1.  Many reservations and declarations relate to whether certain actions should be regarded as legitimate conflict, rather than terrorist acts, within the meaning of Article 2 of the Convention and whether treaties listed in the annex to the Convention bind signatories that have not ratified them.[3]  These and other reservations

---

[2] *See* https://treaties.un.org/Pages/ViewDetails.aspx?src=IND&mtdsg_no=XVIII-11&chapter=18&lang=en.

[3] *See, e.g.*, Egypt ("Egypt does not consider acts of national resistance in all its forms, including armed resistance against foreign occupation and aggression with a view to liberation and self-determination, as terrorist acts within the meaning of [Art. 2.a(b)] of the Convention."); Jordan ("Jordan does not consider acts of national armed struggle and fighting foreign occupation in the exercise of people's right to self-determ[in]ation as terrorist acts within the context of paragraph 1(b) of article 2 of the Convention."); Kuwait ("The commitment of the State of Kuwait to the Convention is without prejudice to its Arab and Islamic obligations in respect of the definition of terrorism and the distinction between terrorism and legitimate national struggle against occupation."); Namibia ("[A] struggle waged by people in accordance with the principles of international law for their liberation or self-determination, including armed struggle against colonialism, occupation, aggression and domination by foreign forces, shall not be considered as terrorist acts."); Nepal ("[A]ny acts which are related to political activities will not be considered as the acts of Terrorism."); Syria ("[A]cts of resistance to foreign occupation are not included under acts of terrorism."); Turkey ("[Art. 2.1(b)] does not necessarily indicate the existence of an armed conflict and the term 'armed conflict', whether it is organized or not, describes a situation different from the commitment of acts that constitute the crime of terrorism within the scope of criminal law."); *see also* the following states' reservations and declarations on the grounds that they did not ratify one or more treaties listed in the Annex under Art.

4

brought strenuous objections from 28 other nations, which argued the reservations frustrate the purpose of the Convention. *Id.* Such disagreements demonstrate that the central prohibitions of the Convention are not universally accepted as *Sosa* requires.

Instead, these "disagreements, non-consents, and divergent interpretations of the Financ[ing] Convention demonstrate that [its] prohibitions . . . are disputed and not well-established." *In re Chiquita Brands Int'l*, 792 F. Supp. 2d 1301, 1319 (S.D. Fla. 2011) (cited with approval in *O'Neill v. Al Rajhi Bank*, 714 F.3d 118, 125 (2d Cir. 2013)). The *Chiquita* court thus barred an ATS claim based on alleged material support for terrorism. *Id.* at 1321-22; *cf. Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 153 F. Supp. 3d 1291, 1309 (W.D. Wash. 2015) ("A putative norm against financing terrorism is . . . insufficiently 'specific, universal, and obligatory.'") (quoting *Sosa*, 542 U.S. at 732-33).

Finally, money-laundering to finance terrorism is not a tort in violation of international law because the ostensible underlying norm is not "well-defined." *See Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 119, 123 (2d Cir. 2008) (affirming dismissal of ATS claim because the defendant's alleged conduct did not violate an international norm "defined with the degree of specificity required by *Sosa*"); *Mamani v. Berzaín*, 654 F.3d 1148, 1156 (11th Cir. 2011) (rejecting ATS claim because relevant "international law . . . is not clearly defined"). "[T]here continues to be strenuous disagreement among States about what actions do or do not constitute terrorism, nor have we shaken ourselves free of the cliché that 'one man's terrorist is another man's freedom fighter.'" *O'Neill*, 714 F.3d at 125 (quoting *United States v. Yousef*, 327 F.3d 56, 106-08 (2d Cir. 2003); *see also Yousef*, 327 F.3d at 106, 107 n.42 (finding lack of "international consensus on the definition of terrorism or even its proscription"); *Mwani v. Bin Ladin*, 2006 WL 3422208, at *3 n.2 (D.D.C. Sept. 28,

---

2.1(a) of the Convention: Bahamas, Bahrain (same), Belgium, Brazil, China, Cook Islands, Croatia, Democratic People's Republic of Korea, Egypt, El Salvador, Ethiopia, France, Georgia, Guatemala, Indonesia, Israel, Jordan, Latvia, Lithuania, Luxemburg, Mauritius, Myanmar, Nepal, New Zealand, Nicaragua, the Philippines, Moldova, Romania, Saudi Arabia, Singapore, St. Lucia, St. Vincent and the Grenadines, Suriname, Syria, Thailand, the former Yugoslav Republic of Macedonia, Venezuela, and Vietnam.

5

2006) ("The law is seemingly unsettled with respect to defining terrorism as a violation of the law of nations.") (cited with approval in *O'Neill*, 714 F.3d at 125).

The *Chiquita* court agreed, holding that the "disagreement among the international community regarding the definition of terrorism . . . continues today" and "[s]uch continued disharmony underscores the difference between Plaintiffs' unsettled, controversial terrorism claims and the clearly defined, universally recognized 18th-century paradigmatic international-law claims discussed in *Sosa*." 792 F. Supp. 2d at 1317; *see also Saperstein v. Palestinian Auth.*, 2006 WL 3804718, at *7 (S.D. Fla. Dec. 22, 2006) (alleged terrorism not actionable under ATS because "politically motivated terrorism has not reached the status of a violation of the law of nations"); *Barboza v. Drummond Co.*, 2007 WL 8025825, at *11 (S.D. Fla. July 17, 2007) (agreeing with *Saperstein*).

*Licci v. Leb. Can. Bank, SAL*, 834 F.3d 201 (2d Cir. 2016), is not to the contrary, and Plaintiffs' reliance on it (Mem. at 7) is misplaced. *Licci* was a secondary-liability case, where the alleged primary violation by Hezbollah rested on accepted international norms against genocide, crimes against humanity, and war crimes. 834 F.3d at 213.[4] Here, however, Plaintiffs consciously abandoned their earlier emulation of *Licci* and removed their prior allegations that Defendants aided and abetted crimes against humanity or war crimes. *See* PSAC ¶¶ 1, 5, 153. Instead, Plaintiffs now rely exclusively on an ostensible international-law norm against "money laundering to support Hezbollah attacks on civilians" based on the Financing Convention. Mem. at 1. *Jesner* forecloses that theory. *See also Chiquita*, 792 F. Supp. 2d at 1318 (holding that "the Financing Convention neither codifies nor creates an international-law norm against terrorism or financing terrorism"); *Sea Shepherd Conservation Soc'y*, 153 F. Supp. 3d at 308-09 (holding that "[a] putative norm against financing terrorism [based on the

---

[4] The Hezbollah rocket attacks at issue in *Licci* are irrelevant here for the additional reason that those attacks occurred between July 12, 2006 and August 14, 2006, 834 F.3d at 207, whereas the alleged money-laundering scheme in the PSAC allegedly did not begin until November 2006. *See, e.g.*, PSAC, ¶ 53 ("On November 30, 2006, Joumaa opened a bank account at LCB to commence the money laundering operations.").

6

Financing Convention] is . . . insufficiently 'specific, universal, and obligatory'") (quoting *Sosa*, 542 U.S. at 732-33).

### C. Plaintiffs Fail to Satisfy the ATS's State-Action Requirement.

Independent of those other failings, Plaintiffs' proposed ATS claim fails because Plaintiffs did not and cannot plead that Defendants, former officers of a private bank, were state actors at the time of the alleged misconduct. With limited inapplicable exceptions, norms of international law generally apply only to state actors—not to private citizens. *Kadic v. Karadic*, 70 F.3d 232, 241-44 (2d Cir. 1995) (carving out exceptions to the state-action requirement only for genocide, war crimes, and violations of international humanitarian law); *see also Garcia v. Chapman*, 911 F. Supp. 2d 1222, 1235 (S.D. Fla. 2012) ("Most ATS claims . . . are only cognizable when committed by state actors or under color of law."). As noted, PSAC ¶¶ 1, 5, 153 expressly eschews reliance on those exceptions with regard to these Defendants; Plaintiffs instead rely solely on the Financing Convention. Plaintiffs' failure to allege state action alone makes the PSAC's ATS claim legally futile. *See, e.g.*, *Liu Bo Shan v. China Constr. Bank Corp.*, 421 F. App'x 89, 93 (2d Cir. 2011) (affirming dismissal of ATS claim when plaintiff failed to plead that defendant was a state actor or had acted under color of state authority); *Bigio v. Coca-Cola Co.*, 239 F.3d 440, 447-49 (2d Cir. 2000) (affirming dismissal of ATS claim because plaintiffs failed to plead a tort in violation of international law that would allow private liability or was "'committed by state officials or under color of law'") (quoting *Kadic*, 70 F.3d at 243); *In re Xe Servs. Alien Tort Litig.*, 665 F. Supp. 2d 569, 594 (E.D. Va. 2009) ("Because summary execution claims require state action, and none is alleged here, the . . . claims must be dismissed without leave to amend.").[5]

---

[5] The Plaintiffs cannot satisfy the state-action requirement with their allegations that the Central Bank of Lebanon was "complicit in Defendants' scheme." In *Liu Bo Shan,* the Second Circuit held that, for a plaintiff to sufficiently allege that a private actor committed an offense "under color of law" for purposes of the ATS, the plaintiff must plead facts showing "personal participation or willful direction" by the state. 421 F. App'x at 93; *cf. United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (holding that a state-action requirement "is not satisfied when the state 'mere[ly] approv[es] of or acquiesce[s] in the initiatives' of the private entity") (citations omitted) (alterations in original). Here, Plaintiffs allege only that "the

7

### D. *Almog* Does Not Support Recognizing an ATS Claim in This Case.

*Almog v. Arab Bank, PLC*, 471 F. Supp. 2d 257 (E.D.N.Y. 2007), like the Financing Convention that it discussed, cannot support an international norm against terrorism financing that is actionable under the ATS. *See* Mem. at 4, 6-8, 10 n.4 (relying on *Almog*).

First, *Almog* conflicts with the plurality opinion in *Jesner* (as ratified by the logic of a majority of concurring Justices) that the Financing Convention cannot support an ATS claim because Congress did not provide foreign nationals with a claim for civil liability based on the Convention. *See supra* Part I.A.

Second, *Almog* focused primarily on Convention Article 2.1(a), which bases criminal liability on separate treaties listed in an annex, specifically the International Convention for the Suppression of Terrorist Bombings ("Bombing Convention").[6] 471 F. Supp. 2d at 277-78. Here, Plaintiffs do not invoke Article 2.1(a), the Bombing Convention, or any of the other treaties referenced in the annex to the Financing Convention; instead, Plaintiffs rely solely on the more general prohibition in Article 2.1(b), which courts have held is "insufficiently 'specific, universal, and obligatory'" to support an ATS claim. *See Sea Shepherd Conservation Soc'y*, 153 F. Supp. 3d at 1308-09 (distinguishing *Almog* because the primary violation there rested on the Bombing Convention, agreeing with *Almog* only as to Art. 2.1(a), and rejecting a claim based Art. 2.1(b)).[7]

Third, *Almog* ultimately proceeded on a secondary-liability theory of aiding and abetting—the same secondary-liability theory at issue in *Licci*, 834 F.3d at 213, which this Court held unavailing here

---

Central Bank of Lebanon turned a blind eye to the compliance problems at LCB." PSAC ¶ 90; *see also id.* ¶ 92. As *Liu Bo Shan* held, these types of "willful blindness" allegations do not sufficiently plead state action for purposes of the ATS.

[6] *See Almog v. Arab Bank, PLC*, No. 1:04-cv-05564-BMC-PK (S.D.N.Y. Feb. 25, 2005), First Am. Compl., Count III (Financing Terrorism in Violation of the Law of Nations) at ¶¶ 282, 283 (relying each time on both the Financing Convention and the Bombing Convention in the aiding and abetting allegations under the ATS).

[7] Plaintiffs' reliance on *United States v. Ahmed*, 94 F. Supp. 3d 394 (E.D.N.Y. 2015) for its claim that "providing material assistance to terrorists is against the law of nations" is also unavailing. *See* Mem. at 4. *Ahmed* was not an ATS case; the court did not consider whether the alleged conduct was a violation of international law that is actionable under the ATS.

(Op. at 9-10)—not on a primary-liability theory under Article 2.1(b) of the Financing Convention. 471 F. Supp. 2d at 269, 286-94.

Fourth, the *Almog* plaintiffs were either the victims of bombings, or their family members. 471 F. Supp. 2d at 263. By contrast here, because Plaintiffs here were not victims of the Hezbollah attacks, this Court held that they could not pursue the same ATS secondary-liability theory at issue in *Almog*. Op. at 8-10.

Fifth, the ATS state-action requirement did not foreclose the *Almog* secondary-liability claim because, as in *Licci*, 834 F.3d at 206, the underlying primary-liability norm fell within the exceptions for genocide, war crimes, and other crimes against humanity. *Almog*, 471 F. Supp. 2d at 293. Here, Defendants' alleged conduct is not exempt from the state-action requirement. *See supra* at 7-8.

## II. THE PROPOSED ATS CLAIM IS NOT ACTIONABLE BY LCB.

LCB is now the sole plaintiff in the case, on whose behalf Abu Nahl and Nest Investments purport to sue only derivatively on all three claims of the PSAC. *Id.* ¶¶ 143-50; Mem. at 9. The Court has reserved for decision Defendants' prior arguments that Plaintiffs cannot sue derivatively on LCB's behalf both because Plaintiffs have not complied with governing Lebanese law on shareholder-derivative claims and because Lebanon (whose laws govern LCB) does not recognize a right to sue for violations of international law. *See* Op. at 10, n.4; *see also* Defs.' Mem. in Support of Mot. to Dismiss FAC (ECF #64) at 15, 20; and Reply (ECF #79) at 9-10. Independent of those reserved arguments, Plaintiffs' proposed ATS claim is not actionable by LCB because the PSAC alleges that LCB was itself the perpetrator—not a victim—of the ostensible international law violations.

The PSAC, both in its allegations and the accompanying exhibits,[8] necessarily posits that LCB "is as or more culpable than the defendant[s] in the conduct forming the basis for the complaint."

---

[8] *See, e.g.*, PSAC, ¶ 158 ("The United States filed the Civil Forfeiture Complaint based . . . on LCB's actions to assist Hezbollah."); *id.* ¶ 159 ("'[The forfeiture] '. . . addresses the role [LCB] played in facilitating illicit money movement . . . .'") (citation omitted); *see also* FinCEN Notice (PSAC Exh. A), at pp. 1, 7-14 (identifying LCB as "a financial institution of

9

*UCAR Int'l Inc. v. Union Carbide Corp.*, 119 Fed. Appx. 300, 301-02 (2d Cir. 2004) (summary order). This calls for the application of the *in pari delicto* doctrine, "which 'mandates that the courts will not intercede to resolve a dispute between two wrongdoers.'" *Bearing Fund LP v. PricewaterhouseCoopers LLP (In re MF Global Holdings Ltd. Inv. Litig.)*, 611 Fed. Appx. 34, 36 (2d Cir. 2015) (summary order) (citation omitted).

LCB's alleged culpability is at the center of the PSAC and the U.S. government actions upon which the PSAC so extensively relies. Accordingly, the PSAC is futile because "the plaintiff's culpability appears on the face of the complaint." *Republic of Iraq v. ABB AG*, 920 F. Supp. 2d 517, 547 (S.D.N.Y. 2013); *Walker, Truesdell, Roth & Associates, Inc. v. Globeop Fin. Servs. LLC*, 993 N.Y.S.2d 647, 2013 WL 8597474 at *12 (N.Y. Sup. Ct. 2013) (applying *in pari delicto* where management "as established . . . on the pleadings" engaged in wrongdoing assisted by outside advisors).[9] Whatever claims LCB may have against Defendants under Lebanese law (*see* PSAC ¶¶ 162-71), they cannot be repackaged as "a tort in violation of international law that is actionable" by LCB. *See* Op. at 10 n.3.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Leave to File Second Amended Complaint should be denied as futile, and the case should be dismissed with prejudice.

---

primary money laundering concern" and accusing LCB of financing Hezbollah activities); Civil Forfeiture Compl. (PSAC Exh. B), at ¶¶ 45-52 (naming LCB but not Messrs. Abou Jaoude, Hamdoun, and Safa—as defendants, and making money-laundering allegations and seeking forfeiture relief only against LCB but not the Defendants); *cf. Licci*, 834 F.3d at 215 (recounting plaintiffs' allegations, including money-laundering to finance terrorism only as against LCB—not as against Messrs. Abou Jaoude, Hamdoun, and Safa).

[9] That Defendants were on LCB's board of directors does not preclude *in pari delicto* defense. Plaintiffs' repeated emphasis on LCB's role in the money-laundering scheme, *see supra* n.8, coupled with the allegations regarding individual Plaintiffs' own roles in LCB's affairs, *see, e.g.*, PSAC, ¶¶ 103-07, ¶¶ 111-13, ¶¶ 118-19, defeats any possible argument against the doctrine's application. *Cf. Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) ("[D]omination and control [by the defendant] is not even meaningfully alleged in the Complaint. Further, the Complaint's attenuated allegations of control are contradicted both by more specific allegations in the Complaint and by facts of which we may take judicial notice.") (rejecting argument that trustee should not be barred from suing the defendant on the basis that the bankrupt corporation was in *pari delicto* with the defendant).

Dated: July 20, 2018  
Washington, D.C.

Respectfully submitted,

*/s/ Mitchell R. Berger*
Mitchell R. Berger (MB-4112)
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, N.W.
Washington, D.C. 20037
Phone: 202-457-6000
Fax:     202-457-6315

*Attorneys for Defendants Georges Zard Abou Jaoude, Mohamad Hamdoun, and Ahmad Safa*

11

**CERTIFICATE OF SERVICE**

      I hereby certify that, on this 20th day of July 2018, a true and correct copy of the foregoing Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to File Second Amended Complaint was filed electronically and is available for viewing and downloading from the ECF system, and was also served by first class mail on:


Anthony Herman
Christian J. Pistilli
Andrew E. Siegel
Dennis B. Auerbach
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW Washington, D.C. 20001
Tel: (202) 662-6000
Email: aherman@cov.com
        cpistilli@cov.com
        asiegel@cov.com
        dauerbach@cov.com

*Attorneys for Plaintiffs*

                                    */s/ Mitchell R. Berger*
                                      Mitchell R. Berger